1   XAVIER BECERRA
    Attorney General of California
2   MICHELLE M. MITCHELL
    Supervising Deputy Attorney General
3   CHAD A. STEGEMAN
    Deputy Attorney General
4   State Bar No. 225745
      455 Golden Gate Avenue, Suite 11000
5     San Francisco, CA  94102-7004
      Telephone:  (415) 510-3624
6     Fax:  (415) 703-5843
      E-mail:  Chad.Stegeman@doj.ca.gov
7   *Attorneys for Defendant Steve Gordon, in his official
    capacity*

8

9                   IN THE UNITED STATES DISTRICT COURT

10               FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13   **PAUL OGILVIE, ANDREA CAMPANILE,**          4:20-cv-01707-JST
     **JAMES BLAIR, PAUL CRAWFORD, and**
14   **AMRIT KOHLI,**                             **NOTICE OF MOTION AND MOTION**
                                                  **TO DISMISS; MEMORANDUM OF**
15                                    Plaintiffs,  **POINTS AND AUTHORITIES**

16              v.
                                                  Hearing Date: July 9, 2020
17   **STEVE GORDON, in his Official Capacity**   Time:         2:00 p.m.
     **as Director of the California Department of**  Judge:        Jon S. Tigar
18   **Motor Vehicles,**                          Location:     Courtroom 6

19                                    Defendant.  Action Filed:  March 10, 2020

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

                                                                                    **Page**

3

Notice of Motion ........................................................................................................... 1

4

Memorandum of Points and Authorities ........................................................................ 1

Introduction .................................................................................................................... 1

5

Background ..................................................................................................................... 2

6

    I.     State Laws and Regulations Governing California Motor Vehicle
           Registrations and License Plates. ...................................................................... 2

7

          A.     California Registration Number and License Plate Requirements. ............ 2

8

          B.     DMV's Environmental License Plate Program ......................................... 4

9

    II.    Plaintiffs' Applications for Environmental License Plates. .................................. 5

    III.   Plaintiffs' First-Amendment Facial and Overbreadth Challenges. ....................... 6

10

Legal Standard ............................................................................................................... 6

11

Argument ....................................................................................................................... 7

12

    I.     The Registration Numbers on California License Plates Are Government
           Speech, Which Is Not Subject to the First Amendment. ..................................... 8

13

          A.     *Walker* Is Directly On Point; License Plates Are Government
                Speech. .................................................................................................... 8

14

          B.     License Plate Registration Numbers Satisfy the *Walker* Test for
                Government Speech. ................................................................................. 9

15

16

                1.     The State Has Historically Used Registration Numbers on
                      License Plates to Communicate the Status and Identity of
                      Validly Registered Motor Vehicles. ............................................. 10

17

18

                2.     Registration Numbers on License Plates Are Closely
                      Identified with the State. ................................................................ 11

19

                3.     The State Maintains Strict Control over the Content of
                      Registration Numbers on License Plates. ...................................... 13

20

                4.     Other Features of Registration Numbers also Signify
                      Government Speech. ...................................................................... 15

21

           C.     License Plates and Their Registration Numbers Are Still
                 Government Speech Despite Participation by Private Parties in

22

                Generating that Speech. .......................................................................... 15

    II.    Forum Analysis Is Not Appropriate. .................................................................. 17

23

          A.     Registration Numbers Are Not a Traditional, Designated, or

24

                Limited Public Forum. ........................................................................... 18

25

           B.     Registration Numbers Are Not a Nonpublic Forum. .............................. 19

    III.   The Facial Challenge Fails as a Matter of Law Because It Is Not Entirely
           Violative of the First Amendment and Plaintiffs Fail to Plead a Substantial

26

           Number of Its Applications Are Unconstitutional. ............................................. 20

27

Conclusion .................................................................................................................. 23

28

i

1

**TABLE OF AUTHORITIES**

2

<u>**Page**</u>

3

4

**CASES**

5

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)........................................................................................6

6

7

*Brandenburg v. Ohio*
    395 U.S. 444 (1969)......................................................................................21

8

*Brown v. Entertainment Merchants Ass'n*
    564 U.S. 786 (2011)......................................................................................22

9

10

*Chaplinsky v. New Hampshire*
    315 U.S. 568 (1942)......................................................................................21

11

12

*Comm'r of Indiana Bureau of Motor Vehicles v. Vawter*
    45 N.E.3d 1200 (Ind. 2015) ...........................................................11, 12, 16

13

14

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*
    473 U.S. 788 (1985)......................................................................................18

15

*FW/PBS, Inc. v. Dallas*
    493 U.S. 215 (1990)......................................................................................21

16

17

*Hoye v. City of Oakland*
    653 F.3d 835 (9th Cir. 2011).........................................................................20

18

*Iancu v. Brunetti*
    139 S. Ct. 2294 (2019)..................................................................................22

19

20

*Int'l Soc'y for Krishna Consciousness of California, Inc. v. City of Los Angeles*
    764 F.3d 1044 (9th Cir. 2014).......................................................................17

21

22

*Johnson v. Riverside Healthcare Sys., LP*
    534 F.3d 1116 (9th Cir. 2008).........................................................................6

23

*Kahn v. Dep't of Motor Vehicles*
    16 Cal. App. 4th 159 (1993)....................................................................10, 16

24

25

*Katz v. Dep't of Motor Vehicles*
    32 Cal. App. 3d 679 (Cal. Ct. App. 1973) ...................................................20

26

27

*Mech v School Bd. Of Palm Beach County, Fla.*
    806 F.3d 1070 (11th Cir. 2015)............................................................ *passim*

28

ii

1

2

<u>**TABLE OF AUTHORITIES**</u>
(continued)

<u>Page</u>

3

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*

4
    466 U.S. 789 (1984)...............................................................................................22

5

*Nat'l Endowment for the Arts v. Finley*
    524 U.S. 569 (1998)...............................................................................................21

6

7

*New York v. Ferber*
    458 U.S. 747 (1982)...............................................................................................22

8

*Parke v. Franciscus*
    194 Cal. 284 (1924) ..............................................................................................10

9

10

*Perry Ed. Assn. v. Perry Local Educators' Assn.*
    460 U.S. 37 (1983)...........................................................................................18, 19

11

*Pleasant Grove City v. Summum*
    555 U.S. 460 (2009) ........................................................................................ *passim*

12

13

*R.A.V. v. City of St. Paul*
    505 U.S. 377 (1992)...............................................................................................22

14

*Rosenberger v. Rector and Visitors of Univ. of Va.*
    515 U.S. 819 (1995)...............................................................................................18

15

16

*Roth v. United States*
    354 U.S. 476 (1957)...............................................................................................21

17

*Shurtleff v. City of Bos.*
    928 F.3d 166 (1st Cir. 2019)..............................................................................12, 13

18

19

*Stoddart v. Peirce*
    53 Cal.2d 105 (1959) ............................................................................................10

20

*United States v. Am. Library Ass'n, Inc.*
    539 U.S. 194 (2003)...............................................................................................19

21

22

*United States v. Bonin*
    932 F.3d 523 (7th Cir. 2019)..................................................................................23

23

24

*United States v. Inzunza*
    638 F.3d 1006 (9th Cir. 2011)................................................................................21

25

26

*United States v. Stevens*
    559 U.S. 460 (2010)..........................................................................................20, 21

27

28

iii

## TABLE OF AUTHORITIES
### (continued)

Page

*United States v. Tomsha-Miguel*
766 F.3d 1041 (9th Cir. 2014)..................................................................................23

