WENCONG FA, SBN 301679
Email: WFa@pacificlegal.org
JOSHUA P. THOMPSON, SBN 250955
Email: JThompson@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Plaintiffs, Paul Ogilvie, et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PAUL OGILVIE, *et al.*, | ) Case No.: 4:20-cv-01707-JST |
| Plaintiffs, | ) |
| v. | ) **RESPONSE IN OPPOSITION TO** |
| | ) **MOTION TO DISMISS** |
| STEVE GORDON, in his official capacity as Director of the California Department of Motor Vehicles, | ) Hearing Date: July 8, 2020 |
| | ) Time:        2:00 p.m. |
| Defendant. | ) Judge:        Jon S. Tigar |
| | ) Location:     Courtroom 6 |
| | ) Action Filed: March 10, 2020 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

STATEMENT OF ISSUES ...................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

STATEMENT OF FACTS ....................................................................................... 3

    A.   Legal Background ........................................................................ 3

    B.   Factual Background ...................................................................... 5

STANDARD OF REVIEW ...................................................................................... 8

ARGUMENT ............................................................................................................. 8

   I.   PERSONALIZED LICENSE PLATE CONFIGURATIONS REPRESENT THE APPLICANT'S PERSONAL SPEECH, NOT GOVERNMENT SPEECH ...................... 8

    A.   Personalized License Plates Have Historically Been Used to Convey Private Speech, Not Government Speech ................................ 9

    B.   Personalized License Plates Are Closely Identified with Individuals, Not the Government ................................................ 11

    C.   Personalized License Plate Applicants Largely Control  the Messages on Personalized License Plates ...................................... 13

    D.   Other Factors Also Suggest that Personalized License Plate Configurations Constitute Private Speech ...................................... 15

   II.   THE DEPARTMENT'S REGULATION IS UNCONSTITUTIONAL REGARDLESS OF FORUM ................................................................. 16

    A.   California's Personalized License Plate Regulation Is Unconstitutional Under Any Forum Analysis ................................ 16

    B.   The Department's Dire Predictions are Irrelevant and Meritless .................................. 17

   III.  Plaintiffs' Facial Challenge Is Proper ........................................ 18

CONCLUSION ......................................................................................................... 20

CERTIFICATE OF SERVICE ............................................................................... 22

Response in Opposition to Motion to
Dismiss
    i    Case No.: 4:20-cv-01707-JST

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................8

*B&B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S. Ct. 1293 (2015) ....................................12

*Balisteri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) .................................8

*Byrne v. Rutledge*, 623 F.3d 46 (2d Cir. 2010) .....................................................11

*City of Los Angeles v. Patel*, 135 S. Ct. 2443 (2015) ...............................................18

*Comm'r of Indiana Bureau of Motor Vehicles v. Vawter*,
      45 N.E.3d 1200 (Ind. 2016) ...................................................................2

*Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*,
      473 U.S. 788 (1985) ...........................................................................16

*Eagle Point Education Ass'n v. Jackson Cty. Sch. Dist. No. 9*,
      880 F.3d 1097 (9th Cir. 2018) .................................................................9

*Good News Club v. Milford Central School*, 533 U.S. 98 (2001) .................................17

*Hart v. Thomas*, 422 F. Supp. 3d 1227 (E.D. Ky. 2019) .........................................2

*Iancu v. Brunetti*, 139 S. Ct. 2294 (2019) ....................................................3, 16-19

*Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550 (2005) ....................................9

*Kneivel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ...................................................8

*Kotler v. Webb*, No. 19-cv-2682, 2019 WL 4635168 (C.D. Cal. Aug. 29, 2019) ......... 1, 5-6, 8, 10

*Matal v. Tam*, 137 S. Ct. 1744 (2017) .....................................2-3, 9-10, 12-14, 16-19

*Matwyuk v. Johnson*, 22 F. Supp. 3d 812 (W.D. Mich. 2014).....................................11

*Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876 (2018) .............................17, 19

*Mitchell v. Md. Motor Vehicles Admin.*, 450 Md. 282 (2016) .......................2, 10, 11, 14

*Morgan v. Martinez*, No. 3:14-02468, 2015 WL 2233214 (D.N.J. May 12, 2015).....................11

*Perry Ed. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37 (1983) ...........................16

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)....................................8, 9, 17

*Rosenberger v. Rector and Visitors of the Univ. of Virginia*,
      515 U.S. 819 (1995)........................................................................16, 17

*Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012)........................17

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ...........................................8

*United States v. Stevens*, 559 U.S. 460 (2010) ...........................................20

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
   135 S. Ct. 2239 (2015) ........................................ 1, 2, 4, 9-16

**Statutes**

15 U.S.C. § 1052 ...........................................14, 19

15 U.S.C. § 1052(a) ...........................................19

Cal. Code Regs. tit. 13 § 206.00 ...........................................5

Cal. Code Regs. tit. 13 § 206.00(c) ...........................................2, 11, 13

Cal. Code Regs. tit. 13 § 206.00(c)(7)(D) ...........................................1, 5, 17

Cal. Pub. Res. Code § 21190 ...........................................4

Cal. Veh. Code § 5004.3(g)(1) ...........................................2, 4, 12

Cal. Veh. Code § 5060 ...........................................4

Cal. Veh. Code § 5060(d)(1)(C) ...........................................2, 4, 11, 15

Cal. Veh. Code § 5103 ...........................................3, 4

Cal. Veh. Code § 5105 ...........................................5

Cal. Veh. Code § 5105(a) ...........................................12

Cal. Veh. Code § 5106(a)-(b) ...........................................4

Cal. Veh. Code § 5154 ...........................................2, 4, 11

Cal. Veh. Code § 5157 ...........................................4

Cal. Veh. Code § 5201 ...........................................3

**Rule**

Fed. R. Civ. P. 12(b)(6) ...........................................8

**Other Authorities**

Cal. Dep't of Motor Vehicles, *Special Interest License Plates*,
   https://www.dmv.ca.gov/portal/dmv/detail/online/elp/elp ...........................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**STATEMENT OF ISSUES**

2

Whether California's ban on personalized license plate configurations that "may carry

3

connotations offensive to good taste and decency," Cal. Code Regs. tit. 13, § 206(c)(7)(D), facially

4

violates the First Amendment.

