WENCONG FA, SBN 301679
Email: WFa@pacificlegal.org
JOSHUA P. THOMPSON, SBN 250955
Email: JThompson@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Plaintiffs, Paul Ogilvie, et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| PAUL OGILVIE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STEVE GORDON, in his official capacity as Director of the California Department of Motor Vehicles, <br><br> Defendant. | Case No.: 4:20-cv-01707-JST <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** <br><br> Hearing Date: Nov. 18, 2020 <br> Time: 2:00 pm <br> Judge: Jon S. Tigar <br> Location: Courtroom 6 <br><br> Action Filed: March 10, 2020 |

**TO DEFENDANT AND HIS ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on November 18, 2020, at 2:00 p.m., or as soon thereafter counsel may be heard, before the Honorable Jon S. Tigar in Courtroom 6 of the above-entitled Court, located at 1301 Clay Street, Oakland, California, Plaintiffs Paul Ogilvie, Paul Crawford, Amrit Kohli, Andrea Campanile, and James Blair (Plaintiffs) will and hereby do move for summary judgment on all claims for relief asserted by Plaintiffs pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiffs are entitled to summary judgment under Rule 56, because Defendant's denial of personalized license plate configurations that it deems "offensive to good taste and decency," Cal. Code Regs. tit. 13 § 206.00(c)(7)(D), is facially unconstitutional under the Free Speech Clause of the First Amendment to the United States Constitution, as incorporated against the states by the Due Process Clause of the Fourteenth Amendment. Plaintiffs are entitled to injunctive relief, declaratory relief, reasonable costs and attorneys' fee pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, any reply documents to be submitted in support, the pleadings on file herein, exhibits and declarations attached in support, and upon such other oral or documentary evidence as may be presented at the time of the hearing on this Motion.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

STATEMENT OF FACTS ........................................................................................ 1

   I.   California's Personalized License Plate Program ...................................... 1

   II.  The Department Rejects Plaintiffs' Personalized License Plate Applications .................... 3

   III. Statutory and Regulatory Scheme ............................................................ 5

   IV. The Department's Approval Process ......................................................... 6

   V.  Procedural History ................................................................................... 8

ARGUMENT ........................................................................................................... 9

   I.   Standard of Review ................................................................................. 9

   II.  The Department's "Offensive to Good Taste and Decency" Regulation Restricts
       Personal Speech ..................................................................................... 10

     A.  The Law of the Case Doctrine Applies ............................................. 10

     B.  Personalized License Plate Configurations Represent Personal Speech ...................... 12

   III. The Department's "Offensive to Good Taste and Decency" Regulation Is Facially
       Unconstitutional Under the First Amendment ..................................... 16

     A.  The Department's "Offensive to Good Taste and Decency" Regulation Discriminates
        on the Basis of Viewpoint ................................................................ 16

     B.  The Department's "Offensive to Good Taste and Decency" Regulation Is an
        Unreasonable Restriction on Speech ................................................ 18

CONCLUSION ........................................................................................................ 21

CERTIFICATE OF SERVICE .................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................................9

*Arizona v. California*, 460 U.S. 605 (1983) ...................................................................................10

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*,
    213 F.3d 474 (9th Cir. 2000) .....................................................................................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................................10

*Cohen v. California*, 403 U.S. 15 (1971) .......................................................................................20

*Comm'r of Ind. Bureau of Motor Vehicles v. Vawter*,
    45 N.E.3d 1200 (Ind. 2015) .....................................................................................................13

*Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*,
    473 U.S. 788 (1985) .................................................................................................................17

*Eagle Point Education Ass'n v. Jackson Cty. Sch. Dist. No. 9*,
    880 F.3d 1097 (9th Cir. 2018) .................................................................................................16

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
    771 F.3d 1119 (9th Cir. 2014) ...................................................................................................9

*Good News Club v. Milford Central School*,
    533 U.S. 98 (2001) ...................................................................................................................18

*Hall v. City of Los Angeles*, 697 F.3d 1059 (9th Cir. 2012) ..........................................................10

*Hart v. Thomas*, 422 F. Supp. 3d 1227 (E.D. Ky. 2019) .........................................................11, 13

*Iancu v. Brunetti*, 139 S. Ct. 2294 (2019) .....................................................................................17

*Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550 (2005) .......................................................10

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
    623 F.3d 1011 (9th Cir. 2010) ...................................................................................................9

*Kotler v. Gordon*, No. 19-cv-2682,
    2019 WL 4635168 (C.D. Cal. Aug. 29, 2019) .............................................................. *passim*

*Lewis v. Wilson*,
    253 F.3d 1077 (8th Cir. 2001) ............................................................................................19, 20

*Matal v. Tam*, 137 S. Ct. 1744 (2017) ................................................................................. *passim*

*Matwyuk v. Johnson*,
    22 F. Supp. 3d 812 (W.D. Mich. 2014) ....................................................................................18

*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
    902 F.2d 703 (9th Cir. 1990) ...................................................................................................10

*Minnesota Voters Alliance v. Mansky*,
    138 S. Ct. 1876 (2018) ...........................................................................................18, 19, 20, 21

*Mitchell v. Md. Motor Vehicles Admin.*,
  450 Md. 282 (2016) .......................................................................................11, 13, 16

*Montenegro v. New Hampshire Div. of Motor Vehicles*,
  166 N.H. 215 (2014) ...............................................................................................19

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
  210 F.3d 1099 (9th Cir. 2000) ...........................................................................9, 10

*Opperman v. Path, Inc.*, No. 13-CV-00453-JST,
  2014 WL 246972 (N.D. Cal. Jan. 22, 2014) ..........................................................11

*Plantronics, Inc. v. Am. Home Assurance Co.*,
  No. 5:07-CV-06038-PSG, 2014 WL 2452577 (N.D. Cal. May 30, 2014) .............10

*Pleasant Grove City v. Summum*,
  555 U.S. 460 (2009) ...........................................................................................10, 12

*Rosenberger v. Rector and Visitors of the Univ. of Virginia*,
  515 U.S. 819 (1995) ...........................................................................................17, 18

*United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio
  Regional Transit Authority*, 163 F.3d 341 (6th Cir. 1998) ...................................19

*United States v. Alexander*, 106 F.3d 874 (9th Cir. 1997)...........................................11

*United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000)............................10

*United States v. Scrivner*, 189 F.3d 825 (9th Cir. 1999)..............................................11

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
  135 S. Ct. 2239 (2015) ...........................................................................12, 13, 14, 16

**Statutes**

15 U.S.C. § 1052 ...........................................................................................................15

