1   XAVIER BECERRA
Attorney General of California
2   MICHELLE M. MITCHELL
Supervising Deputy Attorney General
3   CHAD A. STEGEMAN
Deputy Attorney General
4   State Bar No. 225745
    455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
    Telephone:  (415) 510-3624
6    Fax:  (415) 703-5843
    E-mail:  Chad.Stegeman@doj.ca.gov
7   *Attorneys for Defendant Steve Gordon, in his official*
   *capacity*

8

9          IN THE UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  **PAUL OGILVIE, ANDREA CAMPANILE, JAMES BLAIR, PAUL CRAWFORD, and** | 4:20-cv-01707-JST |
| 13  **AMRIT KOHLI,** | **NOTICE OF MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT;** |
| 14              Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES; OPPOSITION TO** |
| 15      v. | **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| 16  **STEVE GORDON, in his Official Capacity** | Hearing Date: November 18, 2020 |
| 17  **as Director of the California Department of Motor Vehicles,** | Time:        2:00 p.m.<br>Judge:      Jon S. Tigar |
| 18              Defendant. | Location:   Courtroom 6 |
| 19 | Action Filed:  March 10, 2020 |

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3   Notice of Cross-Motion For Summary Judgment ............................................................. 1

4   Memorandum of Points And Authorities In Support of Cross-Motion For Summary
        Judgment ............................................................................................................ 1

5   Introduction ............................................................................................................... 1

6   Legal Standard For Summary Judgment ........................................................................ 4

    Argument .................................................................................................................. 5

7   I.       Many Defining Subparts to the Preamble Address Speech that Falls
             Outside of the First Amendment and Are Constitutional; They Should Not
8            Be Subject to Scrutiny .......................................................................................... 5

9   II.      The Subparts Are Reasonable and Viewpoint Neutral within the Scope of a
             Nonpublic Forum; Therefore, the Preamble and California Vehicle Code
10           Section 5105 Are also Constitutional ........................................................................ 6

11           A.       The Subparts Are Viewpoint Neutral and Promote Legitimate State
                      Interests. ..................................................................................................... 7

12                    1.       Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(1): "The
                               configuration has a sexual connotation or is a term of lust or
13                             depravity." ..................................................................................... 10

14                    2.       Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(2): "The
                               configuration is a vulgar term; a term of contempt,
15                             prejudice, or hostility; an insulting or degrading term; a
                               racially degrading term; or an ethnically degrading term." .......... 12

16                    3.       Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(3): "The
                               configuration is a swear word or term considered profane,
17                             obscene, or repulsive." ................................................................... 15

18                    4.       Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(4): "The
                               configuration has a negative connotation to a
19                             specific group." ............................................................................. 16

20                    5.       Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(7): "The
                               configuration is a foreign or slang word or term, or is a
21                             phonetic spelling or mirror image of a word or term falling
                               into the categories described in subdivisions 1. through 6.
22                             above." ......................................................................................... 18

23           B.       The Preamble As Defined by Its Constitutional Subparts Is
                      Constitutional. .............................................................................................. 18

    Conclusion ................................................................................................................ 19

24  Opposition to Plaintiffs' Motion for Summary Judgment ................................................. 19

25  I.       Plaintiffs Must Specifically State the Relief They Seek and the Relief Must
             Redress Their Purported Harms; But They Have Not Done So........................................ 20

26  II.      The Nonpublic Forum Analysis Applies and the Regulation, Defined by Its
             Subparts, Is Viewpoint Neutral and Rationally Based. ................................................. 21

27  Conclusion ................................................................................................................ 25

28

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)................................................................4

*Berg v. Kincheloe*
    794 F.2d 457 (9th Cir. 1986)...............................................4

*Bethel School Dist. No. 403 v. Fraser*
    478 U.S. 675 (1986).......................................................11, 12

*Brown v. Entertainment Merchants Ass'n*
    564 U.S. 786 (2011).............................................................6

*Cantwell v. Connecticut*
    310 U.S. 296 (1940).............................................................6

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986).............................................................4

*Chaplinsky v. N.H.*
    315 U.S. 568 (1942)........................................................5, 13

*Children of the Rosary v. City of Phoenix*
    154 F.3d 972 (9th Cir. 1998)...............................................23

*Choose Life Ill., Inc. v. White*
    547 F.3d 853 (7th Cir. 2008)...............................................18

*Cornelius v. NAACP Legal Def. & Educ Fund, Inc.*
    473 U.S. 788 (1985)...........................................6, 10, 15, 24

*FCC v. Fox TV Stations, Inc.*
    556 U.S. 502 (2009)...........................................................10

*FCC v. Pacifica Foundation*
    438 U.S. 726 (1978).......................................................10, 15

*Hart v. Thomas*
    422 F. Supp. 3d 1227 (E.D. Ky. 2019) ...........................7, 15, 24

*Hocevar v. Purdue Frederick Co.*
    223 F.3d 721 (8th Cir. 2000)...............................................11

*Hunt v. City of Los Angeles*
    No. 12-cv-7261, 2013 WL 12164626 (C.D. Cal. Aug. 19, 2013)............13

## TABLE OF AUTHORITIES
### (continued)

Page

*Hunt v. PennDOT*
  47 Pa. D. & C.3d 132 (Pa. Com. Pl. 1987) ......................................................19, 23

*Iancu v. Brunetti*
  139 S. Ct. 2294 (2019) ............................................................................. *passim*

*Kahn v. Department of Motor Vehicles*
  16 Cal. App. 4th 159 (1993)...................................................................... *passim*

*Katz v. Department of Motor Vehicles*
  32 Cal. App. 3d 679 (1973)....................................................................... *passim*

*Lee v. Superior Court*
  9 Cal. App. 4th 510 (1992).....................................................................13, 16, 17

*Lehman v. City of Shaker Heights*
  418 U.S. 298 (1974)...................................................................................23

*Lewis v. Wilson*
  253 F.3d 1077 (8th Cir. 2001).......................................................................22

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992)....................................................................................21

*Matal v. Tam*
  137 S. Ct. 1744 (2017) ............................................................................. *passim*

*Matwyuk v. Johnson*
  22 F. Supp. 3d 812 (W.D. Mich. 2014)....................................................18, 20, 22

*Miller v. California*
  413 U.S. 15 (1973).....................................................................................16

*Minnesota Voters Alliance v. Mansky*
  138 S. Ct. 1876 (2018)............................................................................22, 23

*Mitchell v. Md. Motor Vehicles Admin.*
  450 Md. 282 (2016) ................................................................................. *passim*

*Montenegro v. New Hampshire Div. of Motor Vehicles*
  166 N.H. 215 (2014)...................................................................................22

*Perry Educ. Ass'n. v. Perry Local Educators' Assn.*
  460 U.S. 37 (1983)................................................................................6, 7, 10

iii

Cross-Mot. for Summ. J.; Memo. P & A; Opp'n Pltfs.' Mot. for Summ. J. (4:20-cv-01707-JST)

1

### TABLE OF AUTHORITIES
(continued)

2

<u>Page</u>

3

*Perry v. McDonald*
    280 F.3d 159 (2d Cir. 2001)........................................................................8, 17

4

*R.A.V. v. City of St. Paul*
    505 U.S. 377 (1992)..................................................................................6, 15

5

6

*Rosenberger v. Rector and Visitors of the Univ. of Virginia*
    515 U.S. 819 (1995)........................................................................................9

7

*Scott v. Harris*
    550 U.S. 372 (2007)........................................................................................5

8

9

*Seattle Mideast Awareness Campaign v. King Cnty.*
    781 F.3d 489 (9th Cir. 2015).................................................................. *passim*

10

*Triton Energy Corp. v. Square D Co.*
    68 F.3d 1216 (9th Cir. 1995)..........................................................................4

11

12

*United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio*
    *Regional Transit Authority*
    163 F.3d 341 (6th Cir. 1998)........................................................................22

13

14

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*
    576 U.S. 200 (2015)............................................................................... *passim*

15

16

**STATUTES**

17

California Vehicle Code
    § 4851....................................................................................................7
    § 5103....................................................................................................2
    § 5105............................................................................................. *passim*
    § 5105(a).................................................................................................2

18

19

20

**CONSTITUTIONAL PROVISIONS**

21

22

United States Constitution
    First Amendment................................................................................ *passim*

23

**COURT RULES**

24

Federal Rules of Civil Procedure
    Rule 12(b)(6)..........................................................................................1
    Rule 56(c)..............................................................................................4

25

26

27

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

**OTHER AUTHORITIES**

California Code of Regulation, Title 13
§ 206.00(c)(7)(D)(1)-(7) ................................................................................... *passim*

*Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/repulsive (last visited on October 19, 2020)......................................15

Cross-Mot. for Summ. J.; Memo. P & A; Opp'n Pltfs.' Mot. for Summ. J. (4:20-cv-01707-JST)

1

**NOTICE OF CROSS-MOTION FOR SUMMARY JUDGMENT**

2

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT, on November 18, 2020, at 2:00 p.m., or as soon

4

thereafter as the matter may be heard, before the Honorable Jon S. Tigar, United States District

5

Judge, in Courtroom 6 of the United States District Court for the Northern District of California,

6

located at 1301 Clay St., 2nd Floor, Oakland, California 94612, Defendant Steve Gordon, in his

7

official capacity as Director of the California Department of Motor Vehicles, will move this Court

8

for summary judgment pursuant to Federal Rule of Civil Procedure 56.

