| | |
|---|---|
| 1 | XAVIER BECERRA<br>Attorney General of California |
| 2 | MICHELLE M. MITCHELL<br>Supervising Deputy Attorney General |
| 3 | CHAD A. STEGEMAN<br>Deputy Attorney General |
| 4 | State Bar No. 225745<br>  455 Golden Gate Avenue, Suite 11000 |
| 5 |   San Francisco, CA  94102-7004<br>  Telephone:  (415) 510-3624 |
| 6 |   Fax:  (415) 703-5843<br>  E-mail:  Chad.Stegeman@doj.ca.gov |
| 7 | *Attorneys for Defendant Steve Gordon, in his official capacity* |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL OGILVIE, ANDREA CAMPANILE, JAMES BLAIR, PAUL CRAWFORD, and AMRIT KOHLI, | 4:20-cv-01707-JST |
| | **DECLARATION OF CHRIS MILHOAN** |
| Plaintiffs, | |
| v. | Hearing Date: November 18, 2020<br>Time:            2:00 p.m.<br>Judge:           Jon S. Tigar<br>Location:       Courtroom 6 |
| **STEVE GORDON, in his Official Capacity as Director of the California Department of Motor Vehicles,** | Action Filed:  March 10, 2020 |
| Defendant. | |

1

1    I, Christian Milhoan, declare:

2    1.   I am a Manager in Operations Support & Special Program Processing (OSSPP) at the California Department of Motor Vehicles (DMV). I have been with DMV for more than 11 years, working in the Registration Operations Division the entire duration. I have specifically worked with the Environmental License Plate Program (ELP) for more than nine years, and I have been in my current position for more than six years. I am an analyst that reviews, researches, and recommends action on secondary review from individuals whose ELP applications were denied based on a chosen configuration and they have appealed that initial decision. I have personal knowledge of the information set forth below, and if called as a witness in this matter, I could and would competently testify to the matters set forth in this declaration.

11   2.   California motorists may request a personalized license plate through the ELP program to display a non-sequential configuration. Configurations are reviewed by DMV for approval or disapproval. As I testified to on behalf of DMV in my August 10, 2020 deposition, I am familiar with the Vehicle Code section 5105 and its implementing regulation, Title 13 of the California Code of Regulations, section 206.00(c)(7)(D) and its seven defining subparts. Section 206.00(c)(7)(D) adopts much of the text from Section 5105 that it implements, including the provision to prevent the duplication of registration numbers and preventing issuance of any combination of letters or numbers, or both, that may carry connotations offensive to good taste and decency or which would be misleading or a duplication of license plates.

20   3.   Section 206.00(c)(7)(D) has seven defining subparts, which prohibit the duplication of configurations, misleading configurations, protect the identification symbol of a license plate from degradation, advance public safety, and prevent the appearance that the State of California or DMV endorse messages of hatred, obscenity, profanity, and other messages that carry connotations offensive to good taste and decency as defined by Section 206.00(c)(7)(D)(1)-(7).

25   4.   One of DMV's primary objectives is to promote safe driving on California roads. The primary reason license plates are required in California is to identify validly registered vehicles and the owners of the vehicles. Thus, if DMV issues license plates with identical or similar configurations, it would be easy for the public or law enforcement to misread those

2

Decl. Chris Milhoan (4:20-cv-01707-JST)

1 configurations in a circumstance where they might need to identify a vehicle and its owner.  This
2 could impede law enforcement action.

3      5.     In conjunction with the goals of identification and ensuring valid registration, the
4 primary justification for the ELP program is the generation of revenue to support state
5 environmental programs.  However, in establishing the program, and to ensure the selection of
6 configurations by individuals does not cause distraction, disruption, provocation or other
7 interference with safe driving or breaches of the peace, certain categories of configurations are
8 prohibited.

