UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL OGILVIE, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>STEVE GORDON,<br><br>    Defendant. | Case No. 20-cv-01707-JST<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 40, 47 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 40, 47. The Court will grant Plaintiffs' motion and deny Gordon's motion.

I.    **BACKGROUND**

The California Department of Motor Vehicles ("DMV") requires California drivers to display a license plate with a unique configuration of letters and numbers. Cal. Veh. Code §§ 5103, 5105(a). In lieu of receiving a standard plate that contains a random configuration of number and letters, drivers may purchase a personalized or "environmental" plate with customized alphanumeric combinations.[1] ECF No. 41-1 at 12. An applicant requesting a personalized plate must provide "[t]he applicant's first, second, and third choices of the configuration of letters and numbers to appear on [the] license plate[] and the meaning of each [choice]." *See* Cal. Code Regs. tit. 13 § 206.00(c)(7). The applicant must also pay $53 on issuance of the personalized plate, and $43 for its renewal. Cal. Veh. Code §§ 5103; 5106(a)-(b). Most of the revenue funds projects related to "the preservation and protection of California's environment." Cal. Pub. Res. Code §

---

[1] Environmental license plates are distinct from "special interest plates," which "have a design or contain a message that publicizes or promotes a state agency, or the official policy, mission, or work of a state agency." Cal. Veh. Code § 5154.

21190.  In 2019, the DMV processed 233,791 personalized license plate applications.  ECF No. 41-9 at 13.  The environmental license plate program generated more than $77 million in revenue in the 2018/2019 fiscal year.  *Id.* at 18.

Requested personalized license plate configurations must be approved by the DMV, which "may refuse to issue any combination of letters or numbers, or both, that may carry connotations offensive to good taste and decency or which would be misleading."  Cal. Veh. Code § 5105(a).  The implementing regulations instruct that the DMV "shall refuse any configuration that may carry connotations offensive to good taste and decency, or which would be misleading, based on criteria which includes, but is not limited to, the following:

> 1. The configuration has a sexual connotation or is a term of lust or depravity.
>
> 2. The configuration is a vulgar term; a term of contempt, prejudice, or hostility; an insulting or degrading term; a racially degrading term; or an ethnically degrading term.
>
> 3. The configuration is a swear word or term considered profane, obscene, or repulsive.
>
> 4. The configuration has a negative connotation to a specific group.
>
> 5. The configuration misrepresents a law enforcement entity.
>
> 6. The configuration has been deleted from regular series license plates.
>
> 7. The configuration is a foreign or slang word or term, or is a phonetic spelling or mirror image of a word or term falling into the categories described in subdivisions 1. through 6. above."

Cal. Code Regs. tit. 13, § 206.00(c)(7)(D).[2]  The DMV may also "cancel and order the return of any environmental license plate heretofore or hereafter issued" with a configuration that it "determines carries connotations offensive to good taste and decency or which would be misleading" based on these criteria.  Cal. Veh. Code § 5105(b); *see also* Cal. Code Regs. tit. 13, § 206.12(a).

The DMV has a multi-step process for reviewing applications for environmental license

---

[2] Plaintiffs do not challenge Cal. Code Regs. tit. 13 § 206.00(c)(7)(D)(5)-(7) to the extent that these sections pertain to the DMV's authority to ban misleading speech.  ECF No. 40 at 10 & n.3.

plates. First, physical applications are reviewed by a processing technician. ECF No. 41-9 at 8. That technician may immediately deny the application if the requested alphanumeric configuration is "blatantly offensive." *Id.* Otherwise, applications are generated into California Environmental Protection Program Applicant Notifications (REG 272s) – which display the requested license plate configuration along with the applicant's name and address – and are forwarded to five initial reviewers employed by the DMV. ECF No. 41-1 at 3-4.