*Virginia v. Hicks*
539 U.S. 113 (2003)..................................................................................22

*Walker v. Texas Div., Sons of Confederate Veterans, Inc*.
135 S. Ct. 2239 (2015) ........................................................................ *passim*

*Washington State Grange v. Washington State Republican Party*
552 U.S. 442 (2008)..................................................................................20, 21

*Watison v. Carter*
668 F.3d 1108 (9th Cir. 2012)..................................................................................6, 23

STATUTES

United States Code, Title 18
§ 912..................................................................................22, 23
§ 915..................................................................................22

California Penal Code
§ 538d..................................................................................23

California Vehicle Code
§ 4000(a)(1)..................................................................................2
§ 4453(a)..................................................................................3
§ 4458..................................................................................3, 14
§ 4463(a)(1)..................................................................................3, 14
§ 4463.5(a)..................................................................................3, 14
§ 4463.5(c)..................................................................................14
§ 4464..................................................................................3, 14
§ 4850(a)..................................................................................3, 10, 13
§ 4851..................................................................................3, 13, 14, 15
§ 4852(a)..................................................................................3, 14
§ 5100..................................................................................4
§ 5103..................................................................................4
§ 5105(a)..................................................................................*passim*
§ 5105(b)..................................................................................5
§ 5106..................................................................................4
§ 5200..................................................................................3
§ 5200(a)..................................................................................13
§ 5201(a)..................................................................................3, 13

iv

1
2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3

**CONSTITUTIONAL PROVISIONS**

4
5

United States Constitution
　　First Amendment............................................................................................ *passim*

6

**COURT RULES**

7

Federal Rule of Civil Procedure
　　Rule 12(b)(6)...............................................................................................................1, 6

8
9

**OTHER AUTHORITIES**

10

California Code of Regulation Title 13
　　§ 206.00(c)(7)(B) ...................................................................................................4, 14

11

　　§ 206.00(c)(7)(D) ...............................................................................................1, 6, 15
　　§ 206.00(c)(7)(D)(1) ....................................................................................................22

12

　　§ 206.00(c)(7)(D)(1)-(7) ...............................................................................................5
　　§ 206.00(c)(7)(D)(2) ....................................................................................................22

13

　　§ 206.00(c)(7)(D)(3) ..............................................................................................21, 22

14

　　§ 206.00(c)(7)(D)(4) ....................................................................................................22
　　§ 206.00(c)(7)(D)(5) ....................................................................................................23

15

　　§ 206.00(c)(7)(D)(7) ....................................................................................................22
　　§ 206.12(a)(1)................................................................................................................5

16

https://catalog.calpia.ca.gov/services/license-plates/ (last visited on June 2, 2020)........................3

17

https://en.wikipedia.org/wiki/Slayer (last visited June 2, 2020) ......................................5

18
19
20
21
22
23
24
25
26
27
28

v

Notice of Mot. and Mot. to Dismiss; Memo. P & A (4:20-cv-01707-JST)

**NOTICE OF MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on July 9, 2020, at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Jon S. Tigar, United States District Judge, in Courtroom 6 of the United States District Court for the Northern District of California, located at 1301 Clay St., 2nd Floor, Oakland, California 94612, Defendant Steve Gordon, in his official capacity as Director of the California Department of Motor Vehicles, will move this Court to dismiss without leave to amend Plaintiffs' Complaint for Declaratory and Injunctive Relief, pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is brought on the grounds that the Complaint fails to state a claim upon which relief can be granted under the First Amendment of the United States Constitution.  The facial challenge to Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)) fails because the First Amendment does not apply to government speech.  Moreover, many applications of the regulation are constitutionally valid (*e.g.*, configurations that represent "fighting words," obscenities, etc.), therefore the regulation is not wholly invalid on its face, and an overbreadth challenge cannot succeed.

This motion is based on this Notice, the Memorandum of Points and Authorities, the papers and pleadings on file in this action, and upon such matters as may be presented to the Court at the time of the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The Supreme Court in *Walker v. Texas Div., Sons of Confederate Veterans, Inc*., 135 S. Ct. 2239 (2015), held that, as highly-regulated forms of State-issued identification, license plates, such as those at issue here, are government speech not subject to First Amendment scrutiny. *Walker* is directly on point, and Plaintiffs' claim should be dismissed with prejudice.

California law has historically required all validly registered motor vehicles to display State-manufactured and State-issued license plates with unique registration numbers assigned by the State.  The letter-number combinations on the official plates reflect an endorsement by the

1

state of any customization of the registration numbers, particularly where "California" displays prominently on the plate with the registration numbers, and the State manufactures the plates themselves.  Furthermore, the State exercises ultimate authority and control over the registration numbers, customized or otherwise.  Thus, the registration numbers displayed on California license plates are government speech, just like the plate designs in *Walker* were.  Plaintiffs' First Amendment claim that the State is violating the Free Speech Clause by refusing to assign to their vehicles the customized registration number they requested, fails as a matter of law and should be dismissed without leave to amend.

But even if *Walker* did not govern here, the regulations are not facially invalid.  There are many clearly constitutional applications of the customization regulations that allow DMV to "refuse to issue any combination of letters or numbers, or both, that may carry connotations offensive to good taste and decency or which would be misleading."  Cal. Veh. Code § 5105(a).  For instance, "fighting words," vulgarities, and obscenities do not enjoy First Amendment protection.  Lost or stolen plates legitimately require new registration numbers.  And prohibiting plates from identifying a vehicle as a diplomatic or law enforcement-related vehicle to avoid deception and confusion is also a valid limitation.  These examples of constitutionally allowable prohibitions on plate registrations demonstrate that the regulation is not wholly invalid, and Plaintiffs' facial challenge fails.  Moreover, assuming for purposes of this motion that the regulations violate Plaintiffs' First Amendment rights as applied to the five Plaintiffs—they do not—the allegations of overbreadth are insufficient to show a substantial number of the law's applications are unconstitutional in relation to the statute's plainly legitimate sweep.

## BACKGROUND

### I.   STATE LAWS AND REGULATIONS GOVERNING CALIFORNIA MOTOR VEHICLE REGISTRATIONS AND LICENSE PLATES.

#### A.   California Registration Number and License Plate Requirements.

Motor vehicles owned by California residents travelling publicly maintained roads in California must be registered in accordance with the Vehicle Code.  Cal. Veh. Code § 4000(a)(1).  The Department of Motor Vehicles ("DMV") assigns all registered vehicles a unique registration

2

1   number, to be displayed on the vehicle's license plates.  *See id.* §§ 4453(a) (contents of

2   registration card), 4851 (display on plates).  Through a partnership between DMV and the Prison

3   Industry Authority, California license plates are made at Folsom State Prison by inmates housed

4   there.  *See* https://catalog.calpia.ca.gov/services/license-plates/ (last visited on June 2, 2020).  The

5   Folsom inmates have made California's license plates since 1947.  *Id.*  DMV issues license plates

6   to all registered vehicles.  Cal. Veh. Code § 4850(a).  "Every license plate shall have displayed

7   upon it the registration number assigned to the vehicle for which it is issued, together with the

8   word 'California' or the abbreviation 'Cal.' and the year number for which it is issued . . . ."  *Id.* §

9   4851.  Registration numbers are subject to minimum height, width, and spacing requirements, and

10  may consist of up to seven characters.  *Id.* § 4852(a).