5

**INTRODUCTION AND SUMMARY OF ARGUMENT**

6

Each year, the California Department of Motor Vehicles generates over $60 million from

7

a popular program that allows Californians to obtain personalized license plates expressing

8

intimately personal ideas. ECF No. 1, Compl. ¶ 1. Plaintiffs are a diverse group of Californians

9

who sought to express personal messages under this program. *Id.* ¶ 4. They include a veteran of

10

four tours in Afghanistan and Iraq who sought to express his military nickname and a gay computer

11

programmer who aspired to reclaim a disparaging term. *Id.* Yet they are among the 30,000

12

Californians each year who are censored by the DMV under a vague regulation that employs four

13

Department administrators to deny configurations that the DMV believes to contain "connotations

14

offensive to good taste and decency." *Id.* ¶ 2; Cal. Code Regs. tit. 13, § 206(c)(7)(D).

15

The Department's primary argument for asking this Court to dismiss the complaint is that

16

*personalized* license plate configurations—which are created by license plate applicants—are

17

actually government speech. *See* ECF No. 26, Dep't Mot. to Dismiss, at 8-17. According to the

18

Department, the Supreme Court's decision in *Walker v. Texas Div., Sons of Confederate Veterans,*

19

*Inc.*, 135 S. Ct. 2239 (2015), which upheld a Texas restriction on specialty plate designs as

20

government speech, "is directly on point." ECF No. 26 at 8 (boasting that "[i]t is unusual to have

21

a case from the Supreme Court so directly on point, but that is the case here"). Yet the Department

22

fails to disclose that *Walker* **expressly** left open the question presented here. *See Walker,* at 2244

23

(declining to address the State's personalization program, which allows "a vehicle owner [to]

24

request a particular alphanumeric pattern for use as a plate number, such as 'BOB' or 'TEXPL8'").

25

Nor does the Department mention *Kotler v. Webb*, No. 19-cv-2682, 2019 WL 4635168, at

26

*7 (C.D. Cal. Aug. 29, 2019), in which a federal court in this circuit rejected the Department's

27

"directly-on-point" analogy so significantly that it held the Department's argument "strains

28

believability." The Department's material omissions do not end there. Although the Department

---

cites the Indiana Supreme Court's decision in *Comm'r of Indiana Bureau of Motor Vehicles v. Vawter*, 45 N.E.3d 1200, 1207 (Ind. 2016), it neglects to mention that the highest court in Maryland and a federal court in Kentucky both held that messages individuals display on their personalized license plates represent personal speech, not government speech. *See Mitchell v. Md. Motor Vehicles Admin.*, 450 Md. 282, 295 n.6 (2016); *Hart v. Thomas*, 422 F. Supp. 3d 1227, 1233 (E.D. Ky. 2019).

The majority of post-*Walker* courts—including every federal court—were correct in holding that personalized plates constitute personal speech. As those cases recognize, the logic of *Walker*, which "likely marks the outer bounds of the government speech doctrine," *Matal v. Tam*, 137 S. Ct. 1744, 1760 (2017), cannot be stretched to transform personalized plate configurations into government speech.

There are significant differences between specialty plate designs at issue in *Walker* and the personalized plate configurations at issue here. States have traditionally used license plate designs to express government messages, such as "Hoosier Hospitality" (Indiana), "Green Mountains" (Vermont), and "America's Dairyland" (Wisconsin). *Walker*, 135 S. Ct. at 2248. By contrast, individuals use personalized license plate configurations as a forum for personal expression, by celebrating their name ("BOB"), their car ("68VETT"), or their pets ("LVMYDOG"), among many other personal messages. *See Mitchell*, 450 Md. at 295 n.6. Although the Department fails to acknowledge this distinction, California law expressly recognizes the personal nature of personalized license plate configurations. It asks each applicant to supply the government with "the meaning of each [proposed configuration]." *See* Cal. Code Regs. tit. 13 § 206.00(c). And it draws a distinction between specialty plate designs that "publicize[] or promote[] a state agency," Cal. Veh. Code § 5154, and custom plate configurations that "contain[] a personalized message," *id*. § 5060(d)(1)(C).

The sheer number of personalized license plate configurations also underscores that they represent personal speech. California offers just 14 specialty plate designs, each having been requested in at least 7,500 license plate applications, Cal. Veh. Code § 5004.3(g)(1). Accordingly, California can ensure that each design it offers to the public endorses a particular government

message.[1] But the government does not express its views through the hundreds of thousands of personalized plates on California roads, or else it would be "babbling prodigiously and incoherently." *Tam*, 137 S. Ct. at 1758.

Insofar as personalized license plates are personal speech and not government speech, the Department makes no attempt to defend the regulation. Nor could it. "[A] law disfavoring 'ideas that offend' discriminates based on viewpoint, in violation of the First Amendment." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019). The regulatory provision challenged in this case does just that by prohibiting ideas that are "offensive to good taste and decency." It is thus a facially invalid restriction on speech.

A facial challenge is plainly proper here. It is black letter law that plaintiffs may mount a facial challenge against a statutory provision that disfavors certain ideas. *See Brunetti*, 139 S. Ct. at 2297 (invalidating a prohibition on registering "immoral [] or scandalous" trademarks) (quoting 15 U.S.C. § 1052(a)). Here, this Court may facially invalidate the Department's prohibition on personalized plate configurations it believes "offensive to good taste and decency" without parsing neighboring provisions of the same statute. This Court should do so. The Department acknowledges that a number of denials, "represented by the five Plaintiffs, are hypothetically unconstitutional as applied." ECF No. 26 at 23. There is no reason that 30,000 other Californians should be required to obtain legal counsel and file separate as-applied challenges before they may be relieved from going through the Department's vague, arbitrary, and discriminatory approval process. The Department's motion should be denied.