Cal. Code Regs. tit. 13 § 206.00(c)..........................................................................2, 13, 14

Cal. Code Regs. tit. 13 § 206.00(c)(7)(D)............................................................... *passim*

Cal. Code Regs. tit. 13 § 206.00(c)(7)(D)(5)-(7)............................................................5

Cal. Pub. Res. Code § 21190 ..........................................................................................2

Cal. Veh. Code § 5004.3(g)(1).......................................................................................14

Cal. Veh. Code § 5060 ..............................................................................................2, 13

Cal. Veh. Code § 5103 ....................................................................................................2

Cal. Veh. Code § 5105(a) ..........................................................................................5, 14

Cal. Veh. Code § 5154 ..............................................................................................2, 13

**Other Authorities**

Fed. R. Civ. P. 56(a) .................................................................................................9, 21

## INTRODUCTION AND SUMMARY OF ARGUMENT

Five Californians challenge a regulation that censors private speech on personalized license plates. The regulation they challenge requires the California Department of Motor Vehicles to deny any personalized license plate application that is "offensive to good taste and decency." Cal. Code Regs. tit. 13 § 206.00(c)(7)(D). These Californians each had their proposed license plate configuration denied under the challenged regulation. Their applications range from the mildly off-color and humorous (BO11LUX) and (DUK N A) to the deeply personal and introspective (OGWOOLF) and (QUEER). One just wanted to honor his favorite band (SLAAYRR). What they share in common, however, is that these are personal messages. The ideas and messages these individuals sought to express are *their* ideas and *their* messages.

Because this is a challenge to a restriction on private speech, the government cannot censor that speech based on the viewpoint it expresses. Irrespective of how much control the Department exerts over license plates, the First Amendment prohibits it from choosing which private messages to allow and which private messages to deny based on offensiveness. "Giving offense is a viewpoint." *Matal v. Tam*, 137 S. Ct. 1744, 1749 (2017) (Alito, J., concurring). Because the challenged regulation requires the Department to blatantly discriminate on the basis of viewpoint, it is facially unconstitutional and must be enjoined.

More is not required of this Court. Indeed, the Court has already ruled that the regulation prohibits private speech, ECF No. 33 at 9 (order denying Department's Mot. to Dismiss), and that the challenged regulation discriminates based on viewpoint, *id.* at 10-11, all that remains is for the Court to declare the regulation unconstitutional and enjoin its enforcement.

For the reasons stated below, Plaintiffs respectfully request that the Court grants its motion for summary judgment.

## STATEMENT OF FACTS

### I.   California's Personalized License Plate Program

Each driver in California must display a license plate with a unique configuration, consisting of letters, numbers, or a combination of both. Cal. Veh. Code §§ 5103, 5105(a). Californians may request a sequential (standard) plate and receive a random license plate number

---

or purchase a personalized or "environmental" plate and create a custom license plate number. Def's Ans., ECF No. 36 ¶ 17; Exh. 1, Milhoan Dep. 50:23-25 (environmental and personalized plates are synonymous).[1]

Personalized license plates are immensely and increasingly popular. *See* Exh. 9, Gordon Interrog. Resp. No. 11-12. In 2014, the Department processed over 93,000 applications. *See id.* In 2016, the number of applications grew to over 262,000. *See id.* Over the span of four years from 2016-2019, the Department processed over a million personalized license plate applications, and approved nearly 900,000 of them. *See id.* Personalized license plate configurations in California include messages expressing personal identity and core beliefs. *See* ECF No. 36, ¶ 18 (BOBS MA, LBRT4AL, PHA INC, DAD WGN, LTL DUCK); Exh. 10, Holmes Dep. 36:18-22 (BOSSLADY).

Seizing upon the immense popularity of personalized license plates, the Department administers an environmental license plate program that allows Californians to create a personalized plate. An applicant requesting a personalized plate must provide her name, the name of the recipient if the plate is a gift, and "the applicant's first, second, and third choices of the configuration of letters and numbers to appear on license plates and the meaning of each [choice]." *See* Cal. Code Regs. tit. 13 § 206.00(c). She must also pay $53 on issuance of the personalized plate, and $43 for its renewal. Cal. Veh. Code §§ 5103; 5106(a)-(b).

The program generates substantial revenue for California. In the last full fiscal year, the program generated over 77 million dollars in revenue. Exh. 9, Gordon Interrog. Resp. No. 18. Most of the funds go towards the California Environmental Protection Program, which funds projects related to "the preservation and protection of California's environment." Cal. Pub. Res. Code § 21190. These projects include, among other things, "the control and abatement of air pollution," *id.* § 21190(a), "[t]he acquisition . . . of natural areas of ecological reserves," *id.* § 21190(b), and scientific research on "the impacts of climate change." *id.* § 21190(h).

---

[1] Personalized license plate configurations are very different from specialty plate designs, which California calls "special interest license plates," Cal. Veh. Code § 5060, or "specialized license plates," *id.* § 5154. A special interest license plate concerns a license plate's background, *see* Exh. 7 (specialty plate design backgrounds), rather than its configuration. Exh. 10, Holmes Dep. 27:25-28:4. A special interest plate background can carry either a sequential (standard) configuration or a personalized configuration.

---

## II.     The Department Rejects Plaintiffs' Personalized License Plate Applications

Plaintiffs are five Californians who sought to express their personal messages on personalized license plates. The Department denied their applications because it thought their proposed messages were "offensive to good taste and decency." Cal. Code Regs. tit. 13 § 206.00(c)(7)(D).

Paul "Chris" Ogilvie is a disabled army veteran who has served four tours overseas, including Afghanistan and Iraq. Ogilvie Decl. ¶ 2. During his service, Ogilvie picked up the nickname "OG," after commanding officers and fellow soldiers found his name too hard to pronounce. *Id.* After Ogilvie was honorably discharged, he bought a 2014 Hyundai Sonata. *Id*. His now-fiancée offered him a personalized license plate as a gift. *Id.* ¶ 3. The two thought about which configuration they would like for his personalized plate for about a week and finally decided on OGWOOLF, which combines Ogilvie's military nickname with another nickname stemming from his long-time interest in wolves. *Id.* ¶¶ 3-4. The Department rejected the personalized license plate configuration because the Department thought that the configuration "contain[ed] a reference to gang affiliation," and was thus "offensive to good taste and decency." *Id.* ¶ 5.