9

This cross-motion is brought on the grounds that California Vehicle Code section 5105, and

10

its implementing regulation, Title 13 of the California Code of Regulations section

11

206.00(c)(7)(D) and its seven defining subparts, are constitutional because the defining subparts

12

of Section 206.00(c)(7)(D) are viewpoint neutral and have a rational basis.

13

This cross-motion is based on this Notice, the Memorandum of Points and Authorities, the

14

papers and pleadings on file in this action, and upon such matters as may be presented to the

15

Court at the time of the hearing.

16
17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT[1]**

18

**INTRODUCTION**

19

The California Department of Motor Vehicles (DMV) denies any personalized license plate

20

configurations that are "offensive to good taste and decency" as defined by seven subparts, which

21

provide standards that rationally achieve the State's ends.  Cal. Code Regs. Tit. 13 §

22

206.00(c)(7)(D)(1)-(7).  Plaintiffs' challenge to the regulation, which the Court determined

23

concerns private speech, is considered within the framework of a nonpublic forum.  Under a

24

nonpublic forum analysis, a restriction on speech must be viewpoint neutral and reasonable.  The

25

content-specific subparts of Section 206.00(c)(7)(D) are viewpoint neutral—and Plaintiffs do not

26

challenge them as discriminating on the basis of viewpoint.  Furthermore, California has

27
28

[1] The California Attorney General's Office acknowledges law student Allison Talker, 2022 University of California Berkeley School of Law J.D. Candidate, for her substantial contributions to this brief.

1

1   legitimate interests for restricting the content placed on personalized license plates, including

2   public safety, not associating itself with offensive speech, and impugning license plates as a State

3   symbol for identification.  Therefore, the challenged regulation's preamble, "offensive to good

4   taste and decency," taken with its subparts, is constitutional and this Court should grant

5   Defendant's summary judgment motion.

6                                    **STATEMENT OF FACTS**

7       Drivers in California must display a license plate with a configuration that consists of

8   letters, numbers, or a combination of both for vehicle registration and identification purposes.

9   Cal. Veh. Code §§ 5103, 5105(a).  Motorists may request a personalized "environmental" license

10  plate (ELP) to display a non-randomized configuration.  (Milhoan Decl. ¶ 2.)  DMV determined

11  "that it is in the public interest to refuse to issue offensive and misleading configurations, and []

12  developed guidelines to assist in the determination."  (Stegeman Decl. Ex. E at DMV 024286,

13  DMV 024318 (1994 Rulemaking File Z94-0520-01).)  Accordingly, DMV may refuse to issue

14  any configuration that "may carry connotations offensive to good taste and decency."  Cal. Veh.

15  Code § 5105(a).  Title 13 of the California Code of Regulations, section 206.00(c)(7)(D) (Section

16  206.00(c)(7)(D)) and its seven defining subparts, implement California Vehicle Code section

17  5105.  Section 206.00(c)(7)(D) uses similar language to the Vehicle Code, which are then further

18  explained:

19      (D) The department shall refuse any configuration that may carry connotations offensive to
           good taste and decency, or which would be misleading, based on criteria which
20         includes, but is not limited to, the following:

21          1. The configuration has a sexual connotation or is a term of lust or depravity.
            2. The configuration is a vulgar term; a term of contempt, prejudice, or hostility; an
22             insulting or degrading term; a racially degrading term; or an ethnically degrading
               term.
23          3. The configuration is a swear word or term considered profane, obscene, or repulsive.
            4. The configuration has a negative connotation to a specific group.
24          5. The configuration misrepresents a law enforcement entity.
            6. The configuration has been deleted from regular series license plates.
25          7. The configuration is a foreign or slang word or term, or is a phonetic spelling or
               mirror image of a word or term falling into the categories described in subdivisions
26             1. through 6. above.

27  Cal. Code Regs. Tit. 13 § 206.00(c)(7)(D)(1)-(7).

28

                                                2

1    One of DMV's primary objectives is to promote safe driving on California roads. (Milhoan

2  Decl. ¶ 4.) The primary reason license plates are required in California is to identify validly

3  registered vehicles and to identify the owner of the vehicles. (*Id.*) Thus, if DMV issues license

4  plates with identical or similar configurations, it would be easy for the public or law enforcement

5  to misread those configurations in a circumstance where they might want to identify a vehicle and

6  its owner. (*Id.*) This could impede law enforcement action. (*Id.*) In conjunction with the goals

7  of identification and ensuring valid registration, the primary justification for the ELP program is

8  the generation of revenue to support State environmental programs. (*Id.* ¶ 5.) However, in

9  establishing the program, and to ensure the selection of configurations by individuals does not

10  cause distraction, disruption, provocation or other interference with safe driving or breaches of

11  the peace, certain categories of configurations are prohibited. (*Id.*; *id.* ¶ 7.)

12    Section 206.00(c)(7)(D) and its seven defining subparts prohibit the duplication of

13  configurations, misleading configurations, protect the identification symbol of a license plate

14  from degradation, advance public safety, and prevent the appearance that the State of California

15  or DMV endorse messages of hatred, obscenity, profanity, and other messages that carry

16  connotations offensive to good taste and decency as defined by Section 206.00(c)(7)(D)(1)-(7).

17  (Milhoan Decl. ¶ 3; Stegeman Decl. Ex. D (Response to Interrogatory 4).) Additionally, DMV

18  and the State do not want to be associated with messages, or appear to condone such messages,

19  that are offensive, promote hatred, discrimination, or incitement. (Milhoan Decl. ¶ 8.) Nor do

20  they want to degrade license plates as an identification symbol. (*Id.* ¶¶ 3, 8.)

21    Assuming all other criteria are met in the application under the ELP, DMV relies on the

22  seven defining subparts that outline criteria for denying proposed vanity plates. (Milhoan Decl. ¶

23  7.) To ensure consistency in decision making, initial and secondary reviewers use a set of denial

24  codes that provide specific guidance for the types of configurations that should be rejected. (*See*

25  Milhoan Decl. ¶ 17, Ex. B.) Initial and secondary reviewers also use a reference guide,

26  containing examples of specific configurations that need further scrutiny, entitled "Environmental

27  License Plates Review Procedures" (Review Procedures). (*See* Milhoan Decl. ¶ 18, Ex. C.) In

28  addition to the Review Procedures, denial codes, and language of the regulation subparts, DMV

3

1    reviewers rely on online resources such as Google, Google Translate, Reddit, and Urban

2    Dictionary, and they sit in the same office space within close proximity of each other, and they

3    meet on a regular basis to discuss configurations.  (*See* Milhoan Decl. ¶¶ 19, 20; Stegeman Decl.

4    Exs. F (Milhoan Dep. 25:13-18, 33:8-22), G (Correa Dep. 18:1-15, 63:12-24), H (Holmes Dep.

5    40:10-41:22).)  And drivers that receive unfavorable decisions may appeal the initial

6    determination in a secondary review (Milhoan Decl. ¶ 20), which results in a favorable decision

7    from approximately 65 to 75 percent of the time.  (Stegeman Decl. Ex. F (Milhoan Dep. 35:6-

8    37:13).)

9         Plaintiffs, five Californians whose personalized license plates were rejected, appear to be

10   making a facial challenge to only a portion of the regulation's preamble, "offensive to good taste

11   and decency" and not the subparts that define the phrase or Vehicle Code section 5105.  (*See* Mot.

12   at 3, 5; Proposed Order at 2, ECF No. 41-1; Opp'n Mot. Dismiss at 19, ECF No. 28.)  They do

13   not make an as-applied challenge.  (*See* Compl.)

14                     **LEGAL STANDARD FOR SUMMARY JUDGMENT**

15        Summary judgment is appropriate when, viewing the facts in the light most favorable to the

16   nonmoving party, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986), "there is no genuine

17   issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of

18   law." Fed. R. Civ. P. 56(c).  A fact is "material" if it "might affect the outcome of the suit under

19   the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury

20   could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Thus, factual

21   disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a

22   motion for summary judgment.  *Id.*

23        To prevent the entry of summary judgment, Plaintiffs must present competent evidence

24   showing that there are genuine issues of material fact whether Defendant violated their rights.