9      6.     Section 206.00(c)(7)(D) also prevents configurations that are misleading.  For
10 instance, DMV denies configurations that are similar to plates used by law enforcement or
11 diplomats or members of the legislature.  Such configurations could cause confusion among the
12 public and law enforcement, aid in fraud, in the impersonation of an officer, or otherwise interfere
13 with law enforcement duties.

14      7.     Vehicle Code 5105 and Section 206.00(c)(7)(D) mandate that DMV consider and
15 deny applications containing configurations that may carry connotations offensive to good taste
16 and decency, as defined by the regulation's subparts.  Preventing the issuance of such license
17 plates promotes public safety.  Because the State requires motorists to display license plates on
18 their vehicles, the public is exposed to the messages that appear on vanity plates.  Offensive
19 plates can cause distraction while driving on California roads, provocation, incitement of anger at
20 other drivers, and anger at the State and DMV for approving an offensive license plate, all of
21 which are unwanted departures from safe driving and could lead to unnecessary confrontation,
22 vandalism, destruction of property, and other breaches of the peace that do not promote the
23 ultimate purpose of license plates to identify a vehicle.

24      8.     Furthermore, DMV and the State do not want to be associated with messages, or
25 appear to condone such messages, that are offensive, promote hatred, discrimination, or
26 incitement.  Nor do they want to degrade license plates as an identification symbol.  For example,
27 allowing configurations such as "NAZI," "KKK," or similar configurations promoting hate
28

3

Decl. Chris Milhoan (4:20-cv-01707-JST)

1 speech will result in the public contacting DMV to retract the plates, at minimum diminishing
2 DMV's and the State's reputation for having allowed the configurations.

3    9.    Section 206.00(c)(7)(D)(1) allows for a denial of an application where the
4 "configuration has a sexual connotation or is a term of lust or depravity." This prohibition on
5 obscenity on state-issued plates promotes public safety including the reduction of distractions on
6 the road and provocation of other drivers. It also upholds the state Legislature's determination in
7 passing Vehicle Code section 5105 that the State and DMV should not affirmatively promote the
8 use of such terms by approving applications and manufacturing license plates on California state
9 property that contain such a configuration.

10    10.    Section 206.00(c)(7)(D)(2) allows for a denial of an application where the
11 "configuration is a vulgar term; a term of contempt, prejudice, or hostility; an insulting or
12 degrading term; a racially degrading term; or an ethnically degrading term." This prohibition on
13 fighting words, hate speech, profanity and vulgarities, violence, and other listed configurations on
14 State-issued, State-manufactured, and State-owned plates promotes public safety including the
15 reduction of distractions on the road, provocation of other drivers, incitement of anger and
16 violence, and other breaches of the peace. Configurations such as "NIGGER," "CHINK,"
17 "WETBACK" and other racial and ethnic slurs will not be approved, and it would reflect poorly
18 on the State, DMV, and the ELP program if such configurations were manufactured on license
19 plates bearing "California."

20    11. Section 206.00(c)(7)(D)(3) allows for a denial of an application where the
21 "configuration is a swear word or term considered profane, obscene, or repulsive." Again, this
22 prohibition on profanity, obscenity, and repulsive configurations on state-issued plates promotes
23 public safety including the reduction of distractions on the road, provocation of other drivers, and
24 general incitement of anger and violence. And it would diminish the value of the ELP program
25 and DMV's public standing if it affirmatively promoted the use of such terms by approving
26 applications and manufacturing license plates on California state property that contain such
27 configurations.
28

4

Decl. Chris Milhoan (4:20-cv-01707-JST)

12. Section 206.00(c)(7)(D)(4) allows for a denial of an application where the "configuration has a negative connotation to a specific group." This subpart is similar to Section 206.00(c)(7)(D)(2). The prohibition on fighting words, hate speech, and other negative connotations concerning specific groups on State-issued, State-manufactured, and State-owned plates promotes public safety including the reduction of distractions on the road, provocation of other drivers, incitement of anger and violence, and other breaches of the peace. Again, and to use the same examples noted above, configurations such as "NIGGER," "CHINK," "WETBACK" and other racial and ethnic slurs will not be approved. Again, it will reflect poorly on the State, DMV, and the ELP program to engage in and affirmatively promote the use of such terms by approving applications and manufacturing license plates on California state property that contain such configurations.