The initial reviewers may use several resources to determine if a configuration should be denied on the basis that it "may carry connotations offensive to good taste and decency." ECF No. 41-9 at 9. First, the DMV "has reduced [the relevant California Code of Regulations] section down to a list of reasons justifying denial." *Id.* The denial codes "provide specific guidance for the types of configurations that should be rejected." ECF No. 47-2 ¶ 17. The first several denial codes mirror the language of Section 206.00(c)(7)(D)'s subparts, but other denial codes provide reviewers with specific instructions that are not found in the text of the regulation. *See* ECF No. 48 at 15. For example, the current denial codes indicate that configurations containing "a reference to drugs," a reference "to guns, weaponry, shooting, or an instrument normally used to inflict harm," or "a number, color, phrase, or code commonly used to represent gang affiliation," should be denied. *Id.* Second, the DMV has created the "Environmental License Plates Review Procedures," a manual of review procedures that contains a list of examples of specific configurations that should be flagged or denied. *See Id.* at 20-29. Third, "[i]f the configuration represents an unfamiliar slang term, foreign word, or acronym, or may be otherwise offensive," the reviewer conducts "additional research." ECF No. 41-9 at 9. This research includes the use of online resources such as Urban Dictionary, Google, and Google Translate. *Id.* Finally, if a reviewer's findings are inconclusive, the reviewer will discuss the configuration with other reviewers. *Id.* Applicants that are denied receive a refund and "a letter indicating the reason for the denial." *Id.*

An applicant who receives a denial may "write a letter to the department further explaining the meaning of the license plate configuration," which triggers a secondary review by one of four analysts at the DMV. *Id.*; ECF No. 41-1 at 9-10. The analyst assesses the

3

configuration by reviewing the applicant's letter and the same resources the initial reviewers use, and by possibly consulting with other managers or staff. ECF No. 41-9 at 9. The analyst will then create a file regarding the application and make a recommendation to approve or deny the configuration. *Id.* These files are reviewed by the section manager and program manager for a final determination. *Id.* "If the configuration is denied, a letter is sent providing a more detailed explanation of why the license plate configuration was denied." *Id.* at 9-10.

Plaintiffs Paul Ogilvie, James Blair, Amrit Kohli, Andrea Campanile, and Paul Crawford are California residents whose requests for personalized license plates were denied by the DMV under Section 206.00(c)(7)(D). ECF No. 1 ¶¶ 29-44. Ogilvie is an Army veteran who requested the plate configuration "OGWOOLF," which reflects his military nickname, "OG," and "his long-time interest in wolves." ECF No. 42 ¶¶ 2-4. The DMV denied this configuration because it "contained a gang reference." *Id.* ¶ 5. Blair, a "long-time fan of the rock band 'Slayer,'" requested the configuration "SLAAYRR." ECF No. 46 ¶¶ 2-3. The DMV rejected his submission on the ground that it "may be considered threatening, aggressive, or hostile." ECF No. 41-16 at 2. Kohli is "gay and established Queer Folks Records in an effort to reclaim the word 'Queer.'" ECF No. 44 ¶ 2. The DMV rejected his request for the configuration "QUEER" because it "may be considered insulting, degrading, or expressing contempt for a specific group or person." ECF No. 41-15 at 2. Campanile, who owns two Ducati motorcycles, requested the configuration "DUK N A," which she intended to mean "Ducati and Andrea." ECF No. 45 ¶ 3. The DMV rejected the configuration because it "is a swear word, looks or sounds like a swear word, or represents a term or phrase that may be considered profane or obscene." ECF No. 41-11 at 2.[3] Crawford owns Shakespeare Pub, whose slogan is, "Real beer, proper food, no bollocks." ECF No. 43 ¶ 2. The DMV rejected his proposed configuration of "BO11LUX" because the configuration "has a discernable sexual connotation or may be construed to be of a sexual nature." ECF No. 41-12 at 3.

On March 10, 2020, Plaintiffs filed their complaint against Steve Gordon in his capacity as the Director of the DMV. ECF No. 1 ¶ 14. The complaint makes a single claim, arguing that

---

[3] Gordon explains that "Campanile's 'DUK N A' plate is one letter away from 'FUK N A,' which is profane." ECF No. 47 at 30.

1    Section 206.00(c)(7)(D) "imposes content-based and viewpoint-based restrictions on speech" and
2    is therefore facially unconstitutional under the First Amendment. *Id.* ¶¶ 47, 54. Plaintiffs seek
3    declaratory and injunctive relief as well as attorney's fees and costs. *Id.* at 9.
4        Gordon filed a motion to dismiss on June 2, 2020. ECF No. 26. On July 8, 2020, the
5    Court held a hearing and denied the motion. ECF No. 34. Plaintiffs filed their motion for
6    summary judgment on October 5, 2020, ECF No. 40, and Gordon filed his cross-motion for
7    summary judgment on October 19, 2020, ECF No. 47. On October 26, 2020, Plaintiffs filed their
8    combined opposition to Gordon's cross-motion for summary judgement and reply in support of
9    their motion for summary judgment, ECF No. 49, and on November 2, 2020, Gordon filed the
10   final reply brief, ECF No. 51. The Court held a hearing on the instant motions on November 18,
11   2020.