11      Vehicle owners must display license plates on registered motor vehicles in accordance with

12  the Vehicle Code.  Cal. Veh. Code § 5200.  License plates must be mounted on all validly

13  registered vehicles, "in a position so as to be clearly visible," and "maintained in a condition so as

14  to be clearly legible."  *Id.* § 5201(a).  "The rear license plate shall be mounted not less than 12

15  inches nor more than 60 inches from the ground, and the front license plate shall be mounted not

16  more than 60 inches from the ground[.]"  *Id*.

17      The Vehicle Code prohibits activities intended to misrepresent a vehicle's registration

18  status or the registration number assigned by DMV.  "A person shall not display upon a vehicle a

19  license plate that is altered from its original markings."  Cal. Veh. Code § 4464.  It is a

20  misdemeanor to "manufacture or sell a decorative or facsimile license plate of a size substantially

21  similar to the license plate issued by" DMV.  *Id.* § 4463.5(a), (c).  Alteration, forgery,

22  counterfeiting, or falsification of a license plate issued by DMV is punishable as a felony, as is

23  alteration, forgery, counterfeiting, or falsification of a license plate with intent to represent it as

24  issued by DMV.  *Id.* § 4463(a)(1).  The display of a canceled, suspended, revoked, altered,

25  forged, counterfeit, or false license plate is also punishable as a felony.  *Id.*  If a motor vehicle's

26  license plates are lost or stolen, the owner must "immediately notify a law enforcement agency,"

27  as well as apply to DMV for new plates, which "shall in every proper case" have "a different

28  number" than the number on the lost or stolen plates.  *Id.* § 4458.

3

**B.    DMV's Environmental License Plate Program.**

Through DMV's environmental license plate program, the owner or lessee of a vehicle registered in California may request "a combination of letters or numbers, or both," for the vehicle's registration number.  Cal. Veh. Code § 5103.  The extra fees for license plates displaying such customized registration numbers, which are charged in addition to regular vehicle registration fees, "provide revenue for the California Environmental License Plate Fund."  *Id.* §§ 5106, 5100.

Under the environmental license plate program, duplication of registration numbers is not permitted.  Cal. Veh. Code § 5105(a).  "When a desired configuration is not available, a letter shall not be substituted for a number, nor shall a number be substituted for a letter, to create another configuration of a similar appearance."  Cal. Code Regs. tit. 13, § 206.00(c)(7)(B).  Duplication of registration numbers issued to other types of vehicles (e.g., trailers, semitrailers, and vehicles exempt from payment of registration fees) is also not permitted.  Cal. Veh. Code § 5105(a).

In addition to the laws and regulations designed to ensure that each motor vehicle is assigned a unique registration number, DMV exercises final approval authority over the registration numbers assigned in accordance with the environmental license plate program.  DMV "may refuse to issue any combination of letters or numbers, or both, that may carry connotations offensive to good taste and decency or which would be misleading," Cal. Veh. Code § 5105(a), "based on criteria which includes, but is not limited to, the following" factors listed in the implementing regulation:

1. The configuration has a sexual connotation or is a term of lust or depravity.
2. The configuration is a vulgar term; a term of contempt, prejudice, or hostility; an insulting or degrading term; a racially degrading term; or an ethnically degrading term.
3. The configuration is a swear word or term considered profane, obscene, or repulsive.
4. The configuration has a negative connotation to a specific group.
5. The configuration misrepresents a law enforcement entity.
6. The configuration has been deleted from regular series license plates.

4

7. The configuration is a foreign or slang word or term, or is a phonetic spelling or mirror image of a word or term falling into the categories described in subdivisions 1. through 6. above.

Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(1)-(7).  DMV "may cancel and order the return of any environmental license plate" with a registration number "which [DMV] determines carries connotations offensive to good taste and decency or which would be misleading," and persons receiving such an order are entitled to a hearing before an administrative law judge, if requested within 10 days of receiving the order.  Cal. Veh. Code § 5105(b); *see also* Cal. Code Regs. tit. 13, § 206.12(a)(1).

## II.   PLAINTIFFS' APPLICATIONS FOR ENVIRONMENTAL LICENSE PLATES.

Plaintiff Paul "Chris" Ogilvie's application for a personalized plate with the configuration of "OGWOOLF" was denied.  (Compl. ¶ 9.)  Ogilvie's now-fiancée bought him a personalize plate as a gift.  (*Id.* ¶ 30.)  He decided on a configuration of "OG," a military nickname, and "WOOLF," a derivative of a 1999 screen name.  (*Id.* ¶ 31.)  DMV rejected his application because it contained a reference to gang affiliation.  (*Id.* ¶ 32.)

James Blair applied for a personalized license plate with the configuration of "SLAAYRR." (Compl. ¶ 10.)  The configuration is allegedly associated with the thrash metal band "Slayer."[1] (*Id.* ¶ 34.)  DMV allegedly rejected his application because it was "threatening, aggressive, or hostile."  (*Id.* ¶ 35.)

Andrea Campanile also applied for a personalized license plate with the configuration of "DUK N A."  (Compl. ¶ 11.)  She alleges it signified "Ducati and Andrea."  (*Id.* ¶ 40.)  DMV rejected the application because the configuration could be read as a sound-alike version of a "profane or obscene" phrase.  (*Id.* ¶ 41.)

Amrit Kohli also claims to have applied for a personalized plate.  (Compl. ¶ 12.)  He purportedly applied for a configuration of "QUEER," (*id.*) and DMV denied his application on the basis that it could be considered "insulting, degrading, or expressing contempt for a specific group or person."  (*Id.* ¶ 37.)

---

[1] For a description of the band, *see* https://en.wikipedia.org/wiki/Slayer (last visited June 2, 2020).

1      Paul Crawford's application for the personalized plate configuration of "BU11LUX" was

2    also denied by DMV.  (Compl. ¶ 13.)  He alleges that he owns a pub, and the configuration

3    reflects a portion of the pub's slogan, including the term "bollocks."  (*Id.* ¶ 43.)  DMV rejected

4    the application because the configuration could be conceived to have "a discernable sexual

5    connotation or may be construed to be of a sexual nature."  (*Id.* ¶ 44.)

6    **III.   PLAINTIFFS' FIRST-AMENDMENT FACIAL AND OVERBREADTH CHALLENGES.**

7      Plaintiffs' Complaint raises only one claim for relief:  a facial challenge to the DMV's

8    regulations of license plate configurations.  They do not challenge the regulations as they were

9    applied in their case.  Specifically, Plaintiffs allege that DMV's regulation setting forth criteria

10   that may be used to determine if a requested license plate configuration "may carry connotations

11   offensive to good taste and decency" (Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)) is facially

12   invalid and overbroad under the First Amendment's Free Speech Clause, because it imposes

13   content-based and viewpoint-based restrictions on speech that are not narrowly tailored to any

14   compelling governmental interest.  (Compl. ¶¶ 47-48.)

15                              **LEGAL STANDARD**

16     Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure

17   to state a claim upon which relief can be granted.  "A Rule 12(b)(6) dismissal may be based on

18   either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a

19   cognizable legal theory.'"  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22

20   (9th Cir. 2008) (citation omitted).  "To survive a motion to dismiss, a complaint must contain

21   sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

22   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

23   However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

24   elements of a cause of action'" cannot survive a motion to dismiss.  *Id.* at 678 (citation omitted).