## STATEMENT OF FACTS

### A.   Legal Background

California requires motorists to display license plates in a way that makes the plates "clearly visible." Cal. Veh. Code § 5201. Each license plate contains a unique configuration, consisting of letters, numbers, or a combination of both. *Id.* §§ 5103, 5105(a). Motorists in California have two options regarding their license plate configuration: they may request a

---

[1] Cal. Dep't of Motor Vehicles, *Special Interest License Plates*, https://www.dmv.ca.gov/portal/dmv/detail/online/elp/elp.

sequential plate and receive a random license plate number or choose a personalized plate and create a custom license plate number.

The Department of Motor Vehicles administers an "environmental license plate program" that allows motorists to create a custom configuration of numbers and letters for their license plate. *See* Cal. Veh. Code § 5103. In exchange, motorists pay fees of $53 for issuance of the environmental license plates, and $43 for renewal of the plates. *See id.* § 5106(a)-(b). The money goes toward the California Environmental Protection Program, which concerns projects related to "the preservation and protection of California's environment." Cal. Pub. Res. Code § 21190. The program funds, among other things, "the control and abatement of air pollution," *id.* § 21190(a), "[t]he acquisition . . . of natural areas of ecological reserves," *id.* § 21190(b), and scientific research on the impacts of climate change. *Id.* § 21190(h).

Personalized "environmental" license plate configurations are wholly separate from specialty plate designs, which California law calls "special interest license plates," Cal. Veh. Code § 5060, or "specialized license plates," *id.* § 5154. *See Walker*, 135 S. Ct. at 2244 ("Here we are concerned only with . . . specialty license plates, not with the personalization program."). The former involve a personalized message unique to one vehicle; the latter are issued to any eligible registrant after 7,500 applications have been submitted for the same design. Cal. Veh. Code § 5004.3(g)(1). California "special interest" plates consist of designs proposed by non-profit groups, which then share in the revenue from their sale. *Id.* § 5060(g). "Specialized plates" serve a similar revenue-raising function, *id.* § 5157, but "shall have a design or contain a message that publicizes or promotes a state agency, or the official policy, mission, or work of a state agency." *Id.* § 5154. These "special" plates are available to anyone registering a vehicle; however, special plates "containing a *personalized message* are subject to the fees required [for environmental plates] in addition to any fees required by the special interest license plate program." *Id.* § 5060(d)(1)(C) (emphasis added).

An applicant for a personalized plate configuration under the environmental license plate program must provide her name, the name of the recipient if the plate is a gift, and "the applicant's first, second, and third choices of the configuration of letters and numbers to appear on license

---

plates and the meaning of each [choice]." *See* Cal. Code Regs. tit. 13 § 206.00(c). Under California law, the Department must "refuse to issue any combination of letters or numbers, or both, that may carry connotations offensive to good taste and decency." Cal. Veh. Code § 5105.

The implementing regulation instructs the Department to refuse all such applications based on "criteria which includes, but is not limited to several factors."[2] Cal. Code Regs. tit. 13 § 206.00(c)(7)(D). Applying those "good taste and decency" factors, Department officials must deny proposed configurations if they believe the configuration: (1) has a sexual connotation or is a term of lust or depravity; (2) is a vulgar term; a term of contempt, prejudice, or hostility; an insulting or degrading term; a racially degrading term; or an ethnically degrading term; (3) is a swear word or term considered profane, obscene, or repulsive; or (4) has a negative connotation to a specific group. *See id.* The regulation does not specify who makes the determination whether a configuration "may carry connotations offensive to good taste or decency." ECF No. 1, Compl. ¶ 25.[3] Apart from the descriptions above, the regulation does not set out any guidelines to help the decisionmaker in her determination of which proposed configurations "carry connotations offensive to good taste and decency," *id.* ¶ 26, nor do they specify what type of evidence the decisionmaker may consider or provide in rejecting an application for a personalized license plate configuration. *Id.* ¶ 27.

## B.    Factual Background

In 2019, University of Southern California professor Jonathan Kotler filed a federal civil rights lawsuit that challenged the same regulation at issue here. *See Kotler*, 2019 WL 4635168, at *1. He challenged the regulation both facially and as-applied to him. An avid soccer fan since the 1950s, Mr. Kotler sought a personalized license plate supporting his favorite soccer team, Fulham FC. *Id.* The Department rejected the proposed configuration of COYW ("Come on you whites), an acronym that the team and its supporters routinely use to cheer on Fulham, which wears white

---

[2] The regulation also requires the Department to "cancel and order the return of any Environmental License Plate previously issued which contains any configuration of letters and/or numbers which the department later determines may carry connotations offensive to good taste and decency." Cal. Code Regs. tit. 13 § 206.00(c)(7)(D).

[3] The same regulation sets forth other factors, not at issue here, designed to determine whether a proposed personalized license plate configuration is misleading.

jerseys. *Id.* The Department denied the configuration because it believed the term to carry connotations "offensive to good taste and decency." *Id.* The Department moved to dismiss Mr. Kotler's lawsuit. The Department's motion asserted that speech on personalized license plates were government speech. *Id.* at *2. The court rejected the Department's argument, and noted that the argument that personalized license plates represent government speech "strains believability." *Id.* at *7. Following that ruling, the Department issued Mr. Kotler his license plate, and he voluntarily dismissed the case. *See Kotler v. Webb*, 19-cv-2682, ECF No. 38 (C.D. Cal. Jan. 28, 2020).