Amrit Kohli is a computer engineer, musician, and record producer. Kohli Decl. ¶ 2. In an effort to reclaim the word "queer" for the gay community, Kohli established Queer Folks Records. *Id.* Kohli obtained a trademark for his music label Queer Folk from the United States Patent and Trademark Office. *Id.* When Kohli applied for a personalized license plate with the configuration "QUEER," however, the Department rejected the application on the basis that it was "offensive to good taste and decency." *Id.* ¶ 4. The Department justified its denial on the basis that the term may be considered "insulting, degrading, or expressing contempt for a specific group or person." *Id.* ¶ 4; Exh. 15 (denial letter).

James Blair is a long-time fan of the rock band "Slayer" and has attended several of its concerts, including the group's final performance in Oakland in November 2019. Blair Decl. ¶ 2. As a tribute to his favorite band, Blair applied for a personalized license plate with the configuration "SLAAYRR." *Id.* ¶ 3. But the Department rejected the application, and insisted that it was "threatening, aggressive, or hostile." *Id.* ¶ 4; Exh. 16 (denial letter).

Andrea Campanile is an attorney for the United States Army. Campanile Decl. ¶ 2. Campanile and her fiancé Scott Gohman are avid enthusiasts of Ducati Motorcycles. *Id.* ¶¶ 2, 5. Both applied for personalized license plates celebrating the brand. *Id.* ¶¶ 3-5. Gohman applied for a license plate "DUKN GO" ("Ducati and Gohman"); she applied for one that read "DUK N A" ("Ducati and Andrea"). *Id.* The Department granted his application, and denied hers. *Id.*; Exhs. 11, 13. In its view, only her proposed license plate was "profane or obscene" and thus "offensive to good taste and decency." *See* Exh. 11.

Paul Crawford is an English immigrant who is now the proud owner of Shakespeare Pub in San Diego. Crawford Decl. ¶ 2. The pub's slogan is "Real beer, proper food, no bollocks," *id.*, and Crawford applied for a personalized license plate with the configuration "BO11LUX." *Id.* ¶ 3. The Department denied the application based on its belief that the configuration had "a discernable sexual connation or may be construed to be of a sexual nature," and was thus "offensive to good taste and decency." *Id.* ¶ 4; Exh. 12.

The five plaintiffs in this case are just some of the over 10,000 Californians each year who are denied the opportunity to express personal messages on their personalized license plates. However, they are not the first to challenge the regulation at issue in this case. Last year, University of Southern California professor Jonathan Kotler initiated a First Amendment challenge to the Department's denial of his application for a personalized plate with the configuration "COYW." *See Kotler v. Gordon*, No. 19-cv-2682, 2019 WL 4635168, at *1 (C.D. Cal. Aug. 29, 2019). Kotler has been an avid soccer fan since the 1950s and applied for the "COYW" plate to support his favorite team Fulham FC, after a historic run by the team in the 2017-18 season. *Id.*

The Department rejected the proposed configuration of COYW, because it was an acronym for "come on you whites," a slogan that Fulham's supporters routinely use to cheer on the soccer team, which wears white jerseys. *Id.* The Department denied the configuration because it believed the term to carry connotations "offensive to good taste and decency." *Id.* After Kotler filed his lawsuit, the Department filed a motion to dismiss and argued that messages on personalized license plates constituted government speech. *Id.* at *2. The court denied the motion, and observed that the Department's defense "strain[ed] believability." *Id.* at *7. Discovery followed, but the parties

1    settled the case and the Department issued Kotler his license plate. *See Kotler v. Webb*, No. 19-cv-

2    2682, ECF No. 38 (C.D. Cal. Jan. 28, 2020).

3    **III.    Statutory and Regulatory Scheme**

4        California law provides that the Department "may refuse to issue any combination of letters

5    or numbers, or both, that may carry connotations offensive to good taste and decency." Cal. Veh.

6    Code § 5105(a).[2] The implementing regulation specifies that the Department shall refuse any

7    configuration that may carry connotations offensive to good taste and decency, or which would be

8    misleading, based on "criteria which includes, but is not limited to," several factors. Cal. Code

9    Regs. tit. 13 § 206.00(c)(7)(D). As relevant here, the "good taste and decency" factors require

10   Department officials to deny a personalized license plate configuration they believe: (1) has a

11   sexual connotation or is a term of lust or depravity; (2) is a vulgar term; a term of contempt,

12   prejudice or hostility; an insulting or degrading term; a racially degrading term; or an ethnically

13   degrading term; (3) is a swear word or term considered profane, obscene, or repulsive; or (4) has

14   a negative connotation to a specific group. *See id.* § 206.00(c)(7)(D)(1)-(4).[3]

15       The Department has issued two sets of denial codes that its reviewers use in rejecting

16   applications for personalized license plates. The initial list of denial codes recited the four "good

17   taste decency" provisions noted above, but also added others not specifically enumerated in the

18   regulation. *See* Exh. 5. For instance, the denial codes instructed Department officials to deny a

19   personalized plate configuration if it contained "a reference to drugs," "a reference to gang

20   affiliation [] (specific numbers, colors, etc.), or if it "refers to guns, weaponry, shooting, or an

21   instrument normally used to inflict harm, and is refused due to the hostile connotation it may

22   invoke." *Id.* ¶¶ 13-15. None of those prohibitions are listed in the challenged regulation.

23       The reason for denial, as listed in the denial codes, was sometimes—but not always—sent

24   to disappointed personalized license plate applicants. The Department revised the denial codes in

25

---

26   [2] The same statutory provision also allows the Department to deny personalized license plate
     configurations that the Department considers "misleading." Cal. Veh. Code § 5105(a). None of the
27   Plaintiffs had their personalized license plate applications denied on that basis, and that provision
     is not at issue in this lawsuit.
28   [3] Three other enumerated factors pertain to the Department's authority to ban misleading speech.
     *See* Cal. Code Regs. tit. 13 § 206.00(c)(7)(D)(5)-(7).

---

April 2019, after receiving a complaint from a state senator who saw a denial letter and felt that its verbiage, which mirrored the regulatory language, was too aggressive. Exh. 1, Milhoan Dep. 26:23-27:24. The revised denial codes changed the numbering and also included superficial changes to the language. *See* Exh. 4. For example, the revised denial codes inform disappointed applicants that their requested configuration "*may be* considered prejudice or hostile," or "*may be* considered threatening, aggressive, or hostile." *Id.* (emphasis added).