25   *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).  In doing so, Plaintiffs cannot rest on

26   conclusory allegations, but must present "specific facts showing that there is a genuine issue for

27   trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  "The mere existence of a scintilla

28   of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp.*

4

1    *v. Square D Co*., 68 F.3d 1216, 1221 (9th Cir. 1995).  Additionally, if the non-moving party's

2    version of facts is "blatantly contradicted by the record, so that no reasonable jury could believe

3    it, a court should not adopt that version of the facts for purposes of ruling on a motion for

4    summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

5                                              **ARGUMENT**

6          Plaintiffs are challenging only the portion of the sentence in Cal. Code Regs. tit. 13, §

7    206.00(c)(7)(D) addressing "connotations offensive to good taste and decency" without

8    disturbing the remainder of the regulation.  But this preamble is defined with specificity in seven

9    subparts.  Therefore, it remains unclear whether Plaintiffs are challenging the subparts that define

10   this preamble or just the preamble, leaving the subparts alone.  Given this lack of clarity,

11   Defendant addresses the constitutionality of both the defining subparts and the preamble itself.

12         Many of the subparts of the statute concern speech that falls outside of the First

13   Amendment's protections and cannot be subject to Plaintiffs' challenge.  The remainder of the

14   subparts defining what is "offensive to good taste and decency" survive constitutional scrutiny.

15   Under *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017), and *Iancu v. Brunetti*, 139 S. Ct. 2294, 2314

16   (2019), these subparts are viewpoint neutral.  *See also Seattle Mideast Awareness Campaign v.*

17   *King Cnty.*, 781 F.3d 489, 500 (9th Cir. 2015) (the restriction prohibiting controversial bus

18   advertisements was viewpoint neutral) (*SeaMAC*).  And in the nonpublic speech forum the Court

19   has ascribed license plates to, these subparts are rationally related to important government

20   interests.  Therefore, they survive constitutional scrutiny.  And given the subparts define the

21   preamble, the preamble is constitutional as well.

22   **I.    MANY DEFINING SUBPARTS TO THE PREAMBLE ADDRESS SPEECH THAT FALLS
             OUTSIDE OF THE FIRST AMENDMENT AND ARE CONSTITUTIONAL; THEY SHOULD
23           NOT BE SUBJECT TO SCRUTINY.**

24         Many of the subparts that define Section 206.00(c)(7)(D) are clearly constitutional or are

25   not being challenged in this lawsuit.  There are well-defined and narrowly-limited classes of

26   speech, "the prevention and punishment of which have never been thought to raise any

27   Constitutional problem."  *Chaplinsky v. N.H.*, 315 U.S. 568, 571-572 (1942) (emphasizing that

28   certain types of speech are protected by the First Amendment).  Obscenity, vulgarity, profanity,

                                                    5

1  hate speech, and fighting words fall outside the scope of the First Amendment's protections.  *See*

2  *Brunetti*, 139 S. Ct. at 2303 (Roberts, C.J., concurring in part and dissenting in part) (forbidding

3  registration of "obscene, vulgar, or profane marks does not offend the First Amendment"); *Brown*

4  *v. Entertainment Merchants Ass'n*, 564 U.S. 786, 791 (2011) (listing instances where the First

5  Amendment does not protect speech); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383, 393 (1992)

6  ("fighting words," defamation, and obscenities fall outside the First Amendment).  Resorts to

7  epithets or personal abuse are not "in any proper sense communication of information or opinion

8  safeguarded by the Constitution."  *Cantwell v. Connecticut*, 310 U.S. 296, 309-310 (1940).

9  Therefore, subparts (1), (2), (3), (4), and (7) of Section 206.00(c)(7)(D) should survive the current

10  challenge regardless of how the Court views the phrase "good taste and decency" in the preamble

11  and in California Vehicle Code section 5105.

12      Moreover, Plaintiffs do not challenge the portion of the regulations that prohibits

13  configurations that are misleading (Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)), relate to law

14  enforcement (*id.* § 206.00(c)(7)(D)(5), those deleted in the regular series (*id.* §

15  206.00(c)(7)(D)(6)), or those that fall under Section 206.00(c)(7)(D)(7).  (Mot. at 5, 5 n. 2, 5 n. 3;

16  Opp'n Mot. Dismiss at 19-20, ECF No. 28.)  Therefore, they will not be addressed in this brief.

17      Since it is otherwise unclear whether Plaintiffs are challenging the entirety of the regulation,

18  just a portion of the preamble, or some of the subparts, Defendant addresses each of the sections

19  below except those Plaintiffs clearly state they are not challenging.

20  **II.   THE SUBPARTS ARE REASONABLE AND VIEWPOINT NEUTRAL WITHIN THE SCOPE OF A NONPUBLIC FORUM; THEREFORE, THE PREAMBLE AND CALIFORNIA VEHICLE**

21  **CODE SECTION 5105 ARE ALSO CONSTITUTIONAL.**

22      The Court determined that alphanumeric combinations approved via California's ELP

23  program are private speech, and they fall within a nonpublic forum speech analysis.  (Order at 9-

24  10, ECF No. 33.)  Courts uphold governmental restrictions on speech in a nonpublic forum as

25  long as the restrictions are reasonable and viewpoint neutral.  *See Perry Educ. Ass'n. v. Perry*

26  *Local Educators' Assn.*, 460 U.S. 37, 46 (1983) (holding that preferential access to the mail

27  system to one union over another is reasonable and does not constitute content

28  discrimination); *Cornelius v. NAACP Legal Def. & Educ Fund, Inc.*, 473 U.S. 788, 800 (1985)

6

1   (finding that a government charity drive is a nonpublic forum in which restrictions must be

2   reasonable and viewpoint neutral).  Here, the restrictions on ELP plate configurations are

3   viewpoint neutral and designed to promote legitimate government interests.  And while the Court

4   stated the preamble concerning "good taste and decency" is likely not viewpoint neutral (Order at

5   11, ECF No. 33), the preamble survives because the defining subparts are viewpoint neutral and

6   promote legitimate government interests.

### A.   The Subparts Are Viewpoint Neutral and Promote Legitimate State Interests.

9        Section 206.00(c)(7)(D) and each of its defining subparts have legitimate purposes meant to

10   accomplish critical State interests.  The State requires motorists to display license plates on their

11   vehicles (Cal. Veh. Code § 4851), which exposes the public to the messages that appear on vanity

12   plates.  While the Court has determined that the public may discern that the vehicle owner is the

13   speaker of a vanity plate configuration rather than the government (Order at 7, ECF No. 33), the

14   speech nonetheless takes place on government property after approval of an application.  The

15   State has legitimate concerns about exposing the public to and being associated with certain

16   speech.

17        "[O]n government property that has not been made a public forum, not all speech is equally

18   situated, and the State may draw distinctions which relate to the special purpose for which the

19   property is used." *Perry Educ. Ass'n*, 460 U.S. at 55.  California has a legitimate interest in

20   avoiding driver distraction and keeping the peace to maintain safe roads, consistent with the

21   purpose of identifying vehicles and showing they are validly registered to be on those roads.

22   (Milhoan Decl. ¶¶ 4, 7.)  Chief among them is that Section 206.00(c)(7)(D) promotes highway

23   safety because "potentially controversial messages . . . could lead to confrontation or distraction"

24   on highways. *Hart v. Thomas*, 422 F. Supp. 3d 1227, 1234 (E.D. Ky. 2019); *see also SeaMAC*,

25   781 F.3d at 500 (finding that a controversial bus advertisement would foreseeably result in harm

26   and disruption).  The public display of racially or ethnically degrading terms causes a risk to the

27   public's safety.  (Milhoan Decl. ¶¶ 10, 12.)  It is reasonable for the State to "protect

28

7

Cross-Mot. for Summ. J.; Memo. P & A; Opp'n Pltfs.' Mot. for Summ. J.  (4:20-cv-01707-JST)

1   knowledgeable observers of vanity plates from the perception of such [. . .] term[s]."  *Mitchell v.*

2   *Md. Motor Vehicles Admin*., 450 Md. 282, 311 (2016).

3       Safe roads are of upmost importance to DMV and California.  Preventing distracted driving

4   supports public safety.  (Milhoan Decl. ¶ 7.)  When other motorists read offensive license plates,

5   they can become distracted or offended, as evidenced by complaints to the State.  (*Id.* ¶ 16, Ex.

6   A.)  Configurations such as "NIGGER," "CHINK," "WETBACK," and other racial and ethnic

7   slurs are akin to "fighting words" and such hateful terms would foreseeably cause distraction,

8   anger, and potentially breaches of the peace.  (*Id.* ¶ 12.)  These foreseeable consequences do not

9   promote the purpose of license plates being used to identify a vehicle and create public safety

10   concerns that the State seeks to avoid on its highways and roads.