13. Section 206.00(c)(7)(D)(5) allows for a denial of an application where the "configuration misrepresents a law enforcement entity." Such configurations cause confusion among the public and law enforcement, or aid in fraud, the crime of impersonation of an officer, and can impinge on legitimate law enforcement investigations. It does not appear that Plaintiffs are challenging this portion of the regulation.

14. Section 206.00(c)(7)(D)(6) allows for a denial of an application where the "configuration has been deleted from regular series license plates." My understanding is that Plaintiffs are not challenging this portion of the regulation.

15. Section 206.00(c)(7)(D)(7) allows for a denial of an application where the "configuration is a foreign or slang word or term, or is a phonetic spelling or mirror image of a word or term falling into the categories described in subdivisions 1. through 6. above." Each of the state interests promoted in subdivisions 1-6 above are equally applicable to configurations conveying the same messages in a foreign language. Again, it does not appear that Plaintiffs are challenging this portion of the regulation.

16. There are many documented examples of configurations that have angered the public, resulting in complaints and requests to have DMV take action. Attached hereto as Exhibit A is a true and correct copy of a spreadsheet created from DMV's records noting complaints and the

5

Decl. Chris Milhoan (4:20-cv-01707-JST)

retraction of certain configurations. This document was produced to Plaintiffs during the course of litigation and reflects the Bates numbers DMV 2-6. Plaintiffs attached an illegible copy of this same document as Exhibit 2 to the Wencong Fa Declaration.

17. Initial reviewers of ELP program applications use a set of denial codes that provide specific guidance for the types of configurations that should be rejected. Secondary reviewers also reference the denial codes as part of their analysis. Attached hereto as Exhibit B is the current set of denial codes referenced by me and other initial and secondary reviewers. This document was produced to Plaintiffs during the course of litigation and reflects the Bates number DMV 37.

18. Initial and secondary reviewers also use a reference guide, containing examples of specific configurations that need further scrutiny, entitled "Environmental License Plates Review Procedures." I am familiar with the guidance and I have used it when making decisions in the secondary review process. A true and correct copy of relevant portions of the September 2017 edition is attached hereto as Exhibit C. This document was produced to Plaintiffs during the course of litigation and reflects the Bates numbers DMV 39-51.

19. All initial reviewers sit in the same office space in Sacramento within close proximity of each other, and meet on a regular basis and informally to discuss configurations. Secondary reviewers similarly sit within close proximity of one another in Sacramento, and consult each other concerning the approximately five requests for secondary review on average that come in per week.

20. The denial reason codes, the Review Procedures, online resources such as Google, Google Translate, and Urban Dictionary, and proximity of initial reviewers and secondary reviewers to each other where they meet and discuss tough cases, help maintain consistent application of the standards set forth in Section 206.00(c)(7)(D)(1)-(7). Furthermore, applicants are entitled to challenge the initial review by requesting a secondary review and providing clarifying information on the license plate meaning.

21. Plaintiff Ogilvie's application for the configuration "OGWOOLF" was dated September 2016. Since that time, there has been a change in perception of the term OG, short for

6

Decl. Chris Milhoan (4:20-cv-01707-JST)

"Original Gangster." Today, OG is more of a pop culture reference and may be approved in conjunction with other letters and number, but could still be used in combination with other terms that would make a configuration unacceptable. Terms evolve over time and DMV reconsiders them on an ongoing basis.

I declare under penalty of perjury and the laws of the United States that the foregoing is true and correct and that this declaration was executed on October 13, 2020, in Sacramento, California.

_____
Christian Milhoan

7

Decl. Chris Milhoan (4:20-cv-01707-JST)