## II. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## III. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations. *Id.* at 255.

## IV. DISCUSSION

### A. Private Speech

"When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009)). For this reason, the Court must first determine whether Environmental License Plates are government or private speech. *See Hart v. Thomas*, 422 F. Supp. 3d 1227, 1231 (E.D. Ky. 2019).

5

1    As explained in the Court's order denying Gordon's motion to dismiss, the alphanumeric
2    combinations on California's environmental license plates are not government speech.  ECF No.
3    34 at 4-9.  Gordon "disagrees with the [Court's] decision, reserves the right to appeal the
4    determination, but assumes the validity of the holding for purposes of [his summary judgment]
5    motion and opposition."  ECF No. 47 at 27 n.4.  The Court incorporates its reasoning from its
6    prior order and once again concludes that the alphanumeric combinations approved via
7    California's environmental license plate program are private speech.

### B.    Forum Analysis

Forum analysis is used to "evaluate government restrictions on purely private speech that occurs on government property." *Walker*, 576 U.S. at 215 (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).  Because "[e]ven protected speech is not equally permissible in all places and at all times . . . the extent to which the Government can control access depends on the nature of the relevant forum."  *Cornelius*, 473 U.S. at 799-800.

The Supreme Court has recognized four types of fora: (1) the traditional public forum; (2) the designated public forum; (3) the limited public forum; and (4) the nonpublic forum.  *Walker*, 576 U.S. at 215-16.  A traditional public forum is one "which ha[s] immemorially been held in trust for the use of the public and, time out of mind, ha[s] been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."  *Id.* at 215 (alterations in original) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-6 (1983)).  A designated public forum exists where "government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose," and a limited public forum "exists where a government has reserv[ed a forum] for certain groups or for the discussion of certain topics."  *Id.* (alteration in original) (quoting *Summum*, 555 U.S. at 469; *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).  Finally, a nonpublic forum is one in which "the government is acting as a proprietor, managing its internal operations."  *Id.* at 216 (quoting *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678-79 (1992)).  In both traditional and designated public forums, restrictions on private speech are subject to strict scrutiny.  *Summum*, 555 U.S. at 469-70.  In limited and nonpublic forums,

1   restrictions on private speech must only be reasonable and viewpoint neutral.  *See id.* at 470;
2   *Cornelius*, 473 U.S. at 800.
3         In denying Gordon's motion to dismiss, this Court did not decide what kind of forum
4   license plates are because it held that Plaintiffs "plausibly alleged that the regulation discriminates
5   on the basis of viewpoint and thus fails both standards of review."  ECF No. 34 at 10.  Most courts
6   that have considered the question have decided that license plates are a nonpublic forum.  *See, e.g.*,
7   *Hart*, 422 F. Supp. 3d at 1233; *Mitchell v. Md. Motor Vehicle Admin.*, 450 Md. 282, 310 (2016);
8   *Byrne v. Rutledge*, 623 F.3d 46, 54 (2d Cir. 2010).  As *Hart* summarized, license plates "are
9   government property upon which [a state] has allowed some limited private expression in the form
10  of vanity plates."  422 F. Supp. 3d at 1233.  Because the primary purpose of license plates is to
11  identify vehicles, and people have to seek permission to get a personalized license plate, the Court
12  agrees with the courts that have found license plates to be nonpublic forums.  Plaintiffs do not
13  argue to the contrary.  *See* ECF No. 40 at 22 (asserting that "[f]orum analysis is unnecessary"
14  because the regulation is not viewpoint neutral, and therefore violates the First Amendment even if
15  license plates are nonpublic forums).  Regulations governing speech on California's
16  environmental license plates therefore must be both viewpoint neutral and reasonable.  *Cornelius*,
17  473 U.S. at 806 ("Control over access to a nonpublic forum can be based on subject matter and
18  speaker identity so long as the distinctions drawn are reasonable in light of the purpose of the
19  forum and are viewpoint neutral.").
20        **1.**     **Viewpoint Discrimination**
21        Plaintiffs, relying on *Matal v. Tam*, 137 S. Ct. 1744 (2017) and *Iancu v. Brunetti*, 139 S.
22  Ct. 2294 (2019) for support, argue that Section 206.00(c)(7)(D) discriminates on the basis of
23  viewpoint because it prohibits speech the government finds "offensive" or not in "good taste," but
24  permits non-offensive speech or speech that is in "good taste."  ECF No. 40 at 21-23; ECF No. 49
25  at 9-10.  Gordon argues that, unlike *Tam* and *Brunetti*, the challenged regulatory phrase –
26  "offensive to good taste and decency" – is defined by subparts that are viewpoint neutral.  ECF
27  No. 47 at 12-24, 28-29.  This Court held in its order denying Gordon's motion to dismiss that
28  Plaintiffs had plausibly alleged that Section 206.00(c)(7)(D) is viewpoint discriminatory.  ECF