25     Dismissal without leave to amend is appropriate when the court "determines that the

26   pleading could not possibly be cured by the allegation of other facts."  *Watison v. Carter*, 668

27   F.3d 1108, 1117 (9th Cir. 2012) (internal quotation marks and citation omitted).

28

1

**ARGUMENT**

2     California license plates signify that a motor vehicle is validly registered, and the

3 registration numbers displayed on license plates are used to identify validly registered vehicles for

4 various public safety, consumer protection, and law enforcement purposes.  The State assigns

5 each validly registered motor vehicle a unique registration number, manufactures license plates

6 with those numbers, and strictly controls these numbers and their display on license plates.  The

7 registration numbers displayed on license plates are thus government speech, not the vehicle

8 owner's protected speech, even if the vehicle owner participates in the State's customization

9 program.  This follows directly from Supreme Court precedent holding that specialty license

10 plates—license plates with specialized designs proposed by private parties and adopted by the

11 State—are government speech.  *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S.

12 Ct. 2239, 2250 (2015).  The fact that a vehicle owner may pay an extra fee for a customized

13 registration number does not change the essential nature of the registration number as the key

14 component in a government-issued identification.  *Cf. id*. at 2251-2252 (participation of private

15 parties in proposing designs for specialized plates "does not extinguish the governmental nature

16 of the message" or "imply that the plate designs are merely a forum for private speech").  And, as

17 explained in *Walker*, the use of forum analysis to determine the presence of a government-

18 provided forum is not appropriate in the context of government-issued license plates.  *Id*. at 2250.

19 Because the registration numbers displayed on California license plates are government speech

20 under *Walker*, DMV's decision to reject Plaintiffs' requested configurations does not implicate

21 Plaintiffs' First Amendment rights, and Plaintiffs cannot as a matter of law allege a viable cause

22 of action.

23     Even if *Walker* were not applicable, the ability of the State to prohibit configurations that

24 represent "fighting words," obscenities, duplicate other registration numbers, or that could

25 mislead the public into believing a vehicle is registered by law enforcement, diplomats, or other

26 agencies, shows the regulation that allows DMV to "refuse to issue any combination of letters or

27 numbers, or both, that may carry connotations offensive to good taste and decency or which

28 would be misleading," Cal. Veh. Code § 5105(a), is not facially invalid.  Nor have Plaintiffs

7

1    alleged that the regulation is overly broad because a substantial number of the law's applications

2    are unconstitutional in relation to the statute's plainly legitimate sweep.  To the contrary, the

3    inconsequential number of challenges to the statute call for consideration on an as-applied basis,

4    at best.  However, Plaintiffs do not make an as-applied claim here, and dismissal is warranted.

5    **I.    THE REGISTRATION NUMBERS ON CALIFORNIA LICENSE PLATES ARE**

6    **GOVERNMENT SPEECH, WHICH IS NOT SUBJECT TO THE FIRST AMENDMENT.**

7        "When government speaks, it is not barred by the Free Speech Clause from determining the

8    content of what it says."  *Walker*, 135 S. Ct. at 2245 (citing *Pleasant Grove City v. Summum,* 555

9    U.S. 460, 467–468 (2009)).  "Were the Free Speech Clause interpreted otherwise, government

10   would not work . . . .  It is not easy to imagine how government could function if it lacked the

11   freedom to select the messages it wishes to convey."  *Id*. at 2246 (internal quotation marks and

12   citation omitted).  Government speech is thus "not subject to scrutiny under the Free Speech

13   Clause."  *Summum*, 555 U.S. at 464.

14       The Supreme Court held in *Walker* that Texas's specialty license plates—which featured

15   designs proposed by private parties but approved by Texas—constituted government speech.

16   *Walker*, 135 S. Ct. at 2246.  *Walker* is directly on point.  For the very same reasons articulated in

17   *Walker*, including the history of issuing registration numbers, endorsement and government

18   sanction of registration numbers, and the control exerted by the State over the approval of

19   registration numbers, the registration numbers displayed on California license plates are

20   government speech.  The fact that a private party may propose the precise configuration of the

21   registration number before the State formally assigns it does not alter the analysis or change its

22   outcome.

23       **A.    *Walker* Is Directly On Point; License Plates Are Government Speech.**

24       It is unusual to have a case from the Supreme Court so directly on point, but that is the case

25   here, and the Court should dismiss this challenge without leave to amend.  In 2015, the Supreme

26   Court held that specialty license plates with designs proposed by private parties are government

27   speech, because they are "government-mandated, government-controlled, and government-issued

28   IDs that have traditionally been used as a medium for government speech."  *Walker*, 135 S. Ct. at

8

2250.  That private individuals proposed designs for the specialized plates did "not extinguish the governmental nature of the message" or "imply that the plate designs are merely a forum for private speech."  *Id.* at 2251-2252.

The license-plate program in *Walker* is materially indistinguishable from that here: individuals in both programs propose personalized designs for the license plates on their vehicle, subject to the State's approval.  That *Walker* involved the license-plate background while this case involves the numbers on the plate does not alter *Walker's* conclusion that license plates are government-issued IDs that convey government speech.  In fact, the program at issue here has less communicative ability than that in *Walker*—when designing a custom license plate in Texas individuals could add in an image and several words of text and colors that convey a more complex message than seven characters.  *Walker*, 135 S. Ct. at 2264-2269 (Appendix showing examples of various plate designs).  The conclusion and holding in *Walker* governs here and should resolve this case.

**B.     License Plate Registration Numbers Satisfy the *Walker* Test for Government Speech.**

Even if there were some relevant distinction between the *Walker* and the present challenge, the registration numbers on California license plates are still government speech under the test laid out in *Walker* and for the same reasons articulated in *Walker*.

In *Walker,* the Supreme Court considered three factors in determining that Texas's specialty license plates constituted government speech: (1) whether the government has historically used the medium to speak to the public; (2) whether the message is closely identified in the public mind with the State; and (3) the degree of control the State maintains over the messages conveyed.  135 S.Ct. at 2248-49.  These factors were previously articulated in *Summum*, where the Court determined that privately donated monuments displayed in a public park constituted government speech.  555 U.S. at 464.  All three factors weigh in favor of finding that the registration numbers on California license plates—including those numbers assigned by DMV at the request of the vehicle owner—are government speech.

1. **The State Has Historically Used Registration Numbers on License Plates to Communicate the Status and Identity of Validly Registered Motor Vehicles.**

The registration numbers on California license plates easily satisfy the first factor of the *Walker* test. The first factor—history—considers whether the type of speech under scrutiny has traditionally "communicated messages" on behalf of the government. *Walker*, 135 S. Ct. at 2248. In *Summum*, the Court observed that "[g]overnments have long used monuments to speak to the public." *Summum*, 555 U.S. at 470. Monuments on public land, even privately funded ones, were no different as far as this factor was concerned. *See id.* at 470–71. "Since ancient times," the Court said "kings, emperors, and other rulers have erected statues of themselves to remind their subjects of their authority and power," and today governments erect monuments "to convey some thought or instill some feeling in those who see the structure." *Id.* at 470. License plates, too, the Supreme Court said, had a well-recognized history of communicating messages from the states that issued them, whether in graphics, slogans, or text. *Walker*, 135 S. Ct. at 2248.

California has historically relied upon registration numbers displayed on license plates to convey a vehicle's status as validly registered and its specific identity to the public. "The nature of motor vehicle traffic requires that there be a more certain indicia of ownership than mere possession, for the protection of the general public in case of accidents or violations of the law and to prevent fraud upon innocent purchasers." *Parke v. Franciscus*, 194 Cal. 284, 292 (1924). "In order to effectuate this purpose registration and identification of motor vehicles is required." *Id.*; *see also Kahn v. Dep't of Motor Vehicles*, 16 Cal. App. 4th 159, 166 (1993) ("A vehicle license plate is a state-imposed display of registered vehicle identification."). DMV issues license plates to all registered vehicles. Cal. Veh. Code § 4850(a). The requirement of motor vehicle registration is designed to protect owners, prospective purchasers, and other persons who might have reason to deal with or be affected by the operation of the vehicle, principally by affording identification. *See Stoddart v. Peirce*, 53 Cal.2d 105, 119 (1959).