Like Professor Kotler, Plaintiffs here are Californians who seek to express personal messages on personalized license plates. Paul "Chris" Ogilvie is a disabled army veteran who has served four tours overseas, including Afghanistan and Iraq. ECF No. 1, Compl. ¶ 29. During his service, Ogilvie picked up the nickname "OG," after commanding officers and fellow soldiers found his name too hard to pronounce. *Id.* ¶ 31. After Ogilvie was honorably discharged, he bought a 2014 Hyundai Sonata. *Id.* ¶ 30. His now-fiancée offered him a personalized license plate as a gift. *Id.* The two thought about which configuration they would like for their personalized plate for about a week, and finally decided on OGWOOLF, which combines Ogilvie's military nickname with another nickname stemming from his long-time interest in wolves. *Id.* ¶¶ 30-31. The Department rejected the personalized license plate configuration because the Department thought that the configuration "contain[ed] a reference to gang affiliation," and was thus "offensive to good taste and decency." *Id.* ¶ 32.

Amrit Kohli is a computer engineer, musician, and record producer. *Id.* ¶ 36. In an effort to reclaim the word "queer" for the gay community, Kohli established Queer Folks Records. *Id.* Kohli obtained a trademark for his music label Queer Folk from the United States Patent and Trademark Office. When Kohli applied for a personalized license plate with the configuration "QUEER," however, the Department rejected the application on the basis that it was offensive to "good taste and decency." *Id.* ¶ 37. The Department justified its denial on the basis that the term may be considered "insulting, degrading, or expressing contempt for a specific group or person." *Id.*

James Blair is a long-time fan of the rock band "Slayer," and has attended several of its concerts, including the group's final performance in Oakland in November 2019. *Id.* ¶ 33. As a tribute to his favorite band, Mr. Blair applied for a personalized license plate with the configuration "SLAAYRR." *Id.* ¶ 34. The Department rejected the application and insisted that it was "threatening, aggressive, or hostile." *Id.* ¶ 35.

Andrea Campanile is an attorney for the United States Army. *Id.* ¶ 38. Campanile and her fiancé Scott Gohman are avid enthusiasts of Ducati Motorcycles. *Id.* ¶¶ 38-39. Both applied for personalized license plates celebrating the brand. *Id.* ¶¶ 39-40. Gohman applied for a license plate "DUKN GO" ("Ducati and Gohman"); she applied for one that read "DUK N A" ("Ducati and Andrea"). *Id.* The Department granted his application, and denied hers. In its view, only her proposed license plate was "profane or obscene" and thus "offensive to good taste and decency." *Id.* ¶ 41.

Paul Crawford is an English immigrant who is now the proud owner of Shakespeare Pub in San Diego. *Id.* ¶ 42. The pub's slogan is "Real beer, proper food, no bollocks." *Id.* Crawford applied for a personalized license plate with the configuration "BO11LUX." *Id.* ¶ 43. The Department denied the application based on its belief that the configuration had "a discernable sexual connotation or may be construed to be of a sexual nature," and was thus "offensive to good taste and decency." *Id.* ¶ 44.

Plaintiffs filed this federal civil rights lawsuit for injunctive and declaratory relief. *See* ECF No. 1. The complaint alleges that California's regulation of personalized license plates that "may carry connotations offensive to good taste and decency" imposes content- and viewpoint-based restrictions on speech, and is thus facially invalid under the First Amendment. *Id.* ¶¶ 45-55. Plaintiffs seek an order of the Court enjoining the Department from enforcing the regulatory provision that allows it to censor viewpoints that are "offensive to good taste and decency." *Id.* Prayer for Relief ¶ 2. The Department filed a motion to dismiss. *See* ECF No. 26. The Department's primary argument is the same as it was in *Kotler*: personalized license plate configurations are government speech. *See id.* at 8-17. Less than a year since the *Kotler* decision, the Department's argument still strains believability.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Dismissal is proper only if the complaint lacks a cognizable legal theory or sufficient facts alleged under a cognizable legal theory. *See Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the motion, the court construes the complaint in the light most favorable to the plaintiff, and accepts all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from those allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). The evidence that the court considers is limited to the allegations on the face of the complaint (including any documents attached to the complaint), matters which are properly judicially noticeable, contents of documents that are alleged in the complaint, and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Kneivel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## ARGUMENT

## I.   PERSONALIZED LICENSE PLATE CONFIGURATIONS REPRESENT THE APPLICANT'S PERSONAL SPEECH, NOT GOVERNMENT SPEECH

An individual's speech on personalized license plates represents personal speech, not government speech. This distinction is crucial because although the First Amendment prohibits the government from abridging the freedom of speech, the "Free Speech Clause . . . does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009); *see also Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550, 553 (2005) ("[T]he government's own speech . . . is exempt from First Amendment scrutiny.").

The Supreme Court has urged "great caution before extending [its] government-speech precedents." *Tam*, 137 S. Ct. at 1758. The Court has observed that although the government-speech doctrine is essential to ensure that government can express its viewpoint, it is also "susceptible to dangerous misuse." *Id.* "If private speech could be passed as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints." *Id.*

In *Walker*, the Supreme Court upheld Texas's denial of a specialty plate design, reasoning that specialty plate designs were government speech. *See Walker*, 135 S. Ct. at 2243-44. Over a four-Justice dissent, the *Walker* Court applied the government-speech factors it had first established in *Summum*. First, the government has long used specialty plate designs as a forum to communicate its message to the public. *Id.* at 2246-47. Second, specialty plate designs were more closely identified with the government than the motorist. *Id.* at 2248-49. Third, Texas exercised great control over messages on specialty plates. *Id.* at 2249. The *Walker* Court observed that these factors should be considered with "other relevant considerations" in determining whether speech is government speech. *Eagle Point Education Ass'n v. Jackson Cty. Sch. Dist. No. 9*, 880 F.3d 1097, 1103 (9th Cir. 2018) (the ultimate question "is whether a reasonable observer would perceive the plate's message as a statement by" the government). The Supreme Court later observed that *Walker* "likely marks the outer bounds of the government-speech doctrine." *Tam*, 137 S. Ct. at 1760.