The Department has issued a manual, with codes based on the original denial codes, which instructs initial reviewers to flag or deny plates with certain configurations. Exh. 6. The manual instructs initial reviewers to automatically deny proposed configurations that include "JUNK," "BUM," "DONG," and "NUT" as "sexual" terms. *Id.* at 41-42. Terms like "CRACKER," "REDSKIN," "DAGO," and "HONKY" are automatically denied as "Hostile/Insulting – racial and ethnic" terms. *Id.* at 44. Initial reviewers also automatically reject "HATE" and "H8" as too "hostile." *Id.* at 45.

## IV.    The Department's Approval Process

Personalized license plates are received as either physical applications, which may be received by the Department in person or by mail, or as electronic applications through the Department's online ordering system. Exh. 9, Gordon Interrog. Resp. No. 9. The technician who receives the physical application can reject the application if she believes that the configuration is "blatantly offensive." *Id.* Otherwise, the technician will forward the application, which is bundled with applications submitted by electronic means into daily orders, which average around 800 applications per day. *Id.* The process generates an order list displaying all of the applications, and a "REG 272," which displays the requested license plate configuration along with the customer's name and address. *Id.*

The ELP (environmental license plate) review team divides up the order and distributes the REG 272s to one of four initial reviewers employed by the Department. Exh. 1, Milhoan Dep. 23:21-24:4. There is no educational requirement to become an initial reviewer, and training consists mostly of "on the job training" such as shadowing another reviewer. *Id.* 26:10-22. The initial reviewers examine each configuration to "determine the perceived meaning of the plate."

Exh. 9, Gordon Interrog. Resp. No. 9. The initial reviewers are instructed to deny personalized plate configurations containing the terms set forth in the Department's manual. *See* Exh. 1, Milhoan Dep., 104:19-25. Otherwise, initial reviewers are generally "flipping through" the applications "to see if they read them as something that could be offensive." *Id.* at 25:9-25; *see also id.* at 55:17-56:4 ("it comes down to the reviewer" to determine what the average person views as offensive). In some cases, initial reviewers conduct additional research by using Urban Dictionary, Google, Google Translate, or foreign language speakers within the Department. Exh. 9, Gordon Interrog. Resp. No. 9. Each initial reviewer typically makes the determination on her own. *See* Exh. 1, Milhoan Dep. 33:2-22. An initial reviewer will typically only discuss her findings with the other members of the review team if her evaluation is inconclusive. Exh. 9, Gordon Interrog. Resp. No. 9.

An applicant who receives a denial letter may "write a letter to the department further explaining the meaning of the license plate configuration." *Id.* The letter triggers the secondary review process, and the application is assigned to one of four analysts at the Department. Exh. 1, Milhoan Dep. 33:23-36:13. The analyst "reviews the letter and researches the configuration further using the same resources [as the initial reviewers] in addition to possible consultation with other managers or staff." Exh. 9, Gordon Interrog. Resp. No. 9. The analyst then creates a file, which includes her research and the customer's letter, along with a recommendation to approve or deny the requested configuration. *Id.* The file is sent to the Department's section manager and program manager for a final determination on the applicant's request for a personalized license plate configuration. *Id.*[4]

The Department has made countless inconsistent decisions on which personalized license plate configurations are "offensive to good taste and decency" and which are not. The Department rejected a proposed application "RSPAZ," because "spaz" could be derogatory to persons with a disability. Exh. 20, DMV 000057. Yet when an applicant applied for a personalized plate configuration "SPAAAZ," that was approved. Exh. 21, DMV 000060. WAD4U and FUNDU were

---

[4] The program manager outranks the section manager and has the final word when the two disagree. Exh. 10, Holmes Dep. 52:10-23.

pulled for expressing hostility, *id.*; Exh. 22, DMV 000066, but JOKER2U was allowed. Exh. 25, DMV 000071. Many other undecipherable inconsistencies abound.

Two levels of Department reviewers concluded that Kotler's proposed "COYW" personalized license plate carried racial connotations offensive to good taste and decency, *see* Exh. 3, and both the Department's last program manager and current section manager continue to hold that view. Exh. 10, Holmes Dep. 83:1-84:4; Exh. 8, Correa Dep. 35:11-36:18. Yet the official position of the Department is that "COYW" does not carry any racial connotations. Exh. 10, Holmes Dep. 82:9-15. Further, although the Department's problem with "COYW" concerned the fact that it was an acronym for "come on you whites," the word "white" has been approved in many personalized license plates such as "GRWHITE," "G8WHITE," "WHITE," and "WEWHITE." Exh. 9, Gordon Interrog. Resp. No. 16; Exh. 19, DMV 000001.

The Department insisted that Ogilvie's proposed "OGWOOLF" personalized license plate contained a gang reference, Ogilvie Decl. ¶ 5, but had no trouble approving another that read OG 69LRK. *See* Exh. 24, DMV 000097. A Department official thought Campanile's proposed "DUK N A" configurations sounded too much like an obscenity, but her fiancé's (and fellow Ducati enthusiast's) "DUKN GO" configuration was approved. Exh. 11 (Campanile denial letter); Exh. 13 (picture of "DUKN GO" plate). Campanile observed a "FN RIDE" plate in California, *see* Exh. 14, but the Department denied another with the configuration "FNN LEXS." Exh. 23, DMV 000073. Numbers such as 12, 13, 69, and 88 are denied for various reasons such as gang affiliation, sexual connotation, and racial connotation, *see* Exh. 6, unless the vehicle bearing those numbers was made in that particular year. Exh. 1, Milhoan Dep., 104:6-105:5; *see also* Exh. 2.

## V.   Procedural History

Plaintiffs filed this federal civil rights lawsuit for injunctive and declaratory relief on March 10, 2020. *See* ECF No. 1. Plaintiffs alleged that the Department's prohibition on personalized license plate configurations that the Department believes "offensive to good taste and decency" forces the Department to make inconsistent, subjective, and often arbitrary decisions about what is prohibited and what is permitted. *Id.* ¶ 51. As such, the Department's regulation is a

1 | facially invalid restriction on speech because it discriminates on the basis of viewpoint and because

2 | it fails reasonableness review. *Id.* ¶¶ 49, 52.

3 | The Department moved to dismiss. *See* ECF No. 26. The Department's primary argument

4 | in that motion was substantially the same as its argument in *Kotler*: speech on personalized license

5 | plates constitutes government speech, and thus is not entitled to First Amendment protections. *See*

6 | *id.* at 7-17. The Department received a similar reception from this Court as it had months prior

7 | from the Central District. This Court also denied the motion. *See* ECF No. 37.

8 | Discovery followed. The parties stipulated that the Department's discovery responses in

9 | *Kotler* would operate as if they were served in this case. *See* Exh. 18. After depositions of

10 | Department officials with knowledge about the Department's regulation and its application, the

11 | parties agreed to a briefing schedule to file cross-motions for summary judgment. ECF No. 33.