11       The State also has an interest in not communicating messages of approval or appearing to

12   associate itself with offensive speech.  (Milhoan Decl. ¶ 8); *Katz v. Department of Motor*

13   *Vehicles*, 32 Cal. App. 3d 679, 685 (1973) (holding that DMV's restriction under California

14   Vehicle Code section 5105 of the personalized license plate "EZ LAY" was constitutional under

15   the "offensive to good taste and decency" standard).  First, the State has an interest in protecting

16   the public, including young children, from offensive and indecent speech.  *See Perry v.*

17   *McDonald*, 280 F.3d 159, 169 (2d Cir. 2001) (holding that Vermont has a legitimate interest in

18   protecting the public and children from offensive and indecent speech, which is why the State's

19   DMV can revoke the license plate "SHTHPNS").  Similarly, DMV seeks not to restrict speech

20   that merely offends, but rather speech that can harm the public and drivers on the road.  (Milhoan

21   Decl. ¶ 5.)  Second, the State has an interest in not being associated with certain speech.

22   "Automobile license plates are governmental property intended primarily to serve a governmental

23   purpose, and inevitably they will be associated with the state that issues them."  *Perry*, 280 F.3d

24   at 169.  While the owner of a vehicle chooses the characters that appear on a vanity plate, DMV

25   must approve of a vanity plate before issuing it.  *See id.*  License plates are "closely identified in

26   the public mind with the [state]," especially since license plates bear the state's name wherein it

27   was issued.  *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 212 (2015).

28

8

1    California receives many complaints concerning license plates that cause people to be upset

2    or angry.  License plates that have been recalled include, "THEJAP1," "BEEOTCH,"

3    "RAYPVAN," "NAZCR88," amongst many others.  (Milhoan Decl. Ex. A.)  Allowing the

4    configuration "NAZI," "KKK," or similar configurations promoting hate speech will result in the

5    public contacting DMV to retract the plates, diminishing DMV's and the State's reputation for

6    having allowed the configurations.  (Milhoan Decl. ¶ 8.)  Configurations are put on plates with

7    the State's permission, and they are manufactured by the State, owned by the State, with

8    "California" stamped prominently on the plate with re-endorsement of the configuration year

9    after year through the registration process, thus associating the message of the configuration with

10   the State.  *See Mitchell*, 450 Md. at 312 (stating Maryland has a legitimate interest in not

11   communicating a message of approval for the public display of offensive terms).  For these

12   reasons, California has a legitimate interest in not associating itself with the types of speech listed

13   in the regulation's subparts.  (Milhoan Decl. ¶ 8.)

14       Moreover, the State has a substantial interest "in protecting from degradation a mechanical

15   identification symbol, such as the license plate."  *Katz*, 32 Cal. App. 3d at 685; *see also Mitchell*,

16   450 Md. at 311 (finding that it was reasonable for Maryland to prohibit "content with which it

17   does not want to associate.").  Thus, the State has the right to protect the "legitimacy, credibility

18   and reliability" of its license plates because of the impact they can have on public attitude and

19   behavior.  *See Katz*, 32 Cal. App. 3d at 685; (Milhoan Decl. ¶ 7, 16.)  While this Court has held

20   the fact that the government holds regulatory control over speech may not transform it into

21   government speech (Order at 8, ECF No. 33), at the very least there is a connotation that a

22   message appearing on a license plate is identified with the State.  *Walker*, 576 U.S. at 212.

23       The subparts are also viewpoint neutral: they are reasonable in light of the intended purpose

24   of vanity plates, sufficiently definite and objective, and combat a real threat to public safety.

25   *SeaMAC*, 781 F.3d at 500-502 (Seattle's restriction of controversial bus advertisements was

26   found to be viewpoint neutral for the same listed reasons).  Viewpoint discrimination occurs when

27   the government "targets . . . particular views taken by speakers on a subject," *Rosenberger v.*

28   *Rector and Visitors of the Univ. of Virginia*, 515 U.S. 819, 829 (1995), for example, "to

9

discourage one viewpoint and advance another." *Perry Educ. Ass'n*, 460 U.S. at 49.  Content-based restrictions limit subject matter, not ideology or perspective.  *SeaMAC*, 781 F.3d at 499. The State's interest is unrelated to the suppression of free expression, it is not targeting, singling out, or advancing any one viewpoint when accepting or rejecting vanity plate configuration requests.  *See Kahn v. Department of Motor Vehicles*, 16 Cal. App. 4th 159, 169 (1993) (finding that the state restriction on a license plate with stenographic shorthand for the f-word was viewpoint neutral).  DMV looks to the statute's subparts when deciding which vanity plate configurations to approve or deny, reflecting a content-neutral analysis.  Even in a limited public forum framework, the State may impose content-based restrictions on speech as a "means of insuring peace" and "avoiding controversy that would disrupt" the business of the forum.  *SeaMAC*, 781 F.3d at 502; *Cornelius*, 473 U.S. at 809-10 (internal quotations omitted).  That is all California is doing with this statute and its implementing regulation.  Excluding speech on a particular subject—whatever the viewpoint expressed—is content discrimination, but it is not viewpoint discrimination. *SeaMAC*, 781 F.3d at 502.  California Vehicle Code section 5105 and Section 206.00(c)(7)(D) merely seek to restrict content that could put the public in danger or reflects the State's endorsement of offensive or provocative terms.

### 1. Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(1): "The configuration has a sexual connotation or is a term of lust or depravity."

The State has a legitimate interest in preventing the display of sexual content on its vanity plates.  "[A]ny chilled references to excretory and sexual material "surely lie at the periphery of First Amendment concern."  *FCC v. Pacifica Foundation*, 438 U.S. 726, 743 (1978) (plurality opinion of Stevens, J.); *see also FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 529 (2009) (upholding the FCC's policy that forbids broadcasting of fleeting expletives regardless of their literal and nonliteral uses).  California's interest in preventing distractions on the road and ensuring minors are not exposed to explicit content warrants restrictions on sexual configurations.  (Milhoan Decl. ¶ 9.) Certain terms are commonly understood by a substantial segment of the population to be sexual or depraved.  *Kahn*, 16 Cal. App. 4th at 169 (holding that stenographic shorthand for the f-word was offensive under the same "connotations offensive to good taste and decency" standard at issue here).

10

1    For example, the word "FUCK" can be commonly understood as an "offensive term for sexual

2    intercourse," having the power to insult and offend.  *See id.*; *Hocevar v. Purdue Frederick Co.*, 223

3    F.3d 721, 732 (8th Cir. 2000) ("fuck" is a sexually explicit and offensive term).  Similarly, "EZ LAY"

4    has been found to have such a clear sexual connotation that DMV could restrict its placement on

5    personalized license plates.  *Katz*, 32 Cal. App. 3d at 687 (upholding California Vehicle Code section

6    5105 against a free-speech challenge).  "For better or worse, our society sets apart particular words

7    as out-of-bounds; their utterance or display can be understood reasonably as indecent or

8    offensive, especially in the presence of minors."  *Mitchell*, 450 Md. at 311.  This prohibition also

9    reflects the State Legislature's judgment that the State and DMV should not affirmatively promote

10   the use of such terms by approving applications and manufacturing license plates on State

11   property that contain such configurations.  (Milhoan Decl. ¶ 9.)

12         Furthermore, to the extent this subpart prohibits obscenity, it is constitutional.  *See Brunetti*,

13   139 S. Ct. at 2303 (emphasizing that interpretations of statutory language that regulate obscenity,

14   vulgarity, and profanity are constitutional); *see also Bethel School Dist. No. 403 v. Fraser*, 478

15   U.S. 675, 685 (1986) (holding that lewd and vulgar speech have no First Amendment protection).

16   The State has the same interest in preventing the public display of obscene messages on its

17   license plates and on its roads as noted above.

18         This subpart is also viewpoint neutral.  It is consistent with the intended purpose of license

19   plates, is definite and objective, and combats a real threat to public safety.  *SeaMAC*, 781 F.3d at

20   500.  First, this subpart's restrictions are consistent with the purpose of vehicle registration and

21   identification of motorists on California roads, as well as public safety on those roads.  (Milhoan

22   Decl. ¶¶ 4, 7.)  Any speech that can foreseeably result in harm or interference with these purposes

23   is reasonable.  *SeaMAC*, 781 F.3d at 500 (finding that any speech that will foreseeably disrupt or

24   interfere with the public transit system is inherently incompatible with the buses' intended

25   purpose).