1   No. 34 at 10-12.  The Court finds that the record fully supports its prior reasoning, and now holds
2   that Section 206.00(c)(7)(D) unconstitutionally discriminates on the basis of viewpoint under both
3   *Tam* and *Brunetti*.

4   In *Tam*, the Supreme Court held that the Lanham Act's prohibition on the registration of
5   disparaging trademarks was viewpoint discriminatory.  137 S. Ct. at 1763.  The case was brought
6   by Simon Tam, the lead singer of a band called "The Slants," who had chosen that name "in order
7   to reclaim and take ownership of stereotypes about people of Asian ethnicity."  *Id.* at 1754
8   (internal quotation marks omitted).  While the Court split between two different opinions, "all the
9   Justices agreed . . . [that] if a trademark registration bar is viewpoint-based, it is unconstitutional"
10  and that "the disparagement bar was viewpoint-based."  *Brunetti*, 139 S. Ct. at 2299 (summarizing
11  the *Tam* holding).  The Supreme Court has explained that *Tam* "made clear" that "a law
12  disfavoring 'ideas that offend' discriminates based on viewpoint, in violation of the First
13  Amendment."  *Id.* at 2301; *see also Tam*, 137 S. Ct. at 1763 ("Giving offense is a viewpoint.").

14  Two years after *Tam* was decided, *Brunetti* invalidated the Lanham Act's bar on the
15  registration of "immoral[] or scandalous trademarks" because "[i]t too disfavor[ed] certain ideas."
16  *Brunetti*, 139 S. Ct. at 2297 (first alteration in original) (internal quotation marks omitted).  The
17  Court reasoned that the statute facially distinguished "between two opposed sets of ideas: those
18  aligned with conventional moral standards and those hostile to them; those inducing societal nods
19  of approval and those provoking offense and condemnation.  The statute favors the former, and
20  disfavors the latter."  *Id.* at 2300.  Furthermore, the statute allowed "registration of marks when
21  their messages accord[ed] with, but not when their messages def[ied], society's sense of decency
22  or propriety."  *Id.*

23  First, the Court holds that California's prohibition on personalized license plate
24  configurations "that may carry connotations offensive to good taste and decency" constitutes
25  viewpoint discrimination under *Tam* and *Brunetti*.  Kohli, who identifies as gay and established
26  "Queer Folk Records" and the music label "Queer Folk" – which is trademarked by the United
27  States Patent and Trademark Office – describes his "effort to reclaim the word 'Queer'" in a
28  manner that mirrors Tam's efforts to "drain ['slants' of] its denigrating force."  *Tam*, 137 S. Ct. at

1751; *see* ECF No. 44 ¶ 2; ECF No. 1 ¶¶ 36-37. The DMV's determination that "QUEER" "may be considered insulting, degrading, or expressing contempt for a specific group or person," and thus "may be considered offensive," ECF No. 41-15 at 2, reflects both the assessment of a viewpoint – an assessment that may or may not be correct, depending on the context – and the regulation's effect of "disfavoring 'ideas that offend.'" *Brunetti*, 139 S. Ct. at 2301 (summarizing the *Tam* holding). This is "discriminat[ion] against speech based on the ideas or opinions it conveys." *Id.* at 2299.