As the *Walker* Court acknowledged, the basic function of a license plate is to "convey . . . state names and vehicle identification numbers . . . ." 135 S.Ct. at 2248. Even the dissenting justices in *Walker* recognized that "all license plates unquestionably contain some government

10

1    speech" such as "the name of the State and the numbers and/or letters identifying the vehicle.'"

2    135 S.Ct. at 2255-56 (Alito, J., dissenting).  The registration number carries out the essential

3    identification and other regulatory functions of the registration and license plate requirements.

4    The Indiana Supreme Court recognized this when it rejected a challenge to Indiana's personalized

5    license plate program, finding that the "combination of letters and numbers that actually identify

6    the vehicle" make Indiana's personalized license plates "more clearly government IDs than . . .

7    the specialty plates in *Walker*."  *Comm'r of Indiana Bureau of Motor Vehicles v. Vawter*, 45

8    N.E.3d 1200, 1205 n. 7 (Ind. 2015) (citing *Walker*, 135 S.Ct. at 2249).  California license plates

9    and the registration numbers on them have historically been used by the State to communicate the

10    identity and registration status of motor vehicles on the State's public roads, and so satisfy the

11    first *Walker* factor.

12           **2.    Registration Numbers on License Plates Are Closely Identified with
13                   the State.**

14           The registration numbers on California license plates also satisfy the second *Walker*

15    factor—endorsement—which asks whether the message is closely identified in the public mind

16    with the State.  *Walker*, 135 S.Ct. at 2248; *see also Summum*, 555 U.S. at 472 (whether the kind

17    of speech at issue is "often closely identified in the public mind with the government"); *Mech v*

18    *School Bd. Of Palm Beach County, Fla.*, 806 F.3d 1070, 1076 (11th Cir. 2015) (whether

19    "observers reasonably believe the government has endorsed the message").   Monuments in

20    public parks were identified with the government because "parks are often closely identified in

21    the public mind with the government unit that owns the land," and because "[i]t certainly is not

22    common for property owners to open up their property for the installation of permanent

23    monuments that convey a message with which they do not wish to be associated."  *Summum*, 555

24    U.S. at 471, 472.  And in *Walker*, the Court held that "[a] license plate is a government article

25    serving the governmental purposes of vehicle registration and identification.  The governmental

26    nature of the plates is clear from their faces: The State places [its] name . . . in large letters at the

27    top of every plate."  *Id*. at 2248.  The Court continued, finding plates are closely identified with

28    the state because the government required them and regulated them for undeniably governmental

11

1    purposes, and determined that a state's license plates "are, essentially, government IDs.  And

2    issuers of IDs 'typically do not permit' the placement on their IDs of 'message[s] with which they

3    do not wish to be associated.'"  *Walker*, 135 S.Ct. at 2249 (quoting *Summum,* 555 U.S., at 471);

4    *see also Shurtleff v. City of Bos*., 928 F.3d 166, 174 (1st Cir. 2019) ("the third-party [Christian]

5    flag would keep company with the United States flag and the flag of the Commonwealth of

6    Massachusetts, two powerful governmental symbols.  'In this context, there is little chance that

7    observers will fail to appreciate the identity of the speaker' as being the City." (quoting *Summum*,

8    555 U.S. at 471)); *Mech*, 806 F.3d at 1076 (school banners were government endorsed in public's

9    eye because school would not hang banners if they contained messages with which they would

10   not be associated, and the banners were all required to include the schools' initials and these

11   critical words: "Partner in Excellence.").

12        *Walker* further concluded that "persons who observe" designs on IDs "routinely—and

13   reasonably—interpret them as conveying some message on the issuer's behalf."  *Walker*, 135

14   S.Ct. at 2249 (internal quotation marks and citation omitted).  "Indeed, a person who displays a

15   message on a . . . license plate likely intends to convey to the public that the State has endorsed

16   that message.  If not, the individual could simply display the message in question in larger letters

17   on a bumper sticker right next to the plate."  *Id*.  The same is true of the registration number on a

18   license plate.  Persons who observe the registration number displayed on a license plate know that

19   it must be approved, manufactured, and issued by the State, and interpret it as conveying

20   information on behalf of the State.  The appeal of displaying a customized registration number—

21   rather than just a bumper sticker with the same text—is partly in the public perception that the

22   State has somehow endorsed the message by assigning it as the registration number.  *Id*. ("[T]he

23   individual prefers a license plate design to the purely private speech expressed through bumper

24   stickers.  That may well be because Texas's license plate designs convey government agreement

25   with the message displayed."); *see also Vawter*, 45 N.E.3d at 1206 (finding that although

26   applicants for personalized plates could have displayed messages using bumper stickers or

27   window decals, "many have preferred to have the state approve and authorize individualized

28

12

1    alphanumeric combinations for display on government property for the purpose of vehicle

2    identification").

3            Like Texas, California "requires . . . vehicle owners to display license plates, and every . . .

4    license plate is issued by the State." *Walker*, 135 S. Ct. at 2248; *cf.* Cal. Veh. Code §§ 4850(a),

5    5200(a), 5201(a).  Also similar to the situation in *Walker*, in California, "[e]very license plate

6    shall have displayed upon it the registration number assigned to the vehicle for which it is issued,

7    together with the word 'California' or the abbreviation 'Cal.' and the year number for which it is

8    issued . . . ." *Id.* § 4851.  The preference for displaying the desired text on a license plate issued,

9    manufactured, and required to be displayed by the State indicates that the text displayed on a

10   license plate is closely associated with the State.

11           **3.      The State Maintains Strict Control over the Content of Registration
                       Numbers on License Plates.**
12

13           Finally, registration numbers also satisfy the third *Walker* factor, whether the relevant

14   government unit "maintains direct control over the messages conveyed" through the speech in

15   question.  *Walker*, 135 S.Ct. at 2249.  In *Summum*, the city had "rules governing the acceptance of

16   artwork for permanent placement in city parks," requiring approval of the finished product or a

17   model before any piece of art would be accepted.  *Summum*, 555 U.S. at 472.  Likewise, Texas

18   expressly reserved "final approval authority" over all license plate designs and would reject

19   designs inconsistent with how the state chose "to present itself and its constituency."  *Walker*, 135

20   S. Ct. at 2249; *see also Shurtleff*, 928 F.3d at 174 ("The record is clear that the City owns the

21   flagpole at issue and that it controls which third-party flags are raised in place of the City flag.

22   Interested persons and organizations must apply to the City for a permit before they can raise a

23   flag on this flagpole."); *Mech*, 806 F.3d at 1078 ("Florida's schools both had approval authority

24   and control over the banners' design, typeface, color, contents, size, and location, including

25   mandating that the school's initials and the phrase "Partner in Excellence" appear on each

26   banner.").

27           The *Walker* Court weighed this factor in favor of finding that Texas's specialty plates

28   constituted government speech, based on Texas's "sole control over the design, typeface, color,

                                                    13

1   and alphanumeric pattern for all license plates"; the requirement for State approval of "every

2   specialty plate design proposal"; and the State's regular exercise of this authority. *Id.* The Court

3   determined that "like the city government in *Summum,* Texas has effectively controlled the

4   messages conveyed by exercising final approval authority over their selection." *Id.* (citing

5   *Summum*, 555 U.S., at 473, internal quotation marks and additional citation omitted).