Applying the factors enunciated in *Summum*, speech on personalized license plate configurations represents personal speech, not government speech.

## A.   Personalized License Plates Have Historically Been Used to Convey Private Speech, Not Government Speech

Personalized license plate holders have historically used personalized plates to communicate their own private speech, not the government's speech. The Department's current position that the personal messages on personalized license plates is government speech conflicts with its statements to disappointed personalized license plate applicants. *Kotler*, 2019 WL 4635168, at *8 (citing Compl., Ex. 1). In those rejection letters, the Department insists that it must

balance "an *individual's* constitutional right to free speech and expression" with "the sensibilities of all segments of [the] population." *Id.*

This Court should reject the Department's self-serving about-face. As courts have recounted in other cases, individuals use their personalized license plate configurations to celebrate their name ("BOB"), their car ("68VETT"), their pets ("LVMYDOG"), their optimism ("B HAP E"), and so on. *See Mitchell*, 450 Md. at 295 n.6. These plate configurations, like configurations on personalized plates in California, are created exclusively out of the imagination of the individual, not the government. The Department fails to recite a single example of a government message displayed in the form of a personalized license plate configuration.

The only government message the Department argues that it is communicating is the rote identification of vehicles. *See* ECF No. 26, at 10-11. Yet a message of identification (to the extent it even is a message) is communicated by both randomly-issued plates and personalized plates, but only the latter represents the private message of the registrant. The Department's failure to identify a non-identification message conveyed by personalized plates is unsurprising, because each personalized license plate configuration may only appear on one vehicle. It would be inefficient and incomprehensible for the government to disseminate a message on personalized license plates. If the vast number of distinctive personalized license plate configurations is transformed into government speech, then California would be "babbling prodigiously and incoherently." *Tam*, 137 S. Ct. at 1758.

*Walker* does not dictate otherwise. The Court there recounted over a century of history of states conveying their own unique and particular non-identification message on plate *designs*, but was careful to draw a distinction between those messages conveyed through designs available to the general public and personalized plates that are particular to each person. *See Walker*, 135 S. Ct. at 2248; *id.* at 2244 ("Here we are concerned only with . . . specialty license plates, not with the personalization program."). Those designs, in Texas and in other states, featured classic examples of government messages such as "Idaho Potatoes," "North to the Future" (Alaska), "Hoosier Hospitality" (Indiana), "Green Mountains" (Vermont), and "America's Dairyland" (Wisconsin). *Id.* "States have used license plate slogans to urge action, to promote tourism, and to

tout local industries." *Id*. States have *never* used personalized license plate configurations to further any of those purposes. Indeed, California law draws a distinction between specialty plate designs that "publicize[] or promote[] a state agency," Cal. Veh. Code § 5154, and the custom plate configurations at issue here that "contain[] a personalized message," *id*. § 5060(d)(1)(C). Put simply, there is no history of the government—in California or elsewhere—where a *government* message was conveyed through *personal* vanity plates.

## B.   Personalized License Plates Are Closely Identified with Individuals, Not the Government

Personalized license plates are always identified with the license plate holder rather than the government. As Maryland's highest court observed, "[t]here is nothing governmental about the message 'BOB' or 'FROSTY' or '68VETT' or 'LVMYDOG' or 'B HAP E.'" *Mitchell*, 450 Md. at 295 n.6. Rather, "the natural reaction of those who see the "BOB" vanity plate will be to think that the driver of the vehicle is speaking and is saying, 'Hey world, I'm Bob.'" *Id.* As the *Mitchell* court recognized, a reasonable observer would, at most, assume that the Department had permitted the vehicle owner to display the owner's requested message on his personalized plate; a reasonable observer would not assume that the Department "has endorsed the message as to make the message its own." *Id.*[4]

California's regulatory scheme also recognizes that license plate configurations are identified with the license plate holder. The Department neither creates nor suggests personalized license plate configurations. *Cf. Walker*, 135 S. Ct. at 2248 (recounting state-created specialty plate designs). Instead, the person applying for a personalized plate is responsible not just for creating the configuration, but also supplying the Department with its meaning. *See* Cal. Code Regs. tit. 13 § 206.00(c). It would be strange, to say the least, for the government to ask individuals to provide the government with the meaning of the government's own message. Finally, California prohibits

---

[4] *See also Matwyuk v. Johnson*, 22 F. Supp. 3d 812 (W.D. Mich. 2014); *Byrne v. Rutledge*, 623 F.3d 46 (2d Cir. 2010); *and Morgan v. Martinez*, No. 3:14-02468, 2015 WL 2233214 (D.N.J. May 12, 2015). Although those cases were decided before *Walker*, the reasoning in those cases that a reasonable observer would associate a personalized license plate configuration with personal speech survives *Walker*.

duplicative license plate configurations. Cal. Veh. Code § 5105(a). As a result, each configuration is unique—much more so than specialty plate designs, which generally require 7,500 applications for the same plate before they will be issued, *id.* § 5004.3(g)(1), and even more so than bumper stickers—which can be replicated on many cars—while there can be only one "OGWOOLF" or "LVMYDOG" plate in the entire state.

The Department's arguments to the contrary are unpersuasive. First, government approval of an individual's message does not transform it into the government's message. *Contra* ECF No. 26 at 13-15. That argument was already rejected in *Tam*. The government also approves trademarks, but *Tam* left no doubt that trademarks represent an individual's speech, not the government's speech. *Tam*, 137 S. Ct. at 1757-60. Nor does government approval of a message constitute an endorsement of that message. *Contra* ECF No. 26, at 11-12 (citing *Walker*, 135 S. Ct. at 2249). The Department takes the Supreme Court's analysis in *Walker* out of context. A specialty plate design might be viewed as the government's endorsement of a message, given that the government has historically endorsed messages reflected in specialty plate designs. *See id.* at 2248-49 (surveying the history of government messages on specialty plate designs in Texas and other states). By contrast, the government has never used personalized license plates to broadcast government messages.