**ARGUMENT**

12 | **I.    Standard of Review**

13 |

14 | Summary judgment is proper when a "movant shows that there is no genuine dispute as to

15 | any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

16 | A dispute is genuine only if there is sufficient evidence for a reasonable trier of fact to resolve the

17 | issue in the nonmovant's favor, and a fact is material only if it might affect the outcome of the

18 | case. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014)

19 | (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). The court must draw all

20 | reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Rancho*

21 | *Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010).

22 | Where the party moving for summary judgment would bear the burden of proof at trial,

23 | that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue

24 | material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th

25 | Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at

26 | trial, that party "must either produce evidence negating an essential element of the nonmoving

27 | party's claim or defense or show that the nonmoving party does not have enough evidence of an

28 | essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.*

1   *Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial

2   burden of production, the nonmoving party must produce admissible evidence to show that a

3   genuine issue of material fact exists. *Id.* at 1102-03. If the nonmoving party fails to make this

4   showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S.

5   317, 322-23 (1986).

6   **II.    The Department's "Offensive to Good Taste and Decency" Regulation Restricts**
       **Personal Speech**

7

8       The central issue in this case is whether the DMV's regulation prohibiting personalized

9   license plate configurations that are "offensive to good taste and decency" constitutes a regulation

10  on government speech or private speech. This distinction is important because the "Free Speech

11  Clause . . . does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460,

12  467 (2009); *see also Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550, 553 (2005) ("[T]he

13  government's own speech . . . is exempt from First Amendment scrutiny.").

14      But this Court has already decided that central issue—less than three months ago. After

15  briefing from both Plaintiffs and the Department, this Court concluded "that the alphanumeric

16  combinations approved via California's Environmental License Plate program are private speech."

17  ECF No. 33, at 9. The Court's decision was correct in July and it is still correct today.

18  **A.    The Law of the Case Doctrine Applies**

19      The law of the case doctrine precludes a court from reconsidering an issue that it previously

20  decided in the same case. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (citing

21  *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)). "As most commonly

22  defined, the doctrine posits that when a court decides upon a rule of law, that decision should

23  continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*,

24  460 U.S. 605, 618 (1983). The law of the case doctrine applies where the issue in question is

25  decided explicitly in a previous disposition before the same court. *See Milgard Tempering, Inc. v.*

26  *Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990); *see also Plantronics, Inc. v. Am. Home*

27  *Assurance Co.*, No. 5:07-CV-06038-PSG, 2014 WL 2452577, at *2 (N.D. Cal. May 30, 2014).

28  Here this Court previously decided—as a rule of law—that the alphanumeric combinations

approved via the DMV's personalized license plates program constitute private, not government speech. *See* ECF No. 33 (denying Department's Mot. to Dismiss).

There are exceptions to the law of the case doctrine. This Court may depart from its prior ruling where: "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *United States v. Scrivner*, 189 F.3d 825, 827 (9th Cir. 1999). Unless the Court finds that one of the exceptions applies to its prior ruling, failure to apply the law of the case doctrine constitutes an abuse of discretion. *See Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2014 WL 246972, at *4 (N.D. Cal. Jan. 22, 2014) (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)).

None of the exceptions to the law of the case doctrine apply here. This Court's decision was correct; it was not "clearly" erroneous. To the contrary, the Court's decision accords with three of the four post-*Walker* courts that have heard similar First Amendment challenges to government censorship of personalized license plate configurations. *Compare* ECF No. 33 at 9, *with Hart v. Thomas*, 422 F. Supp. 3d 1227, 1233 (E.D. Ky. 2019); *Kotler*, 2019 WL 4635168, at *7; *Mitchell v. Md. Motor Vehicles Admin.*, 450 Md. 282, 295 n.6 (2016). And as explained in more detail below, the Court's decision properly applied all applicable Supreme Court and appellate precedent.

The remaining exceptions to the law of the case doctrine require little extrapolation as they plainly do not apply. A mere three months have elapsed since the Court's prior ruling. There has been no intervening change in the law. There has been no additional evidence adduced—indeed this pure question of law requires no factual development from the parties. There have been no changed circumstances, and it would not be a "manifest injustice" to hold that personal messages by individuals who create both the message and supply its meaning do not constitute government speech. Accordingly, the Court should apply the law of the case and hold that the personalized license plates at issue constitute private speech.

**B.      Personalized License Plate Configurations Represent Personal Speech**

Assuming, *arguendo*, that the law of the case doctrine does not apply, the Court should once again hold that personalized license plate configurations represent the speech of the individual, not the government's speech. And the Court should do so for the same reasons that it explained in its July opinion.

The Department will undoubtedly attempt to shoehorn personalized license plates into the rule created by the Supreme Court's decision in *Walker*. In that case, the Supreme Court upheld Texas's denial of a specialty plate design, reasoning that specialty plate designs were government speech. *See Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2243-44 (2015). Evaluating specialty plate designs against factors first explained in *Summum*, 555 U.S. at 467, the *Walker* Court explained how courts ought to evaluate whether to invoke the government speech doctrine. Those factors are: (1) whether the government has historically used the forum to communicate its message, *Walker*, 135 S. Ct. at 2246-47; (2) whether the speech is more closely identified with the government than the individual, *id.* at 2248-49; and, (3) whether the government exercises great control over the message, *id.* at 2249. The *Walker* Court observed that these factors should be considered with "other relevant considerations" in determining whether speech is government speech.

However, the *Walker* Court expressly left open the question of whether personalized license plate configurations constitute government speech. *See Walker*, 135 S. Ct. at 2244 (declining to address the State's personalization program, which allows "a vehicle owner [to] request a particular alphanumeric pattern for use as a plate number, such as 'BOB' or 'TEXPL8'"); *see also* ECF No. 33 at 5. For good reason too: There are dispositive differences between the specialty plate designs at issue in *Walker* and the personalized plate configurations at issue here. Most notably, states have traditionally used license plate designs to express government messages, such as "Hoosier Hospitality" (Indiana), "Green Mountains" (Vermont), and "America's Dairyland" (Wisconsin). *Walker*, 135 S. Ct. at 2248. By contrast, no state has ever expressed a government message through personalized license plate configurations. *Individuals* use personalized license plate configurations as a forum for personal expression. They celebrate their

1  name ("BOB"), their car ("68VETT"), or their pets ("LVMYDOG"), among many other personal

2  messages. *See Mitchell*, 450 Md. at 295 n.6.[5]

3          The majority of post-*Walker* courts—including each federal court—have held that

4  personalized plates constitute personal speech. Order Denying Dep't Mot. to Dismiss, ECF No.