26         Second, this subpart targets only sexual and depraved content, not a motorist's viewpoint

27   about sexual content, making it definite and objective.  California denies vanity plate applications

28   under this subpart based on the content that the State is not willing to be associated with, content

11

Cross-Mot. for Summ. J.; Memo. P & A; Opp'n Pltfs.' Mot. for Summ. J.  (4:20-cv-01707-JST)

1  and terms that "play no real part in the expression of ideas," *Brunetti*, 139 S. Ct. at 2303 (Alito,

2  J., concurring), and content that the State does not want to inflict upon the public. *Mitchell*, 450

3  Md. at 312.  The government has long had regulations that reduce community standards of

4  decency into objective criteria set out in advance. *SeaMAC*, 781 F.3d at 500.  Such standards are

5  evidenced by DMV's Review Procedures manual and denial codes that instruct application

6  reviewers to flag or deny certain proposed configurations. (Milhoan Decl. Exh. B.)  Third,

7  regulation of sexual and depraved speech is related to a real threat to public safety. (Milhoan

8  Decl. ¶ 9.)  Preventing distraction, provocation, and breach of the peace due to offensive terms on

9  California property is a legitimate State interest. (Milhoan Decl. ¶ 7.)  The restriction of

10  "offensively lewd and indecent speech" is viewpoint neutral. *Bethel School Dist. No. 403*, 478

11  U.S. at 685.  For these reasons, this subpart is reasonable and viewpoint neutral.

12  

13  
### 2.    Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(2): "The configuration is a vulgar term; a term of contempt, prejudice, or hostility; an insulting or degrading term; a racially degrading term; or an ethnically degrading term."

14  

15  California has an interest in keeping public peace, promoting public safety on its roads, and

16  not appearing to endorse vulgar or degrading terms. (Milhoan Decl. ¶ 10.); *SeaMAC*, 781 F.3d at

17  501-502 (rejecting a bus advertisement about the Israeli-Palestinian conflict over concerns for

18  public safety and disruption).  Vulgar and degrading terms have no place on publicly displayed,

19  State-approved, State-manufactured, State-owned license plates.  Cal. Code Regs. tit. 13, §

20  206.00(c)(7)(D)(2).  Plaintiffs have cited to *Tam*, 137 S. Ct. at 1744, to support the proposition

21  that the Patent and Trademark Office's role in trademark registration is similar to DMV's role in

22  approving or denying personalized license plates. (Mot. at 5.)  There, the Court found that free

23  speech rights were infringed by prohibiting the registration of "The Slants" trademark under a

24  statute that restricted trademarks that disparage any person, living or dead. *Tam*, 137 S. Ct. at

25  1765.  However, unlike "disparagement" in *Tam*, DMV does not identify messages it finds

26  merely offensive under a "positive or benign" versus "derogatory" paradigm. *Id.* at 1750.  DMV

27  simply follows the specific guidelines the subparts provide, following constitutional restrictions

28  on speech.

12

Cross-Mot. for Summ. J.; Memo. P & A; Opp'n Pltfs.' Mot. for Summ. J.  (4:20-cv-01707-JST)

1      Allowing such configurations would be a distraction that can easily cause anger, contempt,

2  and breach of the peace.  (Milhoan Decl. ¶¶ 7, 10.)  Much like fighting words, by the very

3  utterance of certain degrading terms, injury can be inflicted and lead to an immediate breach of

4  the peace.  *Chaplinsky*, 315 U.S. at 572 (1942) (recognizing certain terms are "fighting" words

5  which tend to cause injury and incite breach of the peace); *see also, e.g.*, *Hunt v. City of Los*

6  *Angeles*, No. 12-cv-7261, 2013 WL 12164626, at *2 (C.D. Cal. Aug. 19, 2013) (dismissing First

7  Amendment challenge to citation for breach of peace for wearing t-shirt with the words "Fuck

8  White Niggar [sic] too" to a public meeting); *Lee v. Superior Court*, 9 Cal. App. 4th 510, 518

9  (1992) (finding that the term "nigger" was so offensive that it can be considered a "fighting

10  word" that is not protected by the U.S. Constitution).  The restriction of vulgar and degrading

11  terms promotes public safety, including the reduction of distractions on the road, provocation of

12  others, and general incitement of anger and violence.  (Milhoan Decl. ¶ 10.)  It also reflects the

13  determination that the State should not endorse such configurations on government property as

14  discussed above.  (*Id*.)

15      Additionally, the State interests that arise when permitting racially and ethnically degrading

16  terms on vanity plates are much different than the trademarks at issue in *Brunetti*, 139 S. Ct.

17  2294, and *Tam*, 137 S. Ct. 1744.  A trademark is used to confer "legal rights and benefits" on

18  trademark owners who officially register their marks.  *Tam*, 137 S. Ct. at 1753.  Trademark

19  registration benefits a private party, though a trademark need not be registered to be used in

20  commerce.  *See id.*  In contrast, a customized vehicle registration number is not assigned for the

21  private use of the party that proposed it, but rather for the State's purpose of identifying a validly

22  registered vehicle.  (Milhoan Decl. ¶ 4.)  Further, trademark registration is not part of a regulatory

23  scheme designed to identify and track the validly registered status of all marks used in commerce.

24      Trademarks are "words, names, symbols, and the like" that "identify a good or service,"

25  and they "often consist[] of catchy phrases that convey a message."  *Tam*, 137 S. Ct. at 1751-52

26  (internal quotation marks and citation omitted).  While "The Slants" trademark at issue in *Tam*

27  may serve to "reclaim" a degrading term, owners of a trademark can opt to explain this or not

28  prominently display the trademark, whereas a license plate is solely on display on public roads

13

1    and highways.  California requires assigned vehicle registration numbers to be publicly displayed,

2    which necessarily signifies government approval of the registration number.  Even the process for

3    obtaining a personalized ELP plate makes clear that DMV's decision to assign the requested

4    number is a form of government approval of that number.  As Plaintiffs point out, an applicant for

5    a customized registration number must supply the meaning of the requested configuration in order

6    to assist DMV with deciding whether to approve the configuration under the standards in the

7    challenged regulation.  (Mot. at 13 n. 5); Cal. Code Regs. tit. 13, § 206.00(c).

8         Moreover, *Tam* discussed *Walker*'s analysis of specialty license plates, when considering

9    whether trademarks constitute government speech.  137 S. Ct. at 1760.  In fact, *Tam*

10   acknowledged that registered trademarks are substantively different from specialty license plates

11   because license plates have long been used by the states to convey state messages, the state

12   manufactures and owns license plates as a form of identification, and the state maintains direct

13   control over the messages on its specialty plates.  *See id.*  None of these relevant factors are

14   present in *Tam*, further demonstrating that vanity plates and trademarks are inherently different.

15        The above reasoning also applies to *Brunetti*, where the Court invalidated the Lanham Act's

16   bar on the registration of "immoral[ ] or scandalous" trademarks.  139 S. Ct. at 2297.  Unlike the

17   "immoral or scandalous" terms discussed in *Brunetti*, the regulation in question here has clear

18   constitutional subparts that specify what is offensive to "good taste and decency."  139 S. Ct.

19   2294, 2296.  Further, the Court in *Brunetti* makes clear that the trademark statute's flaw is that it

20   does "not draw the line at lewd, sexually explicit, or profane marks" or "refer only to marks

21   whose 'mode of expression,' independent of viewpoint, is particularly offensive."  139 S. Ct. at

22   2296.  This reasoning is what distinguishes the present case from *Brunetti*.  Here, the statute has

23   constitutional subparts that define the preamble, providing detailed guidance as to what is

24   offensive to "good taste and decency."  *See* Cal. Code Regs. Tit. 13, § 206(c)(7)(D)(1)-(7).

25        Finally, the subpart is also viewpoint neutral under the second part of the nonpublic forum

26   analysis.  The State is not merely prohibiting some contentious terms because it dislikes them.

27   Rather, the State seeks to avoid controversy on its roads, which is a valid ground for restricting

28   speech in a nonpublic forum that is inherently not dedicated to "general debate or the free

14

1    exchange of ideas." *Cornelius*, 473 U.S. at 811; *see Hart*, 422 F. Supp. 3d at 1234 (a legitimate

2    government interest is seeking avoidance of controversy because a nonpublic forum is not

3    dedicated to the exchange of ideas). The prohibition of degrading, racist, or vulgar terms is a

4    viewpoint neutral limitation because the exclusion is consistent with the intended purpose of

5    prohibiting terms that risk public safety, the standard is sufficiently definite and objective, and the

6    threat to public safety is real. *See SeaMAC*, 781 F.3d at 500 (holding the government's restriction

7    of objectionable material that can cause harm on public transit is viewpoint neutral under the

8    aforementioned factors).