Section 206.00(c)(7)(D)'s focus on "good taste and decency" likewise sets up a facial distinction between societally favored and disfavored ideas. As an example of how the Lanham Act's "immoral or scandalous" bar constituted viewpoint-based discrimination, *Brunetti* emphasized that "[l]ove rules" would be an acceptable mark, whereas "[h]ate rules" would not. *Brunetti*, 139 S. Ct. at 2300. The DMV's Environmental License Plates Review Procedures similarly lists "Hate" and "H8" as configurations that should be denied, ECF No. 48 at 24, but approves configurations that incorporate versions of the word "love." *Compare* ECF No. 41-23 at 9 (denying the configuration "GO AHDH8," which the applicant explained meant "go ahead hate") *with id.* at 8 (approving the plate "BLUVED," which the applicant translated as "beloved"). This distinction between configurations that include hate, which the DMV finds to be "offensive to good taste and decency," and configurations that include love also reflects that – as in *Tam* – the regulation here "is not an anti-discrimination clause; it is a happy-talk clause." 137 S. Ct. at 1765. Under both *Tam* and *Brunetti*, Section 206.00(c)(7)(D) is unconstitutional.

Second, the Court rejects Gordon's contention that the "connotations offensive to good taste and decency" phrase is a "preamble" that is "defined with specificity in seven subparts." ECF No. 47 at 11. The plain text of Section 206.00(c)(7)(D) clarifies that the subparts do not define "offensive to good taste and decency." The regulation states that the DMV "shall refuse any configuration that may carry connotations offensive to good taste and decency, or which would be misleading, based on criteria which *include[], but [are] not limited to*" the more specific subparts. Cal. Code Regs. tit. 13, § 206.00(c)(7)(D) (emphasis added). In addition, the DMV denial codes instruct reviewers to deny categories of speech that are not enumerated in the

9

subparts. Configurations that the DMV has decided "may carry connotations offensive to good taste and decency," include those that contain a "reference to drugs," a reference "to guns, weaponry, shooting, or an instrument normally used to inflict harm," or "a number, color, phrase, or code commonly used to represent gang affiliation." ECF No. 48 at 15. Such categories of speech are not delineated in Section 206.00(c)(7)(D)'s subparts.

Finally, the Court finds that even if the phrase "offensive to good taste and decency" is defined by the regulation's subparts – which it is not – the subparts are themselves likely viewpoint-based. The Court need not examine the individual subparts in depth, but notes that each of the four relevant subparts employs language that either echoes the "immoral" language in *Brunetti*, or "disfavor[s] 'ideas that offend,'" like the disparagement clause in *Tam*. *Brunetti*, 139 S. Ct. at 2301 (summarizing the *Tam* holding). The Court finds the following words and phrase to be examples of such language: "depravity," "repulsive," "degrading," and having a "negative connotation to specific group." Cal. Code Regs. tit. 13, § 206.00(c)(7)(D). *See, e.g.*, *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/depravity (accessed Nov. 10, 2020) (defining "depravity" as (1) "a corrupt act or practice, or (2) "the quality or state of being corrupt, evil, or perverted"); *id.* https://www.merriam-webster.com/dictionary/repulsive (accessed Nov. 10, 2020) (defining "repulsive" as "arousing aversion or disgust"); *id.* https://www.merriam-webster.com/dictionary/degrading (accessed Nov. 10, 2020) (defining "degrading" as "causing or associated with a low, destitute, or demoralized state"). *See also Matwyuk v. Johnson*, 22 F. Supp. 3d 812, 825 (W.D. Mich. 2014) (holding that a state's internal guidelines for a statute banning personalized license plates that were "offensive to good taste and decency" "[did] not alleviate the potential for viewpoint discrimination" because precluding combinations "that negatively portray a given racial, religious, ethnic, or socioeconomic group, including persons of a particular gender or sexual orientation, explicitly sanction[s] viewpoint discrimination."). Of course, not regulating for taste means allowing speech that many – including this Court – might find in poor taste or even offensive. But "[y]ou can't say you're going to ban something in the name of good taste, because then you have directed someone to play the role of good-taste police." John Irving *quoted in* Suzanne Herel, *John Irving*, Mother Jones (May/June

10

1997) https://www.motherjones.com/media/1997/05/john-irving/.  And as the Supreme Court "ha[s] said time and again," "'the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.'" *Tam*, 137 S. Ct. at 1763 (quoting *Street v. New York,* 394 U.S. 576, 592 (1969)).