6        As with the specialty plates issued by Texas, the registration numbers assigned by DMV to

7   be displayed on California license plates are strictly controlled.  Several provisions of state law

8   operate in tandem to prevent the display of a registration number that is not validly issued.  State

9   law prohibits the display of a license plate that has been "altered from its original markings" (Cal.

10  Veh. Code § 4464); makes punishable as a misdemeanor the manufacture or sale of "a decorative

11  or facsimile license plate of a size substantially similar to the license plate issued by" DMV (Cal.

12  Veh. Code § 4463.5(a), (c)); and makes punishable as a felony the "[a]lteration, forgery,

13  counterfeiting, or falsification of a license plate" that was issued by DMV, or of a license plate

14  with intent to represent it as issued by DMV (Cal. Veh. Code § 4463(a)(1)), as well as the display

15  of a canceled, suspended, revoked, altered, forged, counterfeit, or false license plate (*id.*).

16       The specific information displayed on a plate is also tightly controlled.  For instance,

17  "[e]very license plate shall have displayed upon it the registration number assigned to the vehicle

18  for which it is issued, together with the word 'California' or the abbreviation 'Cal.' and the year

19  number for which it is issued . . . ." *Id.* § 4851.  Registration numbers are subject to minimum

20  height, width, and spacing requirements, and may consist of up to seven characters. *Id.* §

21  4852(a).

22       DMV also exercises strict control over the content of the registration number.  Registration

23  numbers may not be duplicated, and substituting numbers or letters "to create another

24  configuration of a similar appearance" is also prohibited.  Cal. Veh. Code § 5105(a); Cal. Code

25  Regs. tit. 13, § 206.00(c)(7)(B); *see also* Cal. Veh. Code § 4458 (replacement for lost or stolen

26  license plates must have different number).  And, the restrictions Plaintiffs challenge reinforce

27  DMV's control over the registration numbers it assigns.  DMV "may refuse to issue any

28  combination of letters or numbers, or both, that may carry connotations offensive to good taste

14

1    and decency or which would be misleading," Cal. Veh. Code § 5105(a), "based on criteria which

2    includes, but is not limited to," the factors listed the implementing regulation, Cal. Code Regs. tit.

3    13, § 206.00(c)(7)(D).  California has "effectively controlled the messages conveyed by

4    exercising final approval authority over their selection." *Walker*, 135 S.Ct. at 2249 (internal

5    quotation marks and citation omitted).  As with the specialty plates in *Walker*, this direct control

6    over the display and content of the registration number supports a finding that the registration

7    number constitutes government speech.  *See id.* ("Texas offers plates that say 'Fight Terrorism.'

8    But it need not issue plates promoting al Qaeda.").)  Similarly, California's "final approval

9    authority allows [it] to choose how to present itself and its constituency."  *Id.*

10
11          **4.      Other Features of Registration Numbers also Signify Government
                      Speech.**

12          In addition to the three factors described above, the *Walker* Court also found that "other

13   features . . . indicate that the message conveyed" by Texas's specialty plates "is conveyed on

14   behalf of the government."  *Walker*, 135 S.Ct. at 2250.  The registration numbers displayed on

15   California license plates share those features.  Registration numbers are displayed on license

16   plates that are "government-mandated, government-controlled, and government-issued IDs that

17   have traditionally been used as a medium for government speech."  *Id.*  These license plates all

18   identify "California" as the issuer of the IDs.  Cal. Veh. Code § 4851.  The assigned registration

19   numbers as displayed on license plates "are meant to convey and have the effect of conveying a

20   government message, and they thus constitute government speech."  *Walker*, 135 S.Ct. at 2250

21   (citing *Summum*, 555 U.S. at 472, internal quotation marks omitted).

22          **C.      License Plates and Their Registration Numbers Are Still Government
                      Speech Despite Participation by Private Parties in Generating that Speech.**
23

24          The registration numbers assigned by DMV and displayed on California license plates are

25   government speech even though the State permits private parties, within limits, to select a specific

26   registration number.  As the Court explained in *Walker*, "[t]he fact that private parties take part in

27   the design and propagation of a message does not extinguish the governmental nature of the

28   message . . . ." 135 S.Ct. at 2251.  The specialized plates at issue in *Walker* displayed designs

                                        15

1   proposed by private parties, yet the Court found the "government entity may exercise its freedom

2   to express its views" even "when it receives assistance from private sources for the purpose of

3   delivering a government-controlled message."  *Walker*, 135 S.Ct. at 2251 (citing *Summum*, 555

4   U.S. at 468, internal quotation marks omitted).  In coming to this conclusion, the Court relied on

5   its previous holding in *Summum*, in which private entities "financed and donated monuments that

6   the government accept[ed] and display[ed] to the public."  555 U.S. at 470–471.

7          While Plaintiffs allege that "[p]ersonalized license plate configurations . . . reflect the

8   applicant's personal expression" (Compl. ¶ 46), similar to *Walker*, the vehicle owner's role in

9   proposing a particular configuration of letters and numbers that DMV may choose to assign as a

10  registration number does not, by itself, transform the registration number from government

11  speech into private speech.  Although customized registration numbers "are individually chosen

12  instead of created by the state, this difference is secondary and does not change the principal

13  function of state-issued license plates as a mode of unique vehicle identification."  *Vawter*, 45

14  N.E.3d at 1205; *see also Mech*, 806 F.3d at 1078–79 ("Mech contends that the schools do not

15  meaningfully control the messages on the banners because the bulk of the information—the logo,

16  name, phone number, and web address—comes from the sponsor, not the school.  But . . . [t]he

17  monuments in *Summum* and the license plates in *Walker* were government speech, even though

18  private entities designed them."  (citing *Walker*, 135 S.Ct. at 2251; *Summum*, 555 U.S. at 470–

19  71)).  A customized registration number is still assigned by the State, endorsed by the State, and

20  controlled by the State; the plates are manufactured by the State and remain the property of the

21  State rather than becoming that of the registration applicant; and the customized registration

22  number still serves the same public safety and regulatory functions as a non-customized

23  registration number.  "That the state permits license holders, for an additional fee, to vary

24  minimally their vehicle identification from the prescribed form by selecting letter and/or number

25  combinations which may reflect an individual's personal or professional identity, or possibly

26  express a thought or idea, is purely incidental to the primary function of vehicle identification."

27  *Kahn*, 16 Cal. App. 4th at 165.  Although state law permits customization of the registration

28  number in order to generate revenue for environmental conservation projects, this program does

16

1   not change the fundamental character of the registration number from government to private

2   speech, and does not diminish the governmental nature of the speech.

3   **II.    FORUM ANALYSIS IS NOT APPROPRIATE.**

4          *Walker* forecloses the argument that providing vehicle owners the ability to request

5   personalized plates creates a government-provided forum for individual speech.  *Walker*, 135

6   S.Ct. at 2250.  Courts use "a forum based approach for assessing restrictions that the government

7   seeks to place on the use of its property."  *Int'l Soc'y for Krishna Consciousness of California,*

8   *Inc. v. City of Los Angeles*, 764 F.3d 1044, 1049 (9th Cir. 2014) (internal quotation marks and

9   citations omitted).  Plaintiffs argue that a personalized license plate is "a forum of expression for

10  the plate's holder."  (Compl. ¶ 47.)  But *Walker* explicitly rejected the argument that the State

11  "provides a forum for private speech by making license plates available to display the private

12  parties' designs," and concluded that "forum analysis is misplaced here."  *Walker*, 135 S.Ct. at

13  2250.