Second, that license plates serve "governmental purposes of vehicle registration and identification" does not transform the message conveyed by a personalized plate into government speech. ECF No. 26, at 11. Again, *Tam* forecloses the argument. Trademarks also serve important identification purposes. *See B&B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S. Ct. 1293, 1299 (2015) ("The principle underlying trademark protection is that distinctive marks—words, names, symbols, and the like—can help distinguish a particular artisan's goods from those of others."). But that does not make trademarks government speech. *See Tam*, 137 S. Ct. at 1760.

Personalized license plates, like trademarks, serve multiple purposes. They not only help identify vehicles, but also serve as a means of self-expression for the motorist. After all, standard license plates serve an interest in identification just as well as a personalized license plate. Yet California uses revenue it generates from personalized license plate application and renewal fees

to support environmental programs. The State is able to generate that extra revenue because personalized license plates serve an interest in addition to the identification interest already served by standard license plates: An individual's interest in self-expression. And the Department can charge more for allowing motorists to express their personal messages.

## C.   Personalized License Plate Applicants Largely Control the Messages on Personalized License Plates

The Department's attempt to stretch *Walker* to include *personalized* license plates finally snaps when it argues that it maintains strict control over the messages on personalized license plates. ECF NO. 26 at 13-15. In fact, each applicant supplies the entirety of the message on her personalized license plate. The Department has never communicated a message through a personalized license plate, and it explicitly asks applicants to explain the meaning of the numbers and letters they provide to the state for their personalized plates. *See* Cal. Code Regs. tit. 13 § 206.00(c).

Specialty plates, like those at issue in *Walker*, are simply not comparable to personalized plates. Texas, for example, had approximately 350 specialty plates. *See Walker*, 135 S. Ct. at 2255 (Alito, J., dissenting). Although that number is large, it pales in comparison to the hundreds of thousands of personalized plates on California's roads. And while it is plausible that the "outer bounds" of the government speech doctrine allows the government to convey hundreds of messages through plate designs, *Tam*, 137 S. Ct. at 1760, the suggestion that the government is speaking in hundreds of thousands of different ways through its control of personalized plates is nonsensical.

The Department conflates control over the *forum* with control over the *message*. In *Walker*, for example, Texas exhibited strict control over the *message* that specialty plates could convey. Perhaps most obviously, Texas only allowed the message on specialty plates to come from certain speakers. Specialty plates in Texas could only come from one of three sources: (1) the Legislature; (2) a state-designated private vendor; or (3) a non-profit. *Walker*, 135 S. Ct. at 2244-45. Personalized plates, however, can come from any individual. That's why the *Walker* Court

1   explicitly limited its holding to specialty plates. *Id.* at 2244 (noting that personalized plates are not

2   covered by the opinion).

3   The Department points to the powers it has to punish license plate forgeries as an example

4   of the extant "control" it exercises over personalized license plates. ECF No. 26 at 14. But the

5   power to punish false license plates, or license plates that have been revoked, is not similar in kind

6   to the power to control the message. The only control that California maintains over the message—

7   as opposed to the forum—is the viewpoint-based veto power that the five Californians are

8   challenging as facially unconstitutional here.

9   The Patent and Trademark Office's (PTO) role in trademark registration provides an

10  example. The relevant statutes direct the PTO to "refuse[] registration of certain marks." 15 U.S.C.

11  § 1052. The PTO cannot register a mark that "so resemble[s] another mark as to create a likelihood

12  of confusion." *Id.* § 1052(d). It cannot register a mark that is "merely descriptive" of the goods on

13  which it is used. *Id.* § 1052(e). It cannot register a mark containing the flag or insignia of any

14  nation or state. *Id.* § 1052(b). Despite the government's role in regulating trademark registration,

15  however, the Supreme Court has squarely rejected the contention that trademarks constitute

16  government speech. *See Tam*, 137 S. Ct. at 1757-60. In *Tam*, as in this case, the government's

17  control over forum does not give it *carte blanche* to control the message.

18  *Walker* does not dictate otherwise. The control that the Court found relevant in *Walker* was

19  the State's well-established control over the message on license plate designs in "choos[ing] how

20  to present itself and its constituency." 135 S. Ct. at 2249. Of course, Texas is free to promote its

21  citrus industry, as it does, without also saying that Florida's oranges are better. *Id.* No such

22  concerns about "control" exist with personalized license plates because, again, California has

23  never promoted its own message through personalized license plates. There is no concern that the

24  State will be forced to issue a plate that conflicts with its preferred message. *See Mitchell*, 450 Md.

25  at 296 (rejecting the Indiana Supreme Court's reasoning in *Vawter*, 45 N.E.3d at 1207, about the

26  State's "control" over personalized license plates).

27  Unlike the 350 or so messages that Texas conveyed through the specialty plates in *Walker*,

28  California simply cannot maintain control over hundreds of thousands of messages on California's

roads. Simply because California may veto a message it does not like does not transform unique personal messages into government speech. These are private messages, created by individuals, that the State has no interest in endorsing or conveying.

### D.   Other Factors Also Suggest that Personalized License Plate Configurations Constitute Private Speech

The Department relies on a passage from *Walker* that notes other facts that tend to show that Texas's specialty plates convey government speech. ECF No. 26, at 15. But the Department misunderstands the passage. The *Walker* Court explained that "the message conveyed by those designs is conveyed on behalf of the government." *Walker*, 135 S. Ct. at 2250. The Court explained that specialty plates are "on government-mandated, government-controlled, and government-issued IDs that *have traditionally been used as a medium for government speech*." *Id.* (emphasis added). Here, the Department makes no attempt to say that license plate configurations have traditionally been used as a medium for government speech. Nor could it. License plate configurations are either issued randomly—in which case any message is completely absent—or they are issued at the request of an individual who supplies the characters and meaning. The fact that relatively few messages are selected by a State Board and placed on government-issued specialty license plates *in a manner and place that the government has traditionally used for government speech*, certainly tends to show that the government is speaking through specialty plates. But the only similarity between those select few government messages on specialty plates and the hundreds of thousands of individual messages displayed on personalized plates is that they both appear on license plates. That is not enough to transform inherently private speech into government speech. *See* Cal. Veh. Code § 5060(d)(1)(C) (personalized plates "contain[] a personalized message").