5  33, at 8; *Hart*, 422 F. Supp. 3d at 1233; *Kotler*, 2019 WL 4635168, at *7; *Mitchell*, 450 Md. at

6  295; *but see Comm'r of Ind. Bureau of Motor Vehicles v. Vawte*r, 45 N.E.3d 1200, 1207 (Ind.

7  2015) (holding that personalized license plate numbers are government speech). As those cases

8  recognize, the logic of *Walker*, which "likely marks the outer bounds of the government speech

9  doctrine," *Matal v. Tam*, 137 S. Ct. at 1760, cannot be stretched to transform personalized plate

10 configurations into government speech.

11         Applying the *Walker* factors to personalized plates yields the expected result that

12 *personalized* plates are *personal* speech. To begin, there is simply no evidence that personalized

13 license plates—as opposed to license plate designs—have ever been used to convey government

14 messages. *See* ECF No. 33 at 5 ("[T]he State has not historically used the alphanumeric

15 combinations on license plates to communicate messages to the public."). Indeed, the Department

16 itself—in its rejection letters to disappointed applicants—recognizes that its action abridges the

17 "*individual's* constitutional right to free speech and expression." *Kotler*, 2019 WL 4635168, at *8

18         Further, as this Court recognized, the rote identification of vehicles is not a government

19 message. *See* ECF No. 33 at 6 ("License plate numbers 'do not express a government-approved

20 message in the same way as specialty plate designs.'") (quoting *Kotler*, 2019 WL 46351468, at

21 *7). Because each personalized license plate configuration is unique to each vehicle, it would be

22 incomprehensible for the government to disseminate a message on personalized license plates.

23 California would be "babbling prodigiously and incoherently." *Tam*, 137 S. Ct. at 1758.

24

25

26  [5] California law expressly recognizes this distinction. For personalized license plates, the DMV
    asks each applicant to supply the government with "the meaning of each [proposed
27  configuration]." *See* Cal. Code Regs. tit. 13 § 206.00(c). Conversely, California law draws a
    distinction between specialty plate designs that "publicize[] or promote[] a state agency," Cal.
28  Veh. Code § 5154, and custom plate configurations that "contain[] a personalized message," *id.*
    § 5060(d)(1)(C).

Unlike *Walker*, where the Court recounted over a hundred years of examples of the states conveying messages on license plate designs, 135 S. Ct. at 2244, the Department can point to no example where California has expressed a message through the alphanumeric combinations on license plates themselves. While "[s]tates have used license plate slogans to urge action, to promote tourism, and to tout local industries," *id.*, states have never used personalized license plate configurations to further any of those purposes. Put simply, there is no history of the government—in California or elsewhere—conveying a message through personal vanity plates.

As to the second *Walker*/*Summum* factor, this Court was again correct when it noted that "it strains believability" to think that the government is communicating through personalized license plates. ECF No. 33 at 6 (quoting *Kotler*, 2019 WL 46351468, at *7). Not only is it ridiculous to think that the California government is declaring Kobe Bryant the king of basketball (KNG KOBE), *id.*, but it is likewise nonsense to argue that the Californians believe the state is declaring itself gay (QUEER) or a fan of the rock band Slayer (SLAAYRR ). These are plainly messages of the individuals driving those vehicles and every Californian knows it. "[C]ommon sense dictates that the public attributes any message on an Environmental License Plate to the driver." Order Denying Dep't Mot. to Dismiss, ECF No. 33 at 7 (quoting *Kotler*, 2019 WL 4635168, at *7).

California's regulatory scheme even explicitly recognizes that license plate configurations are identified with the license plate holder. The Department neither creates nor suggests personalized license plate configurations. *Cf. Walker*, 135 S. Ct. at 2248 (recounting state-created specialty plate designs). Instead, the person applying for a personalized plate is responsible not just for creating the configuration, but also supplying the Department with its meaning. *See* Cal. Code Regs. tit. 13 § 206.00(c). It would be strange, to say the least, for the government to ask individuals to provide the government with the meaning of the government's own message.

Finally, it is meaningful here that California prohibits duplicative license plate configurations. Cal. Veh. Code § 5105(a). Each configuration is unique—much more so than specialty plate designs, which generally require 7,500 applications for the same plate before they will be issued, *id.* § 5004.3(g)(1), and even more so than bumper stickers—which can be replicated

1  on many cars. Because there can be only one "OGWOOLF" or "LVMYDOG" plate in the entire

2  state, there is no credibility to the claim that the government is expressing that message. *Cf.* Order

3  Denying Dep't Mot. to Dismiss, ECF No. 33 at 7 ("'To suggest that the state has somehow

4  meticulously curated the message of each of' the hundreds of thousands of personalized license

5  plates it approves 'is nonsensical.'" (quoting *Kotler*, 2019 WL 4635168, at *7)).

6        The fact that personalized license plates may serve a governmental function—*i.e.*, a unique

7  vehicle identifier—does not turn the message into government speech. Personalized license plates,

8  like trademarks, serve multiple purposes. They not only help identify vehicles, but also serve as a

9  means of self-expression for the motorist. After all, standard license plates serve an interest in

10 identification just as well as a personalized license plate. Yet California uses revenue it generates

11 from personalized license plate application and renewal fees to support environmental programs.

12 The State is able to generate that extra revenue because personalized license plates serve an interest

13 in addition to the identification interest already served by standard license plates: providing a

14 forum where an individual can express a personal message. And the Department can charge more

15 for allowing motorists that want to use that forum and express a personal message.

16       Turning to the third *Walker*/*Summum* factor, this Court correctly recognized that

17 "California's personalized license plates do not send any message on behalf of the State and thus

18 do not present an 'image' of the State or its constituency." Order Denying Dep't Mot. to Dismiss,

19 ECF No. 33 at 8. Like the trademarks at issue in *Tam*, "the fact that the State regulates the plates

20 is not enough to transform their content into government speech." *Id.* at 9.

21       *Tam* is on point here because the Patent and Trademark Office's (PTO) role in trademark

22 registration is akin to the DMV's role in policing personalized license plates. The relevant statutes

23 direct the PTO to "refuse[] registration of certain marks." 15 U.S.C. § 1052. The PTO cannot

24 register a mark that "so resemble[s] another mark as to create a likelihood of confusion." *Id.*

25 § 1052(d). It cannot register a mark that is "merely descriptive" of the goods on which it is used.