9        Even the Court in *Brunetti* emphasized that "[a] restriction on trademarks featuring

10   obscenity, vulgarity, or profanity is similarly viewpoint neutral, though it is naturally content-

11   based." *Brunetti*, 139 S. Ct. at 2314 (J. Sotomayor concurring); *see also R.A.V.*, 505 U. S. at

12   383 (kinds of speech like "obscenity, defamation, etc." may "be regulated because of their

13   constitutionally proscribable content" (emphasis deleted)); *Pacifica Foundation*, 438 U. S., at

14   745-746, and n. 22 (treating regulation of profane monologue as viewpoint neutral). Ultimately,

15   "[t]o treat a restriction on vulgarity, profanity, or obscenity as viewpoint discrimination would

16   upend decades of precedent." *Brunetti*, 139 S. Ct. at 2314.

17
18        **3.    Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(3): "The configuration is a swear word or term considered profane, obscene, or repulsive."**

19        As noted in Argument Part I, *supra*, profanities and obscenities fall outside the protections

20   of the First Amendment, so the primary focus of this section is on configurations that are

21   "repulsive," though the same reasoning applies to configurations that are profane or obscene.

22        The prohibition of repulsive terms promotes public safety, reduces distractions on the road,

23   and decreases provocation of drivers as well as general incitement of anger and violence.

24   (Milhoan Decl. ¶ 11.) "Repulsive" terms "arouse aversion or disgust." *Merriam-Webster Online*

25   *Dictionary*, https://www.merriam-webster.com/dictionary/repulsive (last visited on October 19,

26   2020). Just as states have a legitimate interest in prohibiting the "dissemination or exhibition of

27   obscene material when the mode of dissemination carries with it a significant danger of offending

28   the sensibilities of unwilling recipients or of exposure to juveniles," *Miller v. California*, 413

15

Cross-Mot. for Summ. J.; Memo. P & A; Opp'n Pltfs.' Mot. for Summ. J.  (4:20-cv-01707-JST)

1   U.S. 15, 18-19 (1973), the same justification applies to the public display of repulsive

2   configurations that can easily offend motorists.  The configuration "RAYPVAN" falls within this

3   category.  (Milhoan Decl. Ex. A at DMV 3.)

4        Furthermore, this restriction reflects the State's determination that it should not endorse

5   such configurations on government property.  (Milhoan Decl. ¶ 11.); *see Katz*, 32 Cal. App. 3d at

6   685 (finding that the government has a legitimate interest in protecting the legitimacy and

7   reliability of its symbols that can impact the public); *Kahn*, 16 Cal. App. 4th at 167 (stating that

8   DMV is reasonably concerned with avoiding abuse of its vehicle identification system and

9   preserving "legitimacy, credibility, and reliability" of its emblem).  The State has an interest in

10  not being associated with repulsive configurations.

11       This subpart is viewpoint neutral because it seeks to restrict outright profanities,

12  obscenities, and repulsive terms, not specific viewpoints that are for or against profanity,

13  obscenity, or repulsive terminology.  Similar to *Mitchell*, where real or presumed intent was not

14  factored into rescinding Mitchell's plates, here, California is simply restricting content with

15  which it does not want to be associated with or inflict on the "discerning public," which relates to

16  the intended purpose of vanity plates.  *Mitchell*, 450 Md. at 148.  Moreover, the subpart is both

17  definite and objective and prevents a real harm to public safety.  (Milhoan Decl. ¶ 11.)

18  Ultimately, the license plates "DUK N A" or "BO11LUX" do not express viewpoints, nor do they

19  play any "real part in the expression of ideas," and they can fall under the repulsive category, if

20  not multiple categories.  *See Brunetti*, 139 St. Ct. at 2303 (Alito, J., concurring).  Therefore, the

21  government is objectively restricting profane, obscene, and repulsive terms.

22          **4.**     **Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(4): "The configuration has a**

23                **negative connotation to a specific group."**

24       Similar to subpart two, California has a legitimate interest in prohibiting terms with

25  negative connotations to specific groups.  Hate speech, derogatory terms, and epithets can

26  jeopardize public safety.  *See Lee*, 9 Cal. App. 4th at 517 (holding that a court should not make

27  orders that may contribute to racial disharmony or sanction use of a "fighting word" that gives

28  rise to violence).  Offensive plates can cause distracted driving, provocation, road rage, and the

16

Cross-Mot. for Summ. J.; Memo. P & A; Opp'n Pltfs.' Mot. for Summ. J.  (4:20-cv-01707-JST)

1    incitement of anger on California roads.  (Milhoan Decl. ¶ 12.)  As mentioned above, the

2    configurations "NAZI" and "KKK" are surely to cause Californians to be angry, leading to

3    complaints, provocation, and potential violence.  (*Id.* ¶¶ 8, 12.)  Like in *SeaMAC*, where an ad

4    targeting Israel led to an unprecedented, hostile response that threatened public safety, hate

5    speech that falls under this subpart is likely to result in a similar uproar.  781 F.3d at 494.  Some

6    words are simply likely to cause a fight.  *Lee*, 9 Cal. App. 4th at 518.  Racial epithets and terms

7    with negative connotations towards a group are words that fall under the "fighting words"

8    category.  *Id.*  The type of speech that falls under this subpart is objectionable under

9    contemporary standards, *id.* at 500, and it is reasonably foreseeable that disruption and harm can

10   occur if such configurations are permitted.  *Id.*; (*see also* Milhoan Decl. ¶ 12.)

11        California also maintains an interest in not promoting or appearing to promote hatred.  (*See*

12   Milhoan Decl. ¶ 12.)  Like in *Mitchell*, where the court found a legitimate interest in not

13   associating "MIERDA" ("shit" in Spanish) with the government, the State here has a legitimate

14   interest in not communicating a message that it approves the public display of offensive or hateful

15   terms on State license plates.  *Mitchell*, 450 Md. at 312; *Perry*, 280 F.3d at 169.  The State does

16   not want motorists to see such vanity plates and think, "DMV let you get away with that?"

17   *Mitchell*, 450 Md. at 295.  Through the application of the challenged regulation, California is

18   "choos[ing] how to present itself and its constituency."  *Walker*, 576 U.S. at 213.

19        Furthermore, this subpart is viewpoint neutral.  The reasoning behind the restriction is

20   definite, objective, and prevents an actual threat to public safety.  *SeaMAC*, 781 F.3d at 500-502.

21   Like the subparts above, the restrictions in this subpart further the purpose of vanity plates and

22   excludes all terms that may foreseeably impact public safety on roads.  The government does not

23   single out "a subset of messages for disfavor based on the views expressed."  *Tam*, 137 S. Ct. at

24   1766.  Rather, the government looks to which words or phrases are proposed and if they are likely

25   to interfere with a legitimate state interest.  This subpart promotes legitimate state interests and is

26   viewpoint neutral.

27

28

**5.    Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(7): "The configuration is a foreign or slang word or term, or is a phonetic spelling or mirror image of a word or term falling into the categories described in subdivisions 1. through 6. above."**

Though Plaintiffs do not appear to be challenging this subpart (Mot. at 5 n. 3), the State has legitimate interests in restricting obscene, derogatory, vulgar, and profane speech on its property. These interests are equally applicable to configurations conveying the same messages in a foreign language.  (Milhoan Decl. ¶ 15.)  The same concerns outlined above are applicable when a fellow motorist understands the primary meaning of a term in a foreign language.  A word is not less offensive because only some of the population know the language in which it is expressed.  *Kahn*, 16 Cal. App. 4th at 170.

**B.    The Preamble As Defined by Its Constitutional Subparts Is Constitutional.**

"Good taste and decency" in Section 206.00(c)(7)(D) is defined by the subparts that follow it.  The defining subparts, as noted above, are constitutional, thus it follows that the phrase as defined is constitutional.  Unlike the present case, *Tam*, 137 S. Ct. 1747, and *Brunetti*, 139 S. Ct. 2294, involved terms and phrases without further definition.  Similarly, while *Matwyuk v. Johnson*, 22 F. Supp. 3d 812 (W.D. Mich. 2014), in an order on a motion to dismiss, considered a statute that also prohibited license plates "offensive to good taste and decency," that statute did not further define the phrase.  *Id.* at 815.  Thus, the court found a plausible claim under the First Amendment.  *Id.* at 824.[2]  That is not the case here.  And the State is not regulating what people can put on their cars, it is merely regulating the content that is placed on government property, which it has legitimate reasons for doing.  The regulation is constitutional.