The Court does not hold that the DMV cannot prohibit certain words from appearing on environmental license plates.  For example, Gordon points to Chief Justice Robert's partial concurrence in *Brunetti* to support his argument that "[o]bscenity, vulgarity, profanity, hate speech, and fighting words fall outside the scope of the First Amendment's protections."  ECF No. 47 at 11-12 (citing *Brunetti*, 139 S. Ct. at 2303 (Roberts, C.J., concurring in part and dissenting in part)).[4]  However, this Court follows the Supreme Court and concludes that "[o]nce [it has] found that [Section 206.00(c)(7)(D)] 'aim[s] at the suppression of' views," it no longer "matter[s] that [the DMV] could have captured some of the same speech through a viewpoint-neutral [regulation]."  *Brunetti*, 139 S. Ct. at 2302 (fourth alteration in original) (quoting *Tam*, 137 S. Ct. at 1761).

### 2. Reasonableness

Plaintiffs argue that even if Section 206.00(c)(7)(D) did not discriminate on the basis of viewpoint, it violates the First Amendment as an unreasonable restriction on speech.  ECF No. 40 at 23-26; ECF No. 48 at 10-14.  Gordon contends that the regulation's subparts promote legitimate government interests and offer "objective, workable standards that provide a sensible basis for distinguishing between permitted and prohibited speech."  ECF No. 47 at 25-26, 12-24, 27-31.  Gordon also argues that the subparts of Section 206.00(c)(7)(D) "give the preamble a workable and objective scope, even if they are not exclusive," ECF No. 51 at 2, and that the Environmental License Plates Review Procedures and other steps of the review process "help[] ensure consistent application of [the DMV's] standards," *id.* at 9.

In addition to being viewpoint-neutral, any content-based restriction on speech in a

---

[4] Gordon also argues that profanity is not entitled to First Amendment protection under *Tam* merely "[b]ecause profane speech may also be offensive."  ECF No. 51 at 4.  However, as detailed above, the "offensive to good taste and decency" provision at issue here encompasses far more than a ban on profanity.

11

nonpublic forum must be (1) "reasonable in light of the purpose served by the forum," and (2) "based on a standard that is definite and objective." *Seattle Mideast Awareness Campaign v. King County*, 781 F.3d 489, 499 (9th Cir. 2015) ("*SeaMAC*") (quoting *Cornelius*, 473 U.S. at 806).[5] This Court need not examine the question of reasonableness because it has concluded that Section 206.00(c)(7)(D) is unconstitutional on the ground that it is not viewpoint neutral. However, the Court holds that even if the regulation were viewpoint neutral, the regulation would still be an unreasonable restriction on speech because it fails to provide an "objective, workable standard[]" and so is not "capable of reasoned application." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1891, 1892 (2018).[6]

In *Minnesota Voters*, the Supreme Court held that a Minnesota statute prohibiting wearing political insignia inside a polling place on election day was facially unconstitutional because the state failed "to articulate some sensible basis for distinguishing what may come in from what may stay out" and so the statute was not "capable of reasoned application." 138 S. Ct. at 1888, 1892. The Supreme Court determined that the statute was an unreasonable restriction on expression because its enforcement would "turn in significant part on the background knowledge and media consumption of the particular election judge applying it." *Id.* at 1890. Section 206.00(c)(7)(D) presents a similar problem. Because there is no objective, workable standard of what is "offensive to good taste and decency," different reviewers can reach opposing conclusions on whether a certain configuration should be rejected based on their judgment of what might be "offensive" or not in "good taste." *See Montenegro v. N.H. Div. of Motor Vehicles*, 166 N.H. 215, 224-25 (2014) (holding that "offensive to good taste" standard was not susceptible of objective definition and granted DMV officials the power to deny configurations based on the "particular officials'

---

[5] *SeaMAC* discusses "limited public forums," but acknowledges that "[t]he label doesn't matter, because the same level of First Amendment scrutiny applies to all forums that aren't traditional or designated public forums." 781 F.3d at 496 n.2.

[6] The parties spend significant portions of their briefs discussing whether the regulation is "reasonable in light of the intended purpose of vanity plates." ECF No. 47 at 15. *See also* ECF No. 40 at 25-26; ECF No. 47 at 13-16; ECF No. 49 at 19-23; ECF No. 51 at 5-8. Because the Court finds that the regulation discriminates on the basis of viewpoint and fails to provide an "objective, workable standard," it need not reach this issue.