14         "The forum doctrine has been applied in situations in which government-owned property or

15  a government program was capable of accommodating a large number of public speakers without

16  defeating the essential function of the land or the program."  *Summum*, 555 U.S. at 478.  But,

17  "[t]he obvious truth of the matter is that if public parks were considered to be traditional public

18  forums for the purpose of erecting privately donated monuments, most parks would have little

19  choice but to refuse all such donations.  And where the application of forum analysis would lead

20  almost inexorably to closing of the forum, it is obvious that forum analysis is out of place."

21  *Summum*, 555 U.S. at 480.  The same is true of vehicle registration numbers.  If, by virtue of

22  providing the environmental license plate program, the State (acting through DMV) could not

23  exercise any control over the registration numbers that it must assign—such that the State would

24  be forced to assign registration numbers consisting of obscenities or racial slurs, or demonstrate

25  support for hate groups or terrorist organizations—the State would have no choice but to

26  discontinue the program.

27         In analyzing Texas's specialty license plates, the *Walker* Court determined that "our

28  precedents regarding government speech (and not our precedents regarding forums for private

17

1   speech) provide the appropriate framework through which to approach the case."  *Walker*, 135 S.

2   Ct. at 2246 (citing *Summum*, 555 U.S. at 464).  "Because the State is speaking on its own behalf,

3   the First Amendment strictures that attend the various types of government-established forums do

4   not apply."  *Id*. at 2250.  Even if forum analysis were appropriate here, the registration numbers

5   assigned by DMV and displayed on California license plates do not satisfy the criteria for any

6   government-provided forum.

7   **A.      Registration Numbers Are Not a Traditional, Designated, or Limited**

8   **Public Forum.**

9        As the *Walker* Court observed, "license plates are not traditional public forums for private

10  speech."  *Walker*, 135 S. Ct. at 2250.  Such places have "immemorially been held in trust for the

11  use of the public and, time out of mind, have been used for purposes of assembly, communicating

12  thoughts between citizens, and discussing public questions."  *Perry Ed. Assn. v. Perry Local*

13  *Educators' Assn.*, 460 U.S. 37, 45 (1983) (internal quotation marks and citation omitted).  Neither

14  license plates nor the registration numbers displayed on them have historically been used for

15  these purposes.

16       Nor do registration numbers on California license plates qualify as a designated public

17  forum or a limited public forum.  A designated public forum exists when "government property

18  that has not traditionally been regarded as a public forum is intentionally opened up for that

19  purpose," *Summum,* 555 U.S. at 469 (citation omitted), and a "limited public forum" exists when

20  a government has "reserv[ed a forum] for certain groups or for the discussion of certain

21  topics," *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 829 (1995).  A

22  government "does not create a public forum by inaction or by permitting limited discourse, but

23  only by intentionally opening a nontraditional forum for public discourse."  *Cornelius v. NAACP*

24  *Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 802 (1985).  To determine this, courts look to "the

25  policy and practice of the government" and to "the nature of the property and its compatibility

26  with expressive activity . . . ."  *Id.*

27       Here, there are numerous indications that California did not intend to open a non-traditional

28  forum for public discourse.  Similar to the circumstances in *Walker*, California's "policies and the

18

1    nature of its license plates indicate that the State did not intend" for the registration numbers on

2    its license plates "to serve as either a designated public forum or a limited public forum."  135

3    S.Ct. at 2251.  DMV's final authority over each requested registration number "militates against a

4    determination that [the State] has created a public forum."  *Id*. (citing *Cornelius,* 473 U.S. at 803-

5    804).  While randomized license plate numbers generally are offered to the public

6    indiscriminately (*i.e.*, anyone who applies for a license plate can have one if they pay the

7    registration fees and meet the requirements), California does not offer customized vehicle

8    registration numbers for display on its license plates "for indiscriminate use by the general

9    public" or "granted [them] as a matter of course" to every applicant.  *Perry Educ. Ass'n,* 460 U.S.

10   at 47.

11        In addition, the nature of the government property in question—a plate affixed to each

12   vehicle in order to display a State-assigned registration number with a maximum of seven

13   characters—does not lend itself to service as a forum for public expression.  The principal

14   function of the registration number is to uniquely identify validly registered vehicles, "not to

15   'encourage a diversity of views from private speakers.'"  *United States v. Am. Library Ass'n,*

16   *Inc.,* 539 U.S. 194, 206 (2003) (quoting *Rosenberger,* 515 U.S. at 834).

17        **B.    Registration Numbers Are Not a Nonpublic Forum.**

18        A nonpublic forum exists "[w]here the government is acting as a proprietor, managing its

19   internal operations."  *Walker,* 135 S.Ct. at 2251 (quoting *Int'l Soc'y for Krishna Consciousness,*

20   *Inc. v. Lee,* 505 U.S. 672, 678 (1992)) (alteration in original).  Just as Texas specialty plates do

21   not constitute a government-provided nonpublic forum, registration numbers on California license

22   plates also do not constitute such a forum.  This is because "based on the historical context,

23   observers' reasonable interpretation of the messages conveyed" by registration numbers displayed

24   on license plates, and "the effective control that the State exerts over the . . . selection process"

25   for registration numbers, the registration numbers "are meant to convey and have the effect of

26   conveying a government message."  *Id.* (citing *Summum*, 555 U.S. at 472, internal quotation

27   marks omitted).

28

                                                  19

1        Nor do registration numbers constitute a government-provided nonpublic forum simply

2   because vehicle owners can pay a fee for a customized registration number.  "The fact that private

3   parties take part in the design and propagation of a message does not . . . transform the

4   government's role into that of a mere forum-provider."  *Walker*, 135 S.Ct. at 2251.  As the

5   Supreme Court determined in *Summum* and *Walker*, the "government entity may exercise [its]

6   freedom to express its views" even "when it receives assistance from private sources for the

7   purpose of delivering a government-controlled message."  *Walker*, 135 S.Ct. at 2251 (quoting

8   *Summum*, 555 U.S. at 468).  And, "the existence of government profit alone is insufficient to

9   trigger forum analysis."  As with Texas's specialty license plates, it is "sufficiently clear" that the

10  registration numbers are assigned by and reflect speech by the State "such that the existence of

11  annual fees" for customized registration numbers does not convert those numbers into a

12  nonpublic forum.  *Id.* at 2252; *see also Katz v. Dep't of Motor Vehicles*, 32 Cal. App. 3d 679, 685

13  (Cal. Ct. App. 1973) ("[T]he state has only permitted minor variations from the precisely

14  prescribed form and shape of the license plate.  By permitting to the members of the public a

15  limited input in the formulation of the identifying data to secure a contribution to the

16  environmental defense fund, the state has not altered the nature of the plate as an identifying

17  mechanism nor created an 'open forum.'").

18  **III.    THE FACIAL CHALLENGE FAILS AS A MATTER OF LAW BECAUSE IT IS NOT
            ENTIRELY VIOLATIVE OF THE FIRST AMENDMENT AND PLAINTIFFS FAIL TO PLEAD
19          A SUBSTANTIAL NUMBER OF ITS APPLICATIONS ARE UNCONSTITUTIONAL.**

20       Even if *Walker* did not apply, Plaintiffs' facial challenge still fails because the regulation

21  constitutionally prohibits certain kinds of configurations and there are no allegations supporting

22  an overbreadth challenge.  "As a general matter, a facial challenge is a challenge to an entire

23  legislative enactment or provision."  *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011)

24  (citation omitted).  A successful challenge of this type reflects "that the law is unconstitutional in

25  all of its applications."  *Washington State Grange v. Washington State Republican Party*, 552

26  U.S. 442, 449 (2008).   And under a facial overbreadth challenge in the First Amendment context,

27  "a law may be invalidated as overbroad if 'a substantial number of its applications are

28  unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"  *United States v.*

20

1   *Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange*, 552 U.S. at 449 n. 6).  The

2   regulation is facially constitutional and is not overbroad in its sweep.