The *Walker* Court held that specialty plates convey government messages in Texas. The same is true in California. Specialty plates convey a government message. But never have license plate configurations—in Texas, California, or elsewhere—been used for that purpose.

## II.   THE DEPARTMENT'S REGULATION IS UNCONSTITUTIONAL REGARDLESS OF FORUM

### A.   California's Personalized License Plate Regulation Is Unconstitutional Under Any Forum Analysis

A court uses forum analysis where a law restricts private speech on government property. *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 800 (1985). Different levels of scrutiny apply depending on the type of forum at issue, *id.*, but it is unnecessary for this Court to define the relevant forum.[5] The Department's "good taste and decency" regulation cannot survive review regardless of forum, because it is a "bedrock First Amendment principle" that the government cannot discriminate against "ideas that offend." *Tam*, 137 S. Ct. at 1751; *Brunetti*, 139 S. Ct. at 2299. This is true even in non-public forums, where restrictions on speech must be both reasonable and viewpoint neutral. *See Rosenberger v. Rector and Visitors of the Univ. of Virginia*, 515 U.S. 819, 829 (1995).

If there is any truth to the Department's argument that forum analysis is unworkable here, it is this: The "good taste and decency" regulation fails with or without any mention of forum analysis because they mandate viewpoint discrimination. Plaintiffs' claim is meritorious for that reason alone. *See Tam*, 137 S. Ct. at 1751; *Brunetti*, 139 S. Ct. at 2299. Just as the Trademark Office's refusal to register Simon Tam's or Erik Brunetti's trademarks demonstrated that the Lanham Act's restrictions on "disparaging" or "immoral or scandalous" speech involved unconstitutional viewpoint discrimination, the Department's refusal to issue the Plaintiffs' license plates demonstrates that the "good taste and decency" regulation involves unconstitutional viewpoint discrimination. In that way, forum analysis is of limited relevance here, just as it was in *Tam* and *Brunetti*.

Because the Department's regulation prohibits viewpoints that Department officials find "offensive to good taste and decency," the regulation is "presumptively unconstitutional."

---

[5] If this Court had to define the forum, personalized license plates would be a designated public forum. The Department administers a personalized license plate program in addition to an already existing standard license plate program, which makes personalized plates a classic example of "public property which the state has opened to the public as a place for expressive activity." *Perry Ed. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45 (1983).

*Rosenberger*, 515 U.S. at 829. The Department cannot respond to that presumption of unconstitutionality at the motion to dismiss stage—nor has it tried to argue that its regulation is viewpoint-neutral. *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012). Its motion should therefore be denied.

Even if the regulation were not doomed by its viewpoint discrimination, it would also fail traditional forum analysis because it is unreasonable. The regulation fails the reasonableness requirement because it fails to "articulate some sensible basis for distinguishing what may come [on] from what must stay [off]" of personalized license plates. *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1888 (2018). As detailed above, the regulations are vague in their particulars and open-ended in their limitations. Cal. Code Regs. tit. 13 § 206.00(c)(7)(D) (listing "criteria which includes, but is not limited to several factors"). But where a government speech restriction violates viewpoint neutrality, as here, a court "need not decide whether it is unreasonable in light of the purposes served by the forum." *Good News Club v. Milford Central School*, 533 U.S. 98, 107 (2001). Judged either under the standards applied by the Supreme Court in *Tam* and *Brunetti*, or under traditional forum analysis, the Department's regulation is unconstitutional.

## B.    The Department's Dire Predictions are Irrelevant and Meritless

The Department argues that it "would have no choice" but to end personalized license plates if it disagreed with a message that a driver proposed. ECF No. 26, at 17. The Department relies on *Summum* to validate its dire prediction, but the Court gave no such endorsement to viewpoint discrimination. *See id.* at 16:23-28. Rather, the *Summum* Court was concerned that viewpoint neutrality would lead administrators of public parks to "brace themselves for an influx of clutter." 555 U.S. at 479. The Court's conclusion that viewpoint neutrality might doom a given forum in *practice* was based on *practical* considerations, not an endorsement of viewpoint discrimination. No such risk of "clutter" exists here, where a multiplicity of messages is *required* by the need for individualized plates, whether randomly assigned or personalized.

Finally, the Department's claims that a ruling for the plaintiffs would force it to assign personalized license plates consisting of "obscenities or racial slurs" is untrue. ECF No. 26, at 17.

1   Governments routinely enact regulations for "obscene speech" and "offensive speech." *See*

2   *Brunetti*, 139 S. Ct. at 2301 (striking down the Lanham Act's prohibition on the federal registration

3   of "immoral" or "scandalous" marks because "[t]he statute as written does not draw the line at

4   lewd, sexually explicit, or profane marks"). The Department could "adopt[] a more carefully

5   focused [regulation] that precludes the registration of [plates] containing vulgar terms that play no

6   real part in the expression of ideas." *Id.* at 2303 (Alito, J., concurring) ("The particular mark in

7   question in this case [FUCT] could be denied registration under such a statute."). In any event, the

8   government speech doctrine is not the only avenue the government has of regulating speech. The

9   government may regulate an individual's speech, but it must do so consistent with the First

10  Amendment.

11  **III.   Plaintiffs' Facial Challenge Is Proper**

12          A facial First Amendment challenge is proper here. "A facial challenge is an attack on a

13  statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, 135 S. Ct. 2443,

14  2449 (2015). As the Supreme Court held on many occasions, plaintiffs may mount a successful

15  facial challenge on a particular statutory clause. *See, e.g.*, *Tam*, 137 S. Ct. at 1751.