26 *Id.* § 1052(e). It cannot register a mark containing the flag or insignia of any nation or state. *Id.*

27 § 1052(b). Despite the government's heavy role in regulating trademark registration, however, the

28 *Tam* Court squarely rejected the contention that trademarks constitute government speech. *See*

*Tam*, 137 S. Ct. at 1757-60. In *Tam*, as in this case, the government's control over forum does not give it carte blanche to control the viewpoint of the message.

*Walker* does not dictate otherwise. The control that the Court found relevant in *Walker* was the State's well-established control over the message on license plate designs in "choos[ing] how to present itself and its constituency." 135 S. Ct. at 2249. No such concerns about "control" exist with personalized license plates because, again, California has never promoted its own message through personalized license plates. There is no concern that the State will be forced to issue a plate that conflicts with its preferred message. *See Mitchell*, 450 Md. at 296 (rejecting the Indiana Supreme Court's reasoning in *Vawter*, 45 N.E.3d at 1207, about the State's "control" over personalized license plates).

Unlike the 350 or so messages that Texas conveyed through specialty plates in *Walker*, California cannot maintain control over hundreds of thousands of messages on California's roads. Simply because California may veto a message it does not like does not transform unique personal messages into government speech. These are private messages, created by individuals, that the State has no interest in endorsing or conveying.

The *Walker/Summum* factors are an attempt to parse difficult questions of government/private speech—like erecting statues in a public park or general license plate designs. But that whole framework seems a bit out-of-place here. The ultimate question that the *Walker/Summum* factors are getting at is "whether a reasonable observer would perceive the plate's message as a statement by" the government. *Eagle Point Education Ass'n v. Jackson Cty. Sch. Dist. No. 9*, 880 F.3d 1097, 1103 (9th Cir. 2018). And on that question, there really can be no debate. Personalized license plates—colloquially known as vanity plates—are plainly personal, individual messages. No reasonable observer could plausibly think otherwise.

## III.   The Department's "Offensive to Good Taste and Decency" Regulation Is Facially Unconstitutional Under the First Amendment

### A.   The Department's "Offensive to Good Taste and Decency" Regulation Discriminates on the Basis of Viewpoint

So long as the Court views the challenged regulation as private speech—which it ought— its unconstitutionality is plain. The regulation discriminates on the basis of viewpoint—it prohibits

"offensive" speech and permits non-offensive speech; it prohibits speech not in "good taste" and allows speech that is in "good taste"; it prohibits speech that is not "decent" and allows speech that is "decent." Cal. Code Regs. tit. 13, § 206(c)(7)(D). Such viewpoint discrimination of private speech is patently unconstitutional. *Tam*, 137 S. Ct. at 1751; *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019).

Forum analysis is unnecessary. A court uses forum analysis where a law restricts private speech on government property. *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 800 (1985). Different levels of scrutiny apply depending on the type of forum at issue, *id.*, but it is unnecessary for this Court to define the relevant forum. A regulation that prohibits private speech that is "offensive to good taste and decency," *see* Cal. Code Regs. tit. 13 § 206.00(c)(7)(D), cannot survive review regardless of forum, because it is a "bedrock First Amendment principle" that the government cannot discriminate against "ideas that offend." *Tam*, 137 S. Ct. at 1751; *Brunetti*, 139 S. Ct. at 2299. This is true even in non-public forums, where restrictions on speech must be reasonable, but still viewpoint neutral. *See Rosenberger v. Rector and Visitors of the Univ. of Virginia*, 515 U.S. 819, 829 (1995).

Just as the Trademark Office's refusal to register Simon Tam's or Erik Brunetti's trademarks demonstrated that the Lanham Act's restrictions on "disparaging" or "immoral or scandalous" speech involved unconstitutional viewpoint discrimination, the Department's refusal to issue license plates that are not in "good taste" or "decent" require it to engage in unconstitutional viewpoint discrimination. In that way, forum analysis is of limited relevance here, just as it was irrelevant in *Tam* and *Brunetti*.

The similarities between *Tam* and this case go deeper. Simon Tam, an Asian-American, sought to reclaim a derogatory word for Asian-Americans (Slants) in order to "drain its denigrating force." *Tam*, 137 S. Ct. at 1751. Amrit Kohli, a gay American, seeks to reclaim a sometimes derogatory word for gay Americans (Queer) for the same reasons. Kohli Decl. ¶¶ 2-3; *see also* ECF No. 33, at 11 ("Kohli . . . is in an analogous position to Tam."). In *Tam*, the Court held that such prohibitions on "offensive" speech are unconstitutional viewpoint discrimination. *Tam*, 137 S. Ct. at 1751. The Court reaffirmed its holding a year later in *Brunetti*. 139 S. Ct. at 2299.

This Court has recognized that it "need not decide the question [of forum]" where the regulation discriminates on the basis of viewpoint. ECF No. 33, at 10 (citing *Matwyuk v. Johnson*, 22 F. Supp. 3d 812, 824 (W.D. Mich. 2014)).[6] Further, this Court explained that "California's prohibition on personalized license plate numbers 'that may carry connotations offensive to good taste and decency' constitutes viewpoint discrimination under either [test from *Tam*]." *Id.* at 11. Because the Department's regulation prohibits viewpoints that Department officials find "offensive to good taste and decency," the regulation is "presumptively unconstitutional." *Rosenberger*, 515 U.S. at 829.

**B.     The Department's "Offensive to Good Taste and Decency" Regulation Is an Unreasonable Restriction on Speech**

Because the Department's prohibition of personalized license plate configurations it believes offensive to good taste and decency discriminates on the basis of viewpoint, this Court should hold that it is facially unconstitutional without examining "whether it is unreasonable in light of the purposes served by the forum." *Good News Club v. Milford Central School*, 533 U.S. 98, 107 (2001). Nonetheless, the Department's "good taste and decency" regulation fails reasonableness review.

As the Supreme Court held in *Minnesota Voters Alliance v. Mansky*, reasonable restrictions on speech must provide "objective, workable" standards that provide "some sensible basis for distinguishing" between permitted and prohibited speech. 138 S. Ct. 1876, 1888, 1891 (2018). When Californians perceive "unfair and inconsistent enforcement," whatever interests the Department asserts would be "undermined by the very measure intended to further it." *Id.* at 1891.