---

[2] Statutes restricting personalized license plates bearing combinations "offensive to good taste and decency," including the Vehicle Code section here, have been found constitutional. *Hunt v. PennDOT*, 47 Pa. D. & C.3d 132, 137 (Pa. Com. Pl. 1987) (holding the DMV could reasonably find the plate "55-SUKZ" offensive to good taste and decency without violating the motorist's First Amendment rights); *Katz*, 32 Cal. App. 3d at 684 (holding that the "good taste and decency" standard is valid and imposes "at best a minimal and incidental restriction" on Katz' freedom of expression); *Kahn*, 16 Cal. App. 4th at 168 (finding the plate in question to have minimal and incidental restrictions on free speech under the "good taste and decency" standard).

18

**CONCLUSION**

California Vehicle Code section 5105 and Section 206.00(c)(7)(D) allow DMV to deny applications containing configurations that "may carry connotations offensive to good taste and decency," as defined by Section 206.00(c)(7)(D) subparts.  Offensive plates can cause distraction while driving on California roads, provocation and road rage, incitement of anger and violence, and anger at the State and DMV for approving an offensive license plate, all of which jeopardize safe driving and could lead to unnecessary confrontation that does not promote the ultimate purpose of license plates, which is to identify a vehicle.  Moreover, the State is associated with messages it approves for manufacture to be displayed on its property, and it has an interest in avoiding association with the categories of messages prohibited by Section 206.00(c)(7)(D).  The Court should grant Defendant's motion and enter judgment in his favor.

## OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

From their motion, Plaintiffs only appear to be seeking invalidation of the phrase "good taste and decency" from Title 13 of the California Code of Regulations section 206.00(c)(7)(D)—not from the Vehicle Code that uses the same phrase and that the regulation implements (Cal. Veh. Code § 5105), or the subparts that define the phrase, which are only referenced in passing. But if Plaintiffs only seek to eliminate a handful of words from a preamble, they do not seek relief that addresses their complaint that they did not receive the configurations they requested in violation of free speech rights.  While Plaintiffs only seek facial invalidation of the phrase "good taste and decency" within the regulation, not touching the Vehicle Code section that grants DMV authority to prohibit categories of configurations based on that same phraseology or the subparts that define the preamble, elimination of this phrase will not grant Plaintiffs any actual relief as a practical matter.  The lack of redressability calls their standing into question.  They should not be clarifying their position in reply to this opposition at the summary-judgment stage of litigation, but if the injunction they are seeking is ineffective, the motion should be denied.

Furthermore, unlike the two cases Plaintiffs rely on most, *Tam*, 137 S. Ct. 1744, and *Brunetti*, 139 S. Ct. 2294, which focused on singular, undefined terms, the phrase "good taste and decency" is defined by a number of subparts that offer objective, workable standards that provide

19

1    a sensible basis for distinguishing between permitted and prohibited speech.  Plaintiffs have not

2    challenged the subparts defining the preamble as viewpoint discriminatory—they are not.  And

3    California Vehicle Code section 5105, the implementing regulation, and the subparts defining the

4    regulation are rationally related to important government interests that justify the statutory

5    scheme.  Namely, DMV prohibits configurations on license plates that interfere with safe driving,

6    cause distraction, provocation, degrade the license plates as a symbol of the State, and denigrate

7    the State's reputation by associating it with messages it does not condone.  Plaintiffs have not met

8    their burden of establishing the phrase "good taste and decency," as defined, is not viewpoint

9    neutral or not rationally based.

10
11   **I.    PLAINTIFFS MUST SPECIFICALLY STATE THE RELIEF THEY SEEK AND THE RELIEF
         MUST REDRESS THEIR PURPORTED HARMS; BUT THEY HAVE NOT DONE SO.**

12       Plaintiffs explicitly carve out the phrase "good taste and decency" for scrutiny from Section

13   206.00(c)(7) as if it stood alone like the terms at issue in *Tam*, *Brunetti*, and *Matwyuk*.  (Mot. at 5;

14   Opp'n Mot. Dismiss at 19, ECF No. 28.)  They make clear that they are not challenging

15   "configurations that the Department considers 'misleading'" (Mot. at 5 n. 2) or "[t]hree other

16   enumerated factors pertain[ing] to the Department's authority to ban misleading speech."  (*Id.* at

17   5 n. 3 (citing to Cal. Code Regs. tit. 13, § 206.00(c)(7)(D)(5)-(7)).)  But are they seeking the

18   invalidation of the "good taste and decency" phrase where it appears in California Vehicle Code

19   section 5105, the law Section 206.00(c)(7)(D) implements?  Or subparts 1-4 of Section

20   206.00(c)(7)(D), mentioned without analysis in four lines of the Motion's Argument section

21   (Mot. at 19:16-19)?  Plaintiffs' half-page proposed order submitted with their motion only has the

22   Court enjoining DMV "from enforcing the 'offensive to good taste and decency' provision in Cal.

23   Code Regs. tit. 13 § 206.00(c)(7)(D)" without enjoining the Vehicle Code.  (Proposed Order at

24   2:8-9, ECF No. 41-1.)  If this is the sum-total of Plaintiffs' case, then such a piecemeal tactic has

25   little or no meaning or effect, particularly (1) in light of Plaintiffs' awareness that DMV

26   contemplates changes to the regulation as a result of earlier litigation their counsel were involved

27

28

20

Cross-Mot. for Summ. J.; Memo. P & A; Opp'n Pltfs.' Mot. for Summ. J.  (4:20-cv-01707-JST)

1    with,[3] and (2) the great expense put forth in litigating this case, which California taxpayers may

2    bear should Plaintiffs prove successful.

3        Redressability is a basic consideration for Article III standing.  *Lujan v. Defenders of*

4    *Wildlife*, 504 U.S. 555, 561 (1992) (standing requires a plaintiff to demonstrate: (1) an injury in

5    fact; (2) a causal connection; and (3) redressability).  It is incumbent on Plaintiffs to state exactly

6    what they are seeking, because the elimination of the phrase "offensive to good taste and

7    decency" in the regulation alone does not appear to afford any relief.  For instance, "DUK N A"

8    will still mimic a swear phrase and be profane under Section 206.00(c)(7)(D)(3), which means

9    Campanile will not be entitled to her configuration of choice.  Under her legal theory, a favorable

10   decision by this Court would do nothing for her.  The uncertainty of Plaintiffs' claims and scope

11   of relief sought warrant denial of the summary judgment motion.

12   **II.   THE NONPUBLIC FORUM ANALYSIS APPLIES AND THE REGULATION, DEFINED BY
13        ITS SUBPARTS, IS VIEWPOINT NEUTRAL AND RATIONALLY BASED.[4]**

14       On one hand Plaintiffs state "[f]orum analysis is unnecessary" (Mot. at 17:6), but in the

15   next sentence they recognize that "[a] court uses forum analysis where a law restricts private

16   speech on government property."  (Mot. at 17:6-7 (citing *Cornelius*, 473 U.S. at 800.)  California

17   license plates are government property, which the Court determined was a nonpublic forum.

18   (Order at 9-10, ECF No. 33.)  And as recognized by the court, "[m]ost courts that have considered the

19   question have decided that license plates are a nonpublic forum."  (Order at 10:9-10, ECF No 33

20   (citing *Hart*, 422 F. Supp. 3d at 1233; *Mitchell*, 450 Md. at 310; and *Byrne v. Rutledge*, 623 F.3d 46,

21   54 (2d Cir. 2010)).)  Even *Tam* and *Brunetti* considered the viewpoint neutrality factor of a forum

22   analysis, as it is a factor in the analysis of all forums for private speech under the First Amendment.

23   In finding certain terms in the Lanham Act were not viewpoint neutral, the Court did not need to

24

25       [3] Defendant advised in his Answer that changes to the regulation were "contemplated and
     in internal deliberations as a result of [the *Kotler*] litigation" brought by the same counsel
26   (Answer ¶ 3, ECF No. 36), which Plaintiffs' counsel asked deponents about.  *See* Stegeman Decl.
     Exs. F (Milhoan Dep. 97:11-98:9) and G (Correa Dep. 78:3-17).
27       [4] The Court determined that the configurations on license plates were not government
     speech.  (Order at 9, ECF No. 33.)  Defendant disagrees with the decision, reserves the right to
28   appeal the determination, but assumes the validity of the holding for purposes of this motion and
     opposition.

21

1    delve further.  It is not that forum analysis is unnecessary, rather, it is that further analysis is not

2    necessary.

3          While this Court stated "California's prohibition on personalized license plate numbers 'that

4    may carry connotations offensive to good taste and decency' constitutes viewpoint discrimination,"

5    (Order at 11:1-3, ECF No 33), it made this determination in the context of whether Plaintiffs made a

6    plausible claim.  The Court did not analyze the regulation as defined by its subparts.  And Plaintiffs

7    do not argue the subparts discriminate on the basis of viewpoint.  (*See generally* Mot.)  In this

8    regard, this regulation is not the same as the statute in *Matwyuk*, 22 F. Supp. 3d at 815, which

9    prohibited license plates that were "offensive to good taste and decency," without further

10   explanation.  The law at issue there had no defining subparts, a contrast to the present case.  And

11   the phrase is not "unmoored" as Plaintiffs argue, again ignoring the defining subparts as if they

12   did not exist.  (Mot. at 18.)