12

subjective idea of what is 'good taste'").

"[Federal courts] consider a State's 'authoritative constructions' in interpreting a state law." *Minn. Voters*, 138 S. Ct. at 1889 (quoting *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992)). However, "far from clarifying the indeterminate scope" of the "offensive to good taste and decency" provision, California's construction "raises more questions than it answers." *Id.* First, as explained above, the subparts of the regulation do not define "offensive to good taste and decency" because they are not the exclusive criteria by which the phrase can or has been interpreted by the DMV. And even if the subparts did define what is "offensive to good taste and decency," they fail to reduce the phrase to objective criteria. Gordon relies on *SeaMAC* to support his argument that Section 206.00(c)(7)(D)'s subparts distinguish this case from those that have dealt with "broad and unmoored" statutes and regulations. ECF No. 47 at 28 (internal quotation marks and citation omitted). But *SeaMAC* held that a policy excluding disruptive speech was reasonable because the rejection of speech was viewpoint neutral, the threat of disruption was foreseeable rather than speculative, and the prohibition could be measured by objective criterion – the speech's disruptive impact on the "normal operations of the transit system." 781 F.3d at 500. Section 206.00(c)(7)(D)'s subparts do not provide similarly objective criteria. Here, a license plate could be denied depending on a reviewer's subjective view that a configuration could be considered "repulsive," or "degrading." This standard is therefore much closer to the "objectionable under contemporary community standards" phrase that *SeaMAC* held "would be too vague and subjective to be constitutionally applied" without further guidance. *Id.*

Second, the record does not support Gordon's argument that the review process employed by the DMV "ensure[s] consistency." ECF No. 47 at 10. The record reflects that even the DMV's denial codes and the Environmental License Plates Review Procedures' list of combinations that ought to be denied are not uniformly followed. For example, the current denial codes explain that "the number 69 is restricted to use on 1969 model vehicles only." ECF No. 48 at 14. In keeping with this policy, the license plate 1969Z was issued for a 1969 Camaro Z28, ECF 41-20 at 4, and the following plates were denied: 65VET69 (which the applicant explained was meant to represent "veteran from 1966 to 1969"), ECF No. 41-25 at 5; and 698 (which the applicant explained was to

stand for June 1998), ECF No. 41-22 at 3.  However, three other license plate configurations were denied despite the applicants explaining that 69 *was* the year each vehicle was made.  *Id.* (69LUIE); ECF No. 41-23 at 4 (F9 69); *id.* at 8 (69MXNVW).  And the license plate "SEPT369" was issued to an applicant who explained that it was his/her birthday.  ECF No. 41-20 at 3.  Finally, 69 LUV N – arguably the configuration most likely to be interpreted as a sexual reference – was accepted because the applicant described the meaning as "loving my 69 GMC."  ECF No. 41-23 at 8.  The Court therefore finds that even the straightforward ban on the number 69 has been arbitrarily applied.

Unsurprisingly, other configurations identified by the DMV as "offensive to good taste and decency" have also been treated inconsistently.  The Environmental License Plates Review Procedures, for example, include "AF" as a reason to deny a configuration because it is recognized as an acronym for "as fuck," and so considered to be "profanity/repulsive."  ECF No. 48 at 25.  However, reviewers have recognized that "AF" also stands for "Air Force."  The result of these conflicting interpretations is that some license plate configurations that include "AF" have been accepted, while others have been rejected.  The configuration AAFP51 was denied even though the applicant explained that the configuration was an "aviation reference," ER 41-20 at 2, whereas 1USAF, AF81170, and AF91 were all approved, presumably because the reviewer decided "AF" was referencing the Air Force, ER No. 41-23 at 2.  In addition, Plaintiffs point to other instances of inconsistent applications of Section 206.00(c)(7)(D), including: the approval of SPAAAZ, ECF No. 41-21 at 2, but the rejection of RSPAZ, ECF No. 41-20 at 5; the approval of DUK N GO, ECF No. 41-13, but the rejection of DUK N A, ECF No 41-11 at 2; and the approval of FN RIDE, ECF No. 41-14, but the rejection of FNN LEXS, ECF No. 41-23 at 4.  Finally, although Ogilvie was denied the configuration OGWOOLF, the DMV approved the configuration OG 69LRK for a 1969 Buick after flagging it for containing "OG."  ECF 41-24 at 2.  In response to this inconsistency, Gordon explains that because "[l]anguage evolves and certain terms change in meaning," "'OG' may be approved in 2020 depending on the context."  ECF No. 47 at 30.  But Gordon offers no insight into who determines when language has sufficiently "evolved" so that a word or phrase is no longer "offensive to good taste and decency," or how that determination is

14

made.