3          Plaintiffs confront a "heavy burden" in raising a facial constitutional challenge to the

4   California regulation.  *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998).  The

5   Supreme Court has repeatedly stated that facial invalidation of legislation is disfavored.  *See*

6   *Washington State Grange*, 552 U.S. at 450; *Nat'l Endowment for the Arts*, 524 U.S. at 580

7   (noting facial invalidation "has been employed by the Court sparingly and only as a last resort");

8   *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 223 (1990) ("[F]acial challenges to legislation are

9   generally disfavored.").  To prevail on a facial attack, Plaintiffs must establish "that no set of

10  circumstances exists" in which the California regulation would be valid.  *Stevens*, 559 U.S. at 472

11  (internal quotations and citations omitted).  Plaintiffs' facial challenge fails because the law is

12  constitutional in at least one application.  *See United States v. Inzunza*, 638 F.3d 1006, 1019 (9th

13  Cir. 2011) (a facial challenge fails because the plaintiff must "'establish that no set of

14  circumstances exists under which the [statute] would be valid.'" (quoting *United States v.*

15  *Salerno*, 481 U.S. 739, 745 (1987))).

16         The regulations at issue are constitutional in more than one application, as noted in greater

17  detail below.  However, to provide one such example that defeats Plaintiffs' facial challenge, an

18  application will be denied if "[t]he configuration is a swear word or term considered profane,

19  obscene, or repulsive."  Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(3).  Because the First

20  Amendment does not protect obscene speech, *Roth v. United States*, 354 U.S. 476, 483 (1957),

21  incitement, *Brandenburg v. Ohio* , 395 U.S. 444, 447-449 (1969) (per curiam), or fighting words,

22  *Chaplinsky v. New Hampshire* , 315 U.S. 568, 572 (1942), the regulation may appropriately limit

23  speech not protected by the First Amendment.

24         And any facial overbreadth challenge must fail as well.  Because the registration numbers

25  displayed on California license plates are government speech, Plaintiffs cannot demonstrate that

26  the regulation implicates, much less violates, the First Amendment Free Speech Clause in a

27  "substantial" number of cases, "judged in relation to [the regulation's] plainly legitimate sweep."

28  *Stevens*, 559 U.S. at 473 (quoting *Washington State Grange*, 552 U.S. at 449 n. 6).  And even if

21

1    the States' regulation is not considered government speech, the facial-overbreadth challenge fails

2    because a large number of the specific registration numbers covered by the statute can be

3    prohibited by the State consistent with the First Amendment.  "The overbreadth claimant bears

4    the burden of demonstrating, from the text of the law and from actual fact, that substantial

5    overbreadth exists."  *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (internal quotation marks and

6    brackets omitted).  Even still, the "strong medicine" of the doctrine is employed "with hesitation,

7    and then 'only as a last resort.'"  *New York v. Ferber*, 458 U.S. 747, 769 (1982) (citation omitted).

8    "[T]he mere fact that one can conceive of some impermissible applications of a statute is not

9    sufficient to render it susceptible to an overbreadth challenge."  *Members of City Council of City*

10   *of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984) (denying overbreadth

11   challenge after plaintiffs "simply failed to demonstrate a realistic danger that the ordinance will

12   significantly compromise recognized First Amendment protections of individuals not before the

13   Court").  Rather, "there must be a realistic danger that the statute itself will significantly

14   compromise recognized First Amendment protections of parties not before the Court for it to be

15   facially challenged on overbreadth grounds."  *Id.* at 801.

16        While it is Plaintiffs' burden to allege that substantial overbreadth exists—and they have

17   not pled facts that meet this burden—it is clear that many of the registration number

18   configurations covered by the regulation can constitutionally be prohibited under existing case

19   law.  As noted previously, configurations that are obscene, vulgar, profane, or constitute fighting

20   words fall outside of the First Amendment's protections.  *See Iancu v. Brunetti*, 139 S. Ct. 2294,

21   2303 (2019) (Roberts, C.J., concurring in part and dissenting in part) (forbidding registration of

22   "obscene, vulgar, or profane marks does not offend the First Amendment"); *Brown v.*

23   *Entertainment Merchants Ass'n*, 564 U.S. 786, 791 (2011) (listing instances where the First

24   Amendment does not protect speech); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383, 393 (1992)

25   ("fighting words," defamation, and obscenities fall outside the First Amendment); Cal. Code

26   Regs. tit. 13, § 206.00(c)(7)(D)(1), (2), (3), (4), (7).

27        Similarly, the State can rightfully refuse efforts to impersonate or misrepresent a law

28   enforcement entity in violation of 18 U.S.C. § 915 (illegal to impersonate a diplomat), 18 U.S.C.

22

§ 912 (illegal to impersonate a federal officer), Cal. Penal Code § 538d (illegal to impersonate a police officer) and similar statutes.  Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(5).  Statutes criminalizing, for instance, false impersonation of a federal official have survived scrutiny under the First Amendment Free Speech Clause.  *See, e.g., United States v. Tomsha-Miguel*, 766 F.3d 1041, 1048–49 (9th Cir. 2014) ("As [*United States v.] Alvarez*[, ⸺ U.S. ⸺, 132 S.Ct. 2537 (2012) (plurality opinion)] made clear, the government has the constitutional power to prohibit the impersonation of federal officials and employees" and characterized that prohibition as serving "substantial government interests."); *United States v. Bonin*, 932 F.3d 523 (7th Cir. 2019), *cert. denied*, 140 S.Ct. 960, 2020 WL 411718, No. 19-809 (January 27, 2020) (First Amendment facial challenge and facial overbreadth challenge to 18 U.S.C. 912 denied as the statute is not an unconstitutional restriction on free speech).  California may constitutionally reject an application that where "[t]he configuration misrepresents a law enforcement entity."  Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(5).

The regulation has many constitutional applications, and an insubstantial number of its applications, represented by the five Plaintiffs, are hypothetically unconstitutional as applied. The Court should therefore dismiss the Complaint without leave to amend.  Plaintiffs' First Amendment claims are legally flawed and "could not possibly be cured by the allegation of other facts."  *Watison*, 668 F.3d at 1117 (internal quotation marks and citation omitted).

## IV.   CONCLUSION

For the foregoing reasons, the Complaint should be dismissed, without leave to amend.

Dated:  June 2, 2020                                    Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MICHELLE M. MITCHELL
Supervising Deputy Attorney General

 /s/ *Chad A. Stegeman*
CHAD A. STEGEMAN
Deputy Attorney General
*Attorneys for Steve Gordon, in his official capacity*

23

# CERTIFICATE OF SERVICE

Case Name:   ***Ogilvie, Paul, et al. v. Steve Gordon***          Case No.   **4:20-cv-01707-JST**

I hereby certify that on June 2, 2020, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

- **[PROPOSED] ORDER GRANTING DEFENDANT GORDON'S MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 2, 2020, at San Francisco, California.

| M. Mendiola | /s/ *M. Mendiola* |
|---|---|
| Declarant | Signature |

SA2020101541
42213750.docx