16          The recent trademark cases are illustrative. *See id.*; *Brunetti*, 139 S. Ct. at 2297. The

17  relevant statute in those cases provided a whole host of reasons that the government may refuse to

18  register a trademark:

19          (a) Consists of or comprises immoral, deceptive, or scandalous matter; or matter
20          which may disparage or falsely suggest a connection with persons, living or dead,
        institutions, beliefs, or national symbols, or bring them into contempt, or disrepute;
21          or a geographical indication which, when used on or in connection with wines or
        spirits, identifies a place other than the origin of the goods and is first used on or in
22          connection with wines or spirits by the applicant on or after one year after the date
        on which the WTO Agreement (as defined in section 3501(9) of Title 19) enters
23          into force with respect to the United States.
24

25  15 U.S.C. § 1052(a).

26          Beyond that, the statute instructs the government to decline to register proposed trademarks

27  that "so resembles" another mark as to create a likelihood of confusion, *id.* § 1052(d), that are

28

merely descriptive of the goods on which it used, *id.* § 1052(e), that contain the flag or insignia of any nation or State, *id.* § 1052(b), and for many other reasons. *See id.* § 1052.

Yet the Supreme Court did not parse any of those other statutory provisions when it facially invalidated the clause prohibiting the registration of trademarks that may "disparage . . . or bring . . . into contemp[t] or disrepute" any "persons, living or dead." *Tam*, 137 S. Ct. at 1751 (quoting 15 U.S.C. § 1052(a)). Nor did the Supreme Court parse those other provisions when it facially invalidated a neighboring provision of the Act, prohibiting the registration of "immoral [] or scandalous" trademarks, *id.* § 1052(a), because "[i]t too disfavors certain ideas." *Brunetti*, 139 S. Ct. at 2297.

Here, Plaintiffs challenge a regulatory provision that instructs Department officials to deny proposed personalized license plate configurations that are "offensive to good taste and decency." ECF No. 1, Compl. ¶¶ 2, 24, 47-49, 52-53. This Court may enjoin that provision of the regulation without examining the Department's prohibition on misleading personalized license plates. *See Tam*, 137 S. Ct. at 1751. Plaintiffs have properly pled that the Department's prohibition on "offensive" personalized license plates violates the First Amendment on its face. *See Brunetti*, 139 S. Ct. at 2297 (facial invalidation appropriate when statutory provision "disfavors certain ideas"); *Minn. Voters*, 138 S. Ct. at 1888 (facial invalidation appropriate when statutory provision fails to provide "some sensible basis" for distinguishing what is allowed and what is prohibited).

Because Plaintiffs have properly pled that the Department's prohibition of "offensive" speech violates the First Amendment on its face, there is no need for this Court to analyze this case under the overbreadth doctrine. *See Brunetti*, 139 S. Ct. at 2297 (invalidating provision on its face without resorting to overbreadth analysis); *Minn. Voters*, 138 S. Ct. at 1888 (same). Regardless, Plaintiffs have properly pled that the regulation flunks the overbreadth test. The regulation instructs Department officials to refuse any "configuration that may carry connotations offensive to good taste and decency" using "criteria which includes, but is not limited to" several factors. ECF No. 1; Compl. ¶ 24 (quoting § 206.00(c)(7)(D)). Department officials enforcing this regulation deny over 30,000 applications each year, *id.* ¶ 2, based on "the subjective meaning supplied by the applicant and the officials' own subjective judgments about the meaning." *Id.* ¶

50. In all, Plaintiffs have properly alleged that "a substantial number of" the 30,000 personalized license plate denials that the Department issues each year "are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

The Department claims that "it is clear that many of the" personalized license plate configurations that it has rejected "can constitutionally be prohibited under existing case law." ECF No. 26 at 22; *see also id.* at 23 (asserting, without citation, that "an insubstantial number of applications . . . are hypothetically unconstitutional as applied"). This argument is procedurally inappropriate and factually incorrect. The Court will reach its own determination regarding the Department's assumption after the parties conclude discovery, not at the pleadings stage.

There is nothing in the record that supports the Department's counterintuitive assertion that it could constitutionally prohibit "many of the" 30,000 personalized plates it rejects each year. *Id.* at 22. As stated above, Plaintiffs do not challenge the Department's ability to prohibit misleading speech. Thus, the Department's concerns about "efforts to impersonate or misrepresent a law enforcement entity," to the extent that they apply to personalized plates at all, are inapposite here. Besides that, the Department suggests that some personalized plate configuration may be unprotected. *See* ECF No. 26 at 21. But it is highly doubtful there are roughly 30,000 such unprotected configurations each year and unnecessary for this Court to make that determination at the pleading stage.

At the end of the day, the Department seems to acknowledge that a number of denials, "represented by the five Plaintiffs, are hypothetically unconstitutional as applied." *Id.* at 23. There is no reason that roughly 30,000 Californians each year must file separate as-applied lawsuits to vindicate their First Amendment rights.

## CONCLUSION

The Department's Motion to Dismiss should be denied.

DATED: June 16, 2020.

Respectfully submitted,

WENCONG FA, SBN 301679
JOSHUA P. THOMPSON, SBN 250955

By       /s/ Wencong Fa
         WENCONG FA

Pacific Legal Foundation
930 G Street
Sacramento CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
WFa@pacificlegal.org

*Attorneys for Plaintiffs, Paul Ogilvie, et al.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing RESPONSE IN OPPOSITION TO MOTION TO DISMISS has been served through the Court's CM/ECF system on all registered counsel.

DATED: June 16, 2020.

Respectfully submitted,

WENCONG FA, SBN 301679
JOSHUA P. THOMPSON, SBN 250955

By      /s/ Wencong Fa
      WENCONG FA

Pacific Legal Foundation
930 G Street
Sacramento CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
WFa@pacificlegal.org

*Attorneys for Plaintiffs,*
*Paul Ogilvie, et al.*