The Department's regulation suffers from the same fatal defects that made the "Political Apparel Ban" in *Minnesota Voters* unconstitutional. Here, the "unmoored use" of the phrase "offensive to good taste and decency," combined with the "haphazard interpretations" that the Department has provided, causes the regulation to flunk reasonableness review. *Id.* at 1888. Numerous courts have invalidated similar restrictions on speech on the basis that they failed to

---

[6] Because the issue of forum was already decided by this Court, it too is subject to the law of the case doctrine for the same reasons as explained above. *See supra* at Arg. II.A

1    provide some "sensible basis" for distinguishing between configurations that are permitted and

2    configurations that are prohibited. *Minn. Voters*, 138 S. Ct. at 1888. In *Lewis v. Wilson*, the Eighth

3    Circuit sustained a facial challenge to a Missouri statute that allowed the state to reject proposed

4    plate configurations that were "contrary to public policy." 253 F.3d 1077, 1080 (8th Cir. 2001).

5    The amorphous term, the Court reasoned, gave Missouri "nearly unfettered discretion in choosing

6    what license plates should be rejected and in deciding what alleged 'public policy' supports its

7    decision." *Id.* In *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio*

8    *Regional Transit Authority*, 163 F.3d 341 (6th Cir. 1998), the Sixth Circuit held that the transit

9    authority's prohibition on "controversial" advertisements was unconstitutionally overbroad

10   because it presented a "real and substantial" danger that the authority would exclude a proposed

11   advertisement solely because of its viewpoint. *Id.* at 361-62. In *Montenegro v. New Hampshire*

12   *Div. of Motor Vehicles*, 166 N.H. 215, 224 (2014), the New Hampshire Supreme Court observed

13   that the state's "offensive to good taste" standard was not susceptible of objective definition, and

14   granted Department officials the power to deny configurations based on the "particular officials'

15   subjective idea of what is 'good taste.'" *Id.*

16          Neither can the Department rely on the statutory subparts to cure the constitutionally

17   defective regulation. For one, the subparts are not exclusive. *See* Cal. Code Regs. tit. 13

18   § 206.00(c)(7)(D). Further, the subparts themselves contain vague and amorphous standards such

19   as the prohibition against "hostility," or "contempt," or "negative connotation to a group." *See id.*

20   The Department's manual fares no better in providing objective, workable standards. *See* Exh. 6.

21   The manual only provides guidance on a small subset of proposed terms, and even those do not

22   bind all reviewers. *See id.*; Exh. 1, Milhoan Dep. 104:19-25.

23          The manual underscores an additional problem with the Department's regulation: it shows

24   that the Department's regulation is riddled with exceptions. For example, personalized license

25   plate configurations bearing the numbers 12, 13, 69, and 88 are typically prohibited, unless the

26   owner can show that the car was made in the same year as the number she seeks to include in her

27   configuration. Exh. 1, Milhoan Dep. 104:6-105:5. Moreover, Department officials revealed that

28   configurations containing "OG" had previously been automatically denied, but now are merely

flagged given the perceived shifts in the English language. *See* Exh. 1, Milhoan Dep. 73:2-74:21; Exh. 8, Correa Dep. 49:17-51:12. Yet this rationale "only increases the potential for erratic application, as" the Department's decisions "may turn in significant part on the background knowledge of the particular [Department official] applying it." *Minn. Voters*, 138 S. Ct. at 1890.

The Department asserts two interests in prohibiting personalized license plate configurations that its officials believe to be "offensive to good taste and decency." *See* Exh. 9, Gordon Interrog. Resp. No. 4. The Department claims that the prohibition "advance[s] public safety" and "prevent[s] the appearance that [the Department] endorses or condones any message that may carry connotations offensive to good taste and decency." *Id.* Both arguments are meritless. The Department's 30(b)(6) deponent conceded that he could not identify a single instance of a person being attacked for her license plate.[7] Exh. 1, Milhoan Dep. 61:12-20; 62:36-63:7. More to the point, "the mere possibility of a violent reaction to [Plaintiffs'] speech is simply not a constitutional basis on which to restrict [their] right to speak." *Lewis*, 253 F.3d at 1081 "The argument amounts to little more than the self-defeating proposition that to avoid physical censorship of one who has not sought to provoke such a response by a hypothetical coterie of the violent and lawless, the States may more appropriately effectuate that censorship themselves." *Id.* at 1081-82 (quoting *Cohen v. California*, 403 U.S. 15, 23 (1971)).

The Department's contention that the restriction "prevent[s] the appearance that [the Department] endorses or condones any message that may carry connotations offensive to good taste and decency" fares no better. The Department's 30(b)(6) deponent clarified that the Department is not endorsing a message on a personalized license plate, but instead "allowing it because it's not offensive." Exh. 1, Milhoan Dep., 67:3-68:10. For example, in approving a "KING KOBE" plate, the Department is not taking the position that "Kobe Bryant is the king of anything." *Id.* at 65:11-66:1; *see id.* (acknowledging that Department is not even taking a position that Kobe Bryant is even a good basketball player by approving a "KING KOBE" license plate).

---

[7] The Department's document production is similarly deficient on this point. *See* Exh. 17, Gordon Response to Request for Production No. 3.

1    In all events, the Department has failed to show that its restriction is a reasonable method

2  of advancing any interests that it may assert. The Department cannot explain why it believes that

3  Ms. Campanile's "DUK N A" plate would have driven fellow motorists into a rage, but that her

4  fiancé's "DUKN GO" plate presented no public safety concerns. Nor can the Department describe

5  why it had to prevent the appearance that the Department "endorses or condones" Mr. Ogilvie's

6  proposed "OGWOOLF" plate, but had no difficulty approving another motorist's "OG 69LRK"

7  personalized license plate. Without some sensible basis for distinguishing between permitted and

8  prohibited speech, whatever interests the Department asserts would be "undermined by the very

9  measure designed to further" them. *Minn. Voters*, 138 at 1891. The Department's regulation is an

10 unreasonable restriction of speech.

**CONCLUSION**

12    For the foregoing reasons, because there are no material facts in dispute with respect to

13 Defendant's liability and because Plaintiffs Paul Ogilvie, James Blair, Andrea Campanile, Amrit

14 Kohli, and Paul Crawford are entitled to judgment as a matter of law, summary judgment should

15 be entered in favor of them and against Defendant pursuant to Fed R. Civ. P. 56(a).

16    DATED: October 5, 2020.

Respectfully submitted,

WENCONG FA, SBN 301679
JOSHUA P. THOMPSON, SBN 250955

By      /s/ Wencong Fa
          WENCONG FA

*Attorneys for Plaintiffs, Paul Ogilvie, et al.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** has been served through the Court's CM/ECF system on all registered counsel.

DATED: October 5, 2020.

/s/ Wencong Fa
WENCONG FA