13         To this end, *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876 (2018), is instructive.

14   The statute at issue there prohibited individuals from wearing any "political badge, political

15   button, or other political insignia" to a polling place.  *Id.* at 1888.  Key to the Court's decision

16   was the fact that the statute did not define the term "political," which it considered broad and

17   "unmoored."  *Id.*  By comparison, the phrase "good taste and decency" here is defined, for

18   example, to exclude swear words or terms "considered profane, obscene, or repulsive."  Cal.

19   Code Regs. tit. 13, § 206.00(c)(7)(D)(3).  Other of the cases cited by Plaintiffs suffer from the

20   same lack of definition, which is not at issue here.  (*See* Mot. at 19 (citing *Lewis v. Wilson*, 253

21   F.3d 1077, 1080 (8th Cir. 2001); *United Food & Commercial Workers Union, Local 1099 v.*

22   *Southwest Ohio Regional Transit Authority*, 163 F.3d 341 (6th Cir. 1998); *Montenegro v. New*

23   *Hampshire Div. of Motor Vehicles*, 166 N.H. 215, 224 (2014).)

24         Noticeably absent from Plaintiffs' motion were citations to *SeaMAC*, 781 F.3d at 500

25   (upholding ban on "[a]ny speech that will foreseeably result in harm to, disruption of, or

26   interference with the transportation system" since that is "compatible with the intended purpose

27   of the property," the buses (quotation omitted)); *Children of the Rosary v. City of Phoenix*, 154

28   F.3d 972, 979 (9th Cir. 1998) (noting that "[t]he city's interests in protecting revenue and

                                              22

1   maintaining neutrality on political and religious issues are especially strong"); or *Lehman v. City*

2   *of Shaker Heights*, 418 U.S. 298, 303–04 (1974) (upholding ban on political advertising inside

3   buses after noting that the advertising space "is a part of the commercial venture" in providing

4   transportation services and that "a city transit system has discretion to develop and make

5   reasonable choices concerning the type of advertising that may be displayed in its vehicles").  The

6   subparts that define "good taste and decency" are sufficient to moor the phrase consistent with

7   *Minnesota Voters Alliance*—they provide "objective, workable" standards that provide "some

8   sensible basis for distinguishing" between permitted and prohibited speech.  138 S. Ct. at 1888,

9   1891.  And the denial reason codes and Review Procedures further assist in defining what content

10  will not be permitted.  (Milhoan Decl. Exs. B and C.)  Just like in the above cases, speech that

11  foreseeably results in harm to, disruption of, or interference with DMV's goals of promoting safe

12  driving and identification of validly registered vehicles may be prohibited.

13      And, without reiterating the arguments set forth in Defendant's affirmative cross-motion for

14  summary judgment, the fact the defining subparts are viewpoint neutral—Plaintiffs do not argue

15  they are not viewpoint neutral—means the preamble is also viewpoint neutral.  Furthermore, the

16  subparts have rational bases, as noted in the cross-motion.

17      Plaintiffs' brief attack on the reasonable basis for the preamble ignores the history of cases

18  upholding the provision and similar provisions on the merits of those interests.  *See Katz*, 32 Cal.

19  App. 3d at 685 (considering California Vehicle Code section 5105, the court found that the

20  government has a legitimate interest in protecting the legitimacy and reliability of its symbols that

21  can impact the public); *Kahn*, 16 Cal. App. 4th at 167 (considering California Vehicle Code

22  section 5105, the court stated that DMV is reasonably concerned with avoiding abuse of its

23  vehicle identification system and preserving "legitimacy, credibility, and reliability" of its

24  emblem); *Hunt v. PennDOT*, 47 Pa. D. & C.3d at 137 (holding the DMV could reasonably find

25  the plate "55-SUKZ" offensive to good taste and decency without violating the motorist's First

26  Amendment rights).  Furthermore, drivers do not have to be enraged for the State to have a

27  justifiable interest in prohibiting categories of configurations.  (Mot. at 20.)  The fact they are

28  driving California highways at great speeds and DMV seeks to minimize distractions caused by

23

1    certain configurations is justification enough.  (Milhoan Decl. ¶ 7.)  The prohibition on detailed

2    categories of configurations advances the goals of promoting public safety, preserving the

3    legitimacy, credibility, and reliability of its license plates as an emblem, and distancing the State

4    from profane, obscene, hateful, or other messages conveyed through its license plates that tarnish

5    DMV's reputation.

6         Moreover, Plaintiffs conflate the discussion of government speech and the Court's "KNG

7    KOBE" license plate example (Order at 6, ECF No. 33), with the legitimate interests the State has

8    with not being identified through its license plates with certain categories of messages or other

9    controversy.  The State's interest is separate from whether there is government speech under

10   *Walker*.  At this point in the litigation, the parties have moved beyond "KNG KOBE" and

11   government speech, focusing instead on whether there is a justification for prohibiting messages

12   on California property that convey swear words or hate speech, for example.  And there are many

13   justifications as noted above and in *Cornelius*, 473 U.S. at 811 (the state seeking to avoid

14   controversy is a valid ground for restricting speech in a nonpublic forum that is inherently not

15   dedicated to general debate or the free exchange of ideas); *Katz*, 32 Cal. App. 3d at 685, *Kahn*, 16

16   Cal. App. 4th at 167; *Mitchell*, 450 Md. at 311-12; *Hart*, 422 F. Supp. 3d at 1234, and in other

17   cases.  Many Californians have complained to DMV about plates resulting in the retraction of

18   plates, which evidences the concern at issue is real.  (Milhoan Decl. Ex. A.)

19        Finally, Plaintiffs have not presented sufficient evidence that the standards are applied hap

20   hazardously.  (Mot. at 21.)  Campanile's "DUK N A" plate is one letter away from "FUK N A,"

21   which is profane.  "DUKN GO" has no analogous, well-recognized, look-alike swear phrase.

22   There is no inconsistency.  And Ogilvie's 2016 application for "OGWOOLF" may be outdated,

23   as discussed in deposition.  (Milhoan Decl. ¶ 21; Stegeman Decl. Exs. F (Milhoan Dep. 73:2-

24   74:21), G (Correa Dep. 49:17-51:12).)  Language evolves and certain terms change in meaning,

25   which is why Aleisha Correa noted that "OG" may be approved in 2020 depending on the

26   context.  Stegeman Decl. Ex. G (Correa Dep. 49:17-51:13; 83:1-10); *see also* Stegeman Decl. Ex. F

27   (Milhoan Dep. 47:14-48:24).  These few examples out of more than a million plates considered

28   since 2014 are not enough to invalidate the statute.  (*See* Stegeman Decl. Ex. D (Defendant's

24

1 | Response to Interrogatory 17).)  Moreover, the reason codes, the Review Procedures, online
2 | resources such as Google, Google Translate, Reddit, and Urban Dictionary, and the close
3 | proximity of reviewers and secondary reviewers to each other where they meet and discuss tough
4 | cases, help maintain consistency.  (Milhoan Decl. ¶ 20; Stegeman Decl. Exs. F (Milhoan Dep.
5 | 25:13-18, 33:8-22), G (Correa Dep. 18:1-15, 63:12-24), H (Holmes Dep. 40:10-41:22).)  And
6 | drivers that receive unfavorable decisions may appeal for a secondary review (Milhoan Decl. ¶
7 | 20), which results in a favorable decision approximately 65 to 75 percent of the time.  (Stegeman
8 | Decl. Ex. F (Milhoan Dep. 35:6-37:13).)  The regulation is not an unreasonable restriction on
9 | speech.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's summary judgment motion, deny Plaintiffs' motion, and enter judgment in Defendant's favor.


Dated:  October 19, 2020                    Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MICHELLE M. MITCHELL
Supervising Deputy Attorney General

/s/ *Chad A. Stegeman*
CHAD A. STEGEMAN
Deputy Attorney General
*Attorneys for Steve Gordon, in his official capacity*

# CERTIFICATE OF SERVICE

Case Name:   ***Ogilvie, Paul, et al. v. Steve***          Case No.   **4:20-cv-01707-JST**
                   ***Gordon***

I hereby certify that on October 19, 2020, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **NOTICE OF MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

- **DECLARATION OF CHAD A. STEGEMAN**

- **DECLARATION OF CHRIS MILHOAN**

- **[PROPOSED] ORDER**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed October 19, 2020, at San Francisco, California.

         M. Mendiola
          Declarant                                             Signature

SA2020101541
42392843.docx