The fact that initial reviewers are reversed on appeal "approximately 65 to 75 percent of the time," *id.* at 31, supports the Court's conclusion that the DMV's "haphazard interpretations" of Section 206.00(c)(7)(D) apparent in the record are not anomalous, *Minn. Voters*, 138 S. Ct. at 1888. The Court therefore concludes that the DMV has failed "to articulate [a] sensible basis for distinguishing what may come in from what must stay out," and holds Section 206.00(c)(7)(D) to be unreasonable. *Id.*

### C. Redressability

Finally, in opposition to Plaintiffs' motion for summary judgment, Gordon argues that Plaintiffs have not specifically requested relief that would redress their purported harms. He asserts that "elimination of the phrase 'offensive to good taste and decency' in the regulation" does not afford complete relief without also striking subparts 1-4 of Section 206.00(c)(7)(D) and California Vehicle Code Section 5105. ECF No. 47 at 26-27. Plaintiffs respond that "[a]n injunction prohibiting the Department from enforcing the 'good taste and decency' provision and a declaration that it violates the First Amendment would prevent the Department from denying personalized license plates on the basis that it carries connotations offensive to good taste and decency." ECF No. 49 at 18. As Plaintiffs note, Vehicle Code Section 5105 *permits* the Department to deny applications based on offense to good taste and decency, but Section 206.00(c)(7)(D) *requires* it to do so.[7] *Id.* at 7.

The Court is somewhat puzzled by Plaintiffs' litigation strategy in challenging only the regulation and not the statute. Nonetheless, the Court holds that Plaintiffs' injuries – being

---

[7] In the alternative, Plaintiffs invite the Court to enjoin Section 5105 because of its similarity to 206.00(c)(7)(D), citing *Bigelow v. United Healthcare of Miss., Inc.*, 220 F.3d 339, 344 n.11 (5th Cir. 2000). ECF No. 49 at 7-8. In that case, the court held that "when . . . a plaintiff pleads a right to recovery under one of two virtually identical statutes, and it is later discovered that only the statute that was not pled is applicable to the plaintiff's claims, a court need not dismiss the case and require the re-litigation of the very same issues pursuant to the very same language but headed by a different title, but rather may take judicial notice of the existence of the applicable statute and treat the case as though it had been litigated pursuant to that statute from the outset." *Bigelow*, 220 F.3d at 344 n.11. *Bigelow* involved dissimilar facts and a different procedural posture and is not persuasive authority for Plaintiffs' request.

15

automatically denied their proposed personalized license plate configurations – are properly redressed by prohibiting the Department from enforcing the "offensive to good taste and decency" provision of Section 206.00(c)(7)(D).  Subparts 1-4 of the regulation enumerate criteria regarding what is offensive to good taste and decency.  *See* Cal. Code Regs. tit. 13, § 206.00(c)(7)(D). Enjoining the "offensive to good taste and decency" provision of the regulation necessarily prohibits the DMV from enforcing subparts 1-4, which merely elaborate criteria for the implementation of the unconstitutional phrase.  Because Plaintiffs have not challenged Section 5015, the Department may continue to enforce it – at least until that statute faces a similar challenge.  *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979) ("Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and promoting judicial economy by preventing needless litigation." (footnote omitted)).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for summary judgment, and DENIES Gordon's motion for summary judgment.  The Court declares that Section 206.00(c)(7)(D)'s ban of personalized license plate configurations "offensive to good taste and decency" violates the First Amendment to the United States Constitution.  The Court therefore enjoins Defendant – including his officers, servants, and employees – from enforcing the "offensive to good taste and decency" provision in Cal. Code Regs. Tit. 13 § 206.00(c)(7)(D). The clerk is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated:  November 24, 2020

_____
JON S. TIGAR
United States